JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Ta Chong Bank Ltd.

## DEFENDANTS

Hitachi High Technologies America, Inc. and Does 1-10

**(b)** County of Residence of First Listed Plaintiff  Taiwan
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

James X. Monroe
Nixon Peabody LLP
One Embarcadero Center, Suite 1800, San Francisco, CA 94111
Tel: (415) 984-8200

Attorneys (If Known)

Richard C. Vasquez (CA SB # 127228)/ Avin P. Sharma (CA SB# 233328)
Vasquez Benisek & Lindgren LLP
3685 Mt. Diablo Blvd, Ste 300, Lafayette, CA 94549
Tel: (925) 627-4250

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 | U.S. Government Plaintiff |
| ☐ 2 | U.S. Government Defendant |
| ☐ 3 | Federal Question (U.S. Government Not a Party) |
| ☒ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☒ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332; 28 U.S.C. 1441(b)

Brief description of cause:
Ptf asserts common counts (1.Goods sold and delivered; 2. Open Book Account, 3. Account Stated) against Def.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
May 13, 2008

SIGNATURE OF ATTORNEY OF RECORD

**BY FAX**

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



1    RICHARD C. VASQUEZ /CA SB # 127228
     AVIN P. SHARMA /CA SB# 233328

2    VASQUEZ BENISEK & LINDGREN LLP
     3685 Mt. Diablo Blvd, Suite 300

3    Lafayette, CA 94549
     Telephone:    (925) 627-4250

4    Facsimile:     (925) 403-0900
     rvasquez@vbllaw.com

5    asharma@vbllaw.com

6    Attorneys for Defendants HITACHI HIGH TECHNOLOGIES
     AMERICA, INC., a Delaware Corporation

7

8                 **UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11    TA CHONG BANK LTD.            Case No: **C08-02452**

12          Plaintiff,            **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)**

13          v.                   **(DIVERSITY)**

14    HITACHI HIGH TECHNOLOGIES
     AMERICA, INC., a Delaware Corporation; and

15    DOES 1-10, inclusive

16          Defendants.

17

18        TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19        PLEASE TAKE NOTICE that defendant Hitachi High Technologies America, Inc.,

20    hereby removes to this Court the state action described below.

21        1.       On March 21, 2008, an action was commenced in the Superior Court of the State

22    of California in and for the County of Alameda, entitled *Ta Chong Bank Ltd. v. Hitachi High*

23    *Technologies America, Inc.*, as case number G08378021. A copy of the complaint is attached

24    hereto as **Exhibit A**.

25        2.       The first date upon which defendant Hitachi High Technologies America, Inc.

26    ("HTA") was properly served a copy of said complaint was April 18, 2008, when HTA was

27    served a copy of the complaint and summons from said state court. A copy of the summons is

28    attached hereto as **Exhibit B**.

                                                                   1

NOTICE OF REMOVAL

E-filing

FILED

MAY 1 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
OAKLAND CALIFORNIA

ADR

BY FAX

GO 44 SEC. ii
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

1

## JURISDICTION

2    3.    This action is a civil action of which this Court has original jurisdiction under 28

3  U.S.C. § 1332, and is one which may be removed to this Court by HTA pursuant to the

4  provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states

5  and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs

6  because plaintiff Ta Chong Bank, Ltd. ("Ta Chong Bank") alleges facts supporting allegations of

7  an amount in controversy of $1,214,852.20, exclusive of interest and costs.

8    4.    Ta Chong Bank is a banking corporation organized and existing under the laws of

9  Taiwan with its principal place of business in Taiwan.

10    5.    HTA is a corporation incorporated under the laws of the State of Delaware and

11  having its principal place of business in the State of Illinois.

12

## INTRA –DISTRICT ASSIGNMENT

13    6.    Pursuant to Civil L.R. 3-2, paragraphs (c) and (d), all civil actions which arise in

14  the county of Alameda "shall be assigned to the San Francisco Division or Oakland Division."

15  Accordingly, this action should be assigned to the Oakland Division of the Northern District of

16  California.

17

## DOCUMENTS IN STATE COURT ACTION

18    7.    Pursuant to 28 U.S.C. § 1446(a), "all process, pleadings, and orders" in the state

19  court action (not already attached hereto as Exhibit A or B) are attached hereto as **Exhibit C**.

20

21  DATED: May 13, 2008                    VASQUEZ BENISEK & LINDGREN LLP

22

23
                                          By: _____

24                                            RICHARD C. VASQUEZ
                                              Attorneys for Defendants HITACHI HIGH
25                                            TECHNOLOGIES AMERICA, INC., a
                                              Delaware Corporation
26

27

28
                                                                                          2
NOTICE OF REMOVAL

Exhibit "A"

1   James S. Monroe (SBN 102328)
    NIXON PEABODY LLP
2   One Embarcadero Center, Suite 1800
    San Francisco, CA 94111-3996
3   Telephone: (415) 984-8200
    Facsimile: (415) 984-8300
4
    Attorneys for Plaintiff
5   TA CHONG BANK LTD.
6

**ENDORSED**
**FILED**
ALAMEDA COUNTY

MAR 2 1 2008

CLERK OF THE SUPERIOR COURT
By Alphensine Oajas, Daputy

7
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
                    IN AND FOR THE COUNTY OF ALAMEDA
9
10
11   TA CHONG BANK LTD.,                       No.        ℛ𝒢08378021
12                        Plaintiff,            COMPLAINT FOR MONEY
13
          vs.                                  1. Goods Sold and Delivered
14                                             2. Open Book Account
     HITACHI HIGH TECHNOLOGIES AMERICA,        3. Account Stated
15   INC., a Delaware Corporation; and DOES 1-10,
     inclusive,
16
                        Defendants.
17

18
          Plaintiff Ta Chong Bank Ltd. alleges:
19
                            FIRST CAUSE OF ACTION
20                    (Goods Sold and Delivered at Agreed Price Against
                                 Defendants, and each of them)
21
          1.     Plaintiff Ta Chong Bank Ltd. ("Plaintiff") is a banking corporation, organized and
22
     existing under and by virtue of the laws of Taiwan.
23
          2.     Plaintiff is informed and believes and based thereon alleges that defendant Hitachi
24
     High Technologies America, Inc. ("Defendant") is, and at all material times was, a corporation,
25
     organized and existing under and by virtue of the laws of the State of Delaware, and was at all times
26
     mentioned in this complaint, and now is, doing business in the State of California and the above-cited
27
     Judicial District.
28

COMPLAINT FOR MONEY                                                                         10857651 3

3.      Plaintiff is ignorant of the true names and capacities of the defendants sued as Does 1-10, inclusive, and therefore sues these defendants by those fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes that each of these defendants is responsible in some manner for the occurrences alleged in this complaint and that Plaintiff's damages as alleged in this complaint were proximately caused by these defendants.

4.      The obligations hereinafter referred to were entered into and to be performed in the above-cited Judicial District.

5.      On or about August 18, 19 and September 13, 2005, Defendant became indebted to Plaintiff in the sum of $1,214,852.20 for goods sold and delivered to Defendant by CyberHome Entertainment, Inc. ("CyberHome") pursuant to Defendant's purchase orders to CyberHome. True and correct copies of CyberHome's invoices to Defendant for the goods provided are attached hereto as Exhibit 1 and incorporated herein by this reference (the "Invoices").

6.      Since May 2004, Plaintiff and CyberHome entered into a series of Factoring Agreements (the "Factoring Agreements") whereby Plaintiff agreed to purchase and CyberHome agreed to sell certain of CyberHome's accounts receivable pursuant to the terms of the Factoring Agreements. True and correct copies of the Factoring Agreements in effect during the period of time from March 2005 to September 2006 (when CyberHome filed its bankruptcy case as set forth in detail below), along with certified translations thereof from Chinese to English, are attached hereto as Exhibits 2, 3 and 4 and incorporated herein by this reference.

7.      On or about August 22, 24 and September 19, 2005, CyberHome assigned all of its right, title and interest in and to all amounts due from Defendant pursuant to the Invoices to Plaintiff, and Plaintiff since has been and now is the owner and holder thereof. True and correct copies of the Notification and Transfer of Receivables forms executed by CyberHome in connection with the sale of the Invoices to Plaintiff under the Factoring Agreement then in effect (Exhibit 2) are attached hereto collectively as Exhibit 5 and incorporated herein by this reference.

8.      On or about April 30, 2004, The CIT Croup/Commercial Services, Inc. ("CIT") and

-2-

Plaintiff entered into a certain FCI Interfactor Agreement (the "Interfactor Agreement"), whereby CIT and the Plaintiff agreed that CIT would handle the processing of certain accounts receivable factored by Plaintiff (including receiving payments on such accounts on Plaintiff's behalf and forwarding them to Plaintiff) in exchange for Plaintiff's payment of certain agreed commissions and other compensation to CIT, a true and correct copy of which is attached hereto as Exhibit 6 and incorporated herein by this reference. Pursuant to the Interfactor Agreement, Plaintiff and CIT agreed that CIT would handle the processing of the CyberHome invoices factored by Plaintiff until this relationship was terminated with respect to future invoices in late 2005 and Plaintiff began to directly handle the receipt and processing of payments on the CyberHome invoices factored by it.

9.     On or about March 1, 2004, CIT and CyberHome duly gave Defendant notice in writing that, *inter alia*, all of CyberHome's invoices would henceforth bear a notice that such invoice was assigned to CIT and instructing Defendant that all future payments on such CyberHome invoices must be made directly to CIT, a true and correct copy of which is attached hereto as Exhibit 7 and incorporated herein by this reference (the "CIT Assignment Notice"). In accordance with the CIT Assignment Notice, the Invoices (Exhibit 1) all bear a notice that: "The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036, to whom notice must be given of any merchandise returns or claims. Payment made to any other party does not constitute valid payment of this invoice."

10.     On or about August 18, 2005, Plaintiff and CyberHome duly gave Defendant notice in writing that effective September 1, 2005, all of CyberHome's invoices to Defendant would henceforth bear a notice that such invoice was assigned to Plaintiff and instructing Defendant that all future payments on such CyberHome invoices must be made directly to Plaintiff, a true and correct copy of which is attached hereto as Exhibit 8 and incorporated herein by this reference (the "Plaintiff Assignment Notice").

11.     Contrary to the CIT Assignment Notice, the notice contained in each of the Invoices, and the Plaintiff Assignment Notice, and without Plaintiff's or CIT's knowledge or consent, Plaintiff is informed and believes and thereon alleges that on or about January 13, 2006, Defendant paid the

-3-

sum of $1,214,852.20 directly to CyberHome in purported satisfaction of the Invoices. Neither Plaintiff nor CIT has received any part of this payment from CyberHome or otherwise and CyberHome filed a Chapter 7 bankruptcy case on September 5, 2006 in the United States Bankruptcy Court for the Northern District of California, Case No. 06-41544.

12.     No part of the above sum has been paid to Plaintiff, although a demand has been made, and there is now due, owing and unpaid to Plaintiff from Defendant the sum of $1,214,852.20, together with interest thereon at the rate of ten percent (10%) per year from January 13, 2006.

## SECOND CAUSE OF ACTION
(Open Book Account Against Defendants, and each of them)

13.     Plaintiff refers to paragraphs 1 through 4, inclusive, and 6 through 11, inclusive, of its First Cause of Action, and by this reference incorporates the same herein as though fully set forth.

14.     On or about August 18, 19 and September 13, 2005, CyberHome Entertainment, Inc. ("CyberHome") furnished to Defendant, at its special instance and request, on an open book account, goods of the agreed upon value of $1,214,852.20. True and correct copies of CyberHome's invoices to defendant for the goods provided are attached hereto as Exhibit 1 and incorporated herein by this reference (the "Invoices").

15.     No part of said sum has been paid to Plaintiff, although demand therefore has been made, and there is due, owing and unpaid from Defendant to plaintiff, said amount, together with interest thereon at the rate of ten percent (10%) per year from January 13, 2006.

## THIRD CAUSE OF ACTION
(Account Stated Against Defendants, and each of them)

16.     Plaintiff refers to paragraphs 1 through 11, inclusive, of its First Cause of Action, and by this reference incorporates the same herein as though fully set forth.

17.     Within four years last past, an account was stated by and between CyberHome and Defendant, wherein it was agreed that Defendant was indebted on the Invoices in the sum of $1,214,852.20.

18.     No part of said sum has been paid to Plaintiff, although demand therefore has been made, and there is now due, owing and unpaid from Defendant to Plaintiff, said amount together with

-4-

COMPLAINT FOR MONEY

10857651 3

1    interest thereon at the rate of ten percent (10%) per year from January 13, 2006.

2        WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

3        1.    For the principal sum of $1,214,852.20;

4        2.    For interest thereon at the rate of ten percent (10%) per year from January 13, 2006;

5
     3.    For costs of suit incurred herein; and

6        4.    For such other and further relief as the court may deem just and proper.

7

8    DATED: March $\overline{21}$, 2008                     Respectfully submitted,

9                                         NIXON PEABODY LLP

10

11                                   By: 
                                         James S. Monroe
                                         Attorneys for Plaintiff
12                                       TA CHONG BANK LTD.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

# EXHIBIT 1

22-AUG-2005  12:05  FROM  APG          TO  8736997          P.04

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 59983 | 1 0503606 | 08/18/2005 | 01-H1001 |

**Invoice Reprint**

Work Order No. 8105003637    B.O.

| S O L D T O | HITACHI HTA<br>10 NORTH MARTINGALE RD. SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | S H I P T O | HITACHI HTA<br>KMART CORPORATION<br>RDC # 8292<br>655 SOUTHWEST 52ND AVE<br>OCALA, FL 60173 |
|---|---|---|---|

| Date Shipped 08/18/2005 | Purchase Order No. 4500093302 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 08/05/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-503000 | CH-DVD 300S<br>UPC#: | 3,648 | 0 | 3,648 | 31.00 | 113,088.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. INC

Authorized Signatures

| Freight Amount | 0.00 |
|---|---|
| Subtotal  TAX | 0.00 |
| | 113,088.00 |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

22-AUG-2005  12:05  FROM  ARGI                    TO  6786997                    P.05

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 89984 | 10503605 | 08/18/2005 | CH-H1001 |

**Invoice Reprint**

| Work Order No. | B. O. |
|---|---|
| 8105003638 | |

| S | HITACHI HTA | S | HITACHI HTA |
|---|---|---|---|
| O | 10 NORTH MARTINGALE RD. SUITE 500 | H | KMART CORPORATION |
| L | (ACCOUNTS PAYABLE) | I | RDC # 8290 |
| D | | P | 18875 BROMLEY LANE |
| T | SCHAUMBURG, IL 60173 | T | BRIGHTON, CO 60173 |
| O | | O | |

| Date Shipped 08/18/2005 | Purchase Order No. 4500093299 | Ship Via | | | F.O.B. | | Terms NET 60 | | |
|---|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested** 08/05/2005 | **Location** UUFK | CH_RANDY SCOTT | | **Salesperson** | | **Territory** AMERICA | | |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-503000 | CH-DVD 300S<br>UPC# | 912 | 0 | 912 | 31.00 | 28,272.00 | |

for and on behalf of
YBERHOME ENTERTAINMENT. INC.

Authorized Signature

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | 0.00 |
| | | | | | | | 28,272.00 |

| | | Invoice No. | Remittance |
|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|----------|-------------|----------|--------------|-----------|
| 1 | 59985 | 110503604 | 08/18/2005 | CH-HI001 |
| | **Invoice Reprint** | | Work Order No. 8105003639 | R.O. |

**CyberHome Entertainment, Inc.**
48455 Fremont Blvd
Fremont, CA 94538

| S O L D | HITACHI HTA<br>10 NORTH MARTINGALE RD. SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | S H I P | HITACHI HTA<br>KMART CORPORATION<br>ALL # 0407<br>333 SOUTH SPRUCE ST.<br>MANTENO, IL 60173 |
| T O | | T O | |

| Date Shipped 08/18/2005 | Purchase Order No. 4500093296 | Ship Via | | F.O.B. | | | NET 60 | Terms | |
|---|---|---|---|---|---|---|---|---|---|
| **Buyer** | Date Requested 08/05/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | **Territory** | |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|----------|-------------|------------------|------------------|------------|--------------|-----------------|-------|
| 90-050-503000 | CH-DVD 300S<br>UPC#: | 2,052 | 0 | 2,052 | 31.00 | 63,612.00 | |

*for and on behalf of*
CYBERHOME ENTERTAINMENT, INC

...................................
Authorized Signature(s)

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | 0.00 |
| | | | | | | | 63,612.00 |

Invoice No        Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

22-AUG-2005  12:18  FROM  ARGI                       TO  8766897?       P.07

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 59986 | 1 0503603 | 08/18/2005 | CH-H1001 |

**Invoice Reprint**

| Work Order No. | B. O. |
|---|---|
| 8105003640 | |

| S O L D | HITACHI HTA<br>10 NORTH MARTINGALE RD. SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | S H I P | HITACHI HTA<br>KMART CORPORATION<br>RDC # 8288<br>300 PENRY RD<br>GREENSBORP, NC 60173 |
|---|---|---|---|
| T O | | T O | |

| Date Shipped<br>08/18/2005 | Purchase Order No.<br>4500093293 | Ship Via | | F.O.B. | | | Terms<br>NET 60 | |
|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested**<br>08/05/2005 | **Location**<br>UUFK | CH_RANDY SCOTT | **Salesperson** | | | **Territory**<br>AMERICA | |
| Item No. | Description | | | Quantity<br>Ordered | Quantity<br>Shipped | Unit<br>Price | Gross<br>Amount | Discount<br>Amount | T a x |
| 90-050-503000 | CH-DVD 300S<br>UPC#· | | | 1,596 | 0 | 1,596 | 31.00 | 49,476.00 | |

*                             on behalf of*
*CYBERHOME ENTERTAINMENT, INC*

*Authorized Signatures*

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | | 0.00 |
| | | | | | | | | 49,476.00 |

| | | | | | | | Invoice No. | Remittance |

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

22-AUG-2005  12:10  FROM  ARG                    TO  8786957                P.05

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 69988 | 110503601 | 08/18/2005 | CH-H1001 |

**Invoice Reprint**

| Work Order No. | B.O. |
|---|---|
| 8105003642 | |

| S O L D  T O | | S H I P  T O |
|---|---|---|
| HITACHI HTA | | HITACHI HTA |
| 10 NORTH MARTINGALE RD. SUITE 500 | | KMART CORPORATION |
| (ACCOUNTS PAYABLE) | | RDC # 8275 |
| | | 1 KRESGE RD PENN WARNER PARK |
| SCHAUMBURG, IL 60173 | | FAIRLESS HILLS, PA 60173 |

| Date Shipped | Purchase Order No. | Ship Via | | F.O.B. | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|
| 08/18/2005 | 4500093287 | | | | | | |
| Buyer | Date Requested | Location | | Salesperson | | AMERICA | Territory |
| | 08/05/2005 | UUFK | CH_RANDY SCOTT | | | | |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-503000 | CH-DVD 300S UPC# | 3,192 | 0 | 31.00 | 3,192 | 98,952.00 | |

CYBERHOME ENTERTAINMENT, IN,

*Authorized Signature*

| | | | | | | Freight Amount | 0.00 |
|---|---|---|---|---|---|---|---|
| Subtotal | TAX | | | | | | 0.00 |
| | | | | | | | 98,952.00 |

| | Invoice No. | Remittance |
|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

-22-AUG-2005  12:10  FROM  AP                    TO  878893                    P.10

**CyberHome Entertainment, Inc.**
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|----------|-------------|----------|--------------|-----------|
| 1 | 70104 | 1 0503600 | 08/18/2005 | CH-H1001 |

**Invoice Reprint**

R105003643

| S | HITACHI HTA | S | HITACHI HTA |
|---|-------------|---|-------------|
| O | 10 NORTH MARTINGALE RD  SUITE 500 | H | KMART CORPORATION |
| L | (ACCOUNTS PAYABLE) | I | RDC # 8273 |
| D | | P | 3051 LAKEVIEW RD |
| T | SCHAUMBURG, IL 60173 | T | LAWRENCE, KS 60173 |
| O | | O | |

| Date Shipped 08/18/2005 | Purchase Order No. 4500093284 | Ship Via | | F.O.B. | | | Terms NET 60 | |
|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested** 08/05/2005 | **Location** UUFK | CH_RANDY SCOTT | **Salesperson** | | | **Territory** AMERICA | |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|----------|-------------|------------------|------------------|------------|--------------|-----------------|-------|
| 90-050-503000 | CH-DVD 300S UPC#: | 912 | 0 | 912 | 31.00 | 28,272.00 | |

.... and on behalf of
CYBERHOME ENTERTAINMEN...

Authorized Signature

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | 0.00 |
| | | | | | | | 28,272.00 |

| | Invoice No. | Remittance |
|---|---|---|

The Invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice

22-AUG-2005  12:11  FROM  AP    TO  878599    P.11

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No |
|---|---|---|---|---|
| 1 | 70105 | 1 0503599 | 08/18/2005 | CH-H1001 |

**Invoice Reprint**

| Work Order No. | B. O. |
|---|---|
| 8105003644 | |

| S O L D | HITACHI HTA | S H | HITACHI HTA |
|---|---|---|---|
| | 10 NORTH MARTINGALE RD. SUITE 500 | I | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | P | ~ ~ 0272 |
| T O | SCHAUMBURG, IL 60173 | T O | 1400 S MCCARRAN BLVD<br>SPARKS, NV 60173 |

| Date Shipped<br>08/18/2005 | Purchase Order No.<br>4500093281 | Ship Via | | | F.O.B. | | | Terms<br>NET 60 | |
|---|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested**<br>08/05/2005 | **Location**<br>UUFK | **CH_RANDY SCOTT** | | **Salesperson** | | | **Territory**<br>AMERICA | |

| Item No. | Description | | Quantity<br>Ordered | Quantity<br>Shipped | Unit<br>Price | Gross<br>Amount | Discount<br>Amount | T<br>a<br>x |
|---|---|---|---|---|---|---|---|---|
| 90-050-503000 | CH-DVD 300S<br>UPC#: | | 1,368 | 0 | 1,368 | 31.00 | 42,408.00 | |

on behalf of
CYBERHOME ENTERTAINMENT, INC

Authorized Signature(s).

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | | 0.00 |
| | | | | | | | | 42,408.00 |

| | | | | | | | Invoice No. | Remittance |

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70435 | 10503652 | 08/19/2005 | CH-HI001 |

**Invoice Reprint**

| | |
|---|---|
| Work Order No. | B. O. |
| 8105003178 | |

| S O L D   T O | S H I P   T O |
|---|---|
| HITACHI HTA<br>10 NORTH MARTINGALE RD. SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | HITACHI HTA<br>KMART CORPORATION<br>RDC # 8287<br>5600 EAST AIRPORT DR.<br>ONTARIO, CA 60173 |

| Date Shipped<br>08/19/2005 | Purchase Order No.<br>4500092807 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested<br>07/15/2005 | Location<br>UUFX | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000<br>UPC#: | 333 | 0 | 333 | 113.00 | 37,629.00 | |

*For and on behalf of*
*CYBERHOME ENTERTAINMENT, INC.*

*Authorized Signature(s)*

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | 0.00 |
| | | | | | | | 37,629.00 |

Invoice No.        Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70436 | 110503655 | 08/19/2005 | CH-HI001 |
| | **Invoice Reprint** | | Work Order No. 8105003185 | B. O. |

| S O L D | HITACHI  HTA |
|---|---|
| | 10 NORTH MARTINGALE RD. SUITE 500 |
| | (ACCOUNTS PAYABLE) |
| T O | SCHAUMBURG, IL 60173 |

| S H I P | HITACHI  HTA |
|---|---|
| | KMART CORPORATION |
| | RUC # 8275 |
| | : KRESGE RD PENN WARNER PARK |
| T O | FAIRLESS HILLS, PA 60173 |

| Date Shipped 08/19/2005 | Purchase Order No. 4500092193 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| **Buyer** | Date Requested 07/15/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | 210 | 0 | 210 | 113.00 | 23,730.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. INC

Authorized Signature(:

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | | 0.00 |
| | | | | | | | | 23,730.00 |

| | | Invoice No. | Remittance |
|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

24-AUG-2005  10:53  FROM  ARGUS                    TO  97883973                    P.03

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70437 | 110503651 | 08/19/2005 | 511010 |

**Invoice Reprint**

| Work Order No | B.O. |
|---|---|
| 8105003188 | |

| S O L D | HITACHI HTA | S H I | HITACHI HTA |
|---|---|---|---|
| | 10 NORTH MARTINGALE RD. SUITE 500 | P | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | | RDC # 8288 |
| | | | 300 PENRY RD |
| T O | SCHAUMBURG, IL 60173 | T O | GREENSBORO, NC 60173 |

| Date Shipped 08/19/2005 | Purchase Order No. 4500092195 | Ship Via | F.O.B. | Terms NET 60 |
|---|---|---|---|---|
| **Buyer** | **Date Requested** 07/15/2005 | **Location** UUFK | **Salesperson** CH_RANDY SCOTT | **Territory** AMERICA |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | 240 | 0 | 240 | 113.00 | 27,120.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT, INC

Authorized Signature(s)

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | 0.00 |
| | | | | | | | 27,120.00 |

| Invoice No. | Remittance |
|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538



| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70438 | 810503656 | 08/19/2005 | CH-H1001 |

**Invoice Reprint**

Mort O.C. #
8105003193

| S O L D | HITACHI HTA | S H I | HITACHI HTA |
|---|---|---|---|
| | 10 NORTH MARTINGALE RD. SUITE 500 | P | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | | RDC # 8292 |
| T O | SCHAUMBURG, IL 60173 | T O | 655 SOUTHWEST 52ND AVE |
| | | | OCALA, FL 60173 |

| Date Shipped 08/19/2005 | Purchase Order No. 4500092197 | Ship Via | | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 07/15/2005 | Location UUFK | CH_RANDY SCOTT | | Salesperson | | | AMERICA | Territory |

| Item No. | Description | | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T o x |
|---|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | | 210 | 0 | 210 | 113.00 | 23,730.00 | |

                                                   ... and on behalf of
                                              CYBERHOME ENTERTAINMENT, INC

                                                   Authorized Signature(s

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| Subtotal | TAX | | | | | | | 0.00 |
| | | | | | | | | 23,730.00 |

| | | Invoice No. | Remittance |
|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1035, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538



| Page No. | Invoice No. | Apply To | Invoice Date | |
|---|---|---|---|---|
| 1 | 70439 | 110503558 | 09/19/2005 | CH-HT001 |
| **Invoice Reprint** | | | Work Order No. 8105003195 | B. O. |

| S | HITACHI HTA | S | HITACHI HTA |
|---|---|---|---|
| O | 10 NORTH MARTINGALE RD. SUITE 500 | H | KMART CORPORATION |
| L | (ACCOUNTS PAYABLE) | I | RDC # 8299 |
| D | | P | 901 CANTERBURY RD |
| T | SCHAUMBURG, IL 60173 | T | SHAKOPEE, MN 60173 |
| O | | O | |

| Date Shipped 08/19/2005 | Purchase Order No. 4500092198 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested** 07/15/2005 | **Location** UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | **Territory** |
| **Item No.** | **Description** | | | **Quantity Ordered** | **Quantity Shipped** | **Unit Price** | **Gross Amount** | **Discount** T |
| 90-050-353010 | LDV7000 UPC#: | | | 120 | 0 | 120 | 113.00 | 13,560.00 |

*... ent on behalf of*
CYBERHOME ENTERTAINMENT INC

Authorized Signature(s

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | | 0.00 |
| | | | | | | | | 13,560.00 |

| | | | | Invoice No. | Remittance |
|---|---|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

24-AUG-2005  10:54  FROM  ARB  TO  878839

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70440 | 10503659 | 08/19/2005 | CH-H1001 |

**Invoice Reprint**

| Work Order No. | B. O. |
|---|---|
| 8105003197 | |

| | | | |
|---|---|---|---|
| S<br>O<br>L<br>D<br><br>T<br>O | HITACHI HTA<br>10 NORTH MARTINGALE RD. SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | S<br>H<br>I<br>P<br><br>T<br>O | HITACHI HTA<br>KMART CORPORATION<br>RDC # 8272<br>1400 S MCCARRAN BLVD<br>SPARKS, NV 60173 |

| Date Shipped<br>08/19/2005 | Purchase Order No.<br>4500092199 | Ship Via | | F.O.B. | | Terms<br>NET 60 | |
|---|---|---|---|---|---|---|---|
| Buyer | Date Requested<br>07/15/2005 | Location<br>UUFK | Salesperson<br>CH_RANDY SCOTT | | | Territory<br>AMERICA | |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000<br>UPC#: | 240 | 0 | 240 | 113.00 | 27,120.00 | |
| | | | | | | | |
| | | | | for und on behalf of<br>CYBERHOME ENTERTAINMENT. INC<br><br>*Authorized Signature* | | |
| | Freight Amount | | | | | 0.00 | |
| **Subtotal** | TAX | | | | | 0.00<br>27,120.00 | |

| | Invoice No. | Remittance |
|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70441 | 10503660 | 08/19/2005 | CH-H1001 |

**Invoice Reprint**

Work Order No. 8105003199   B.O.

| | | | |
|---|---|---|---|
| S O L D | HITACHI HTA | S H I P | HITACHI HTA |
| | 10 NORTH MARTINGALE RD. SUITE 500 | | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | | RDC # 8273 |
| | | | 3051 LAKEVIEW RD |
| T O | SCHAUMBURG, IL 60173 | T O | LAWRENCE, KS 60173 |

| Date Shipped 08/19/2005 | Purchase Order No. 4500092200 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 07/15/2005 | Location UUFX | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | Tax |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | 180 | 0 | 180 | 113.00 | 20,340.00 | |

*... and on behalf of*
CYBERHOME ENTERTAINMENT, INC.

*Authorized Signature(s)*

| | | | |
|---|---|---|---|
| | Freight Amount | | 0.00 |
| Subtotal | TAX | | 0.00 |
| | | | 20,340.00 |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.



CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| | Page No. | Invoice No. 70442 | Apply To 110503661 | Invoice Date 08/19/2005 | Cust. No. 21-H1001 |
|---|---|---|---|---|---|
| | 1 | | | | |

**Invoice Reprint**

Work Order No. 8105003200    B. O.

| S O L D | HITACHI HTA 10 NORTH MARTINGALE RD. SUITE 500 (ACCOUNTS PAYABLE) | S H I P | HITACHI HTA KMART CORPORATION RDC # 8298 |
|---|---|---|---|
| T O | SCHAUMBURG, IL 60173 | T O | 60 HERRING RD NEWNAN, GA 60173 |

| Date Shipped 08/19/2005 | Purchase Order No. 4500092201 | Ship Via | | F.O.B. | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 07/15/2005 | Location UUFK | Salesperson CH_RANDY SCOTT | | | AMERICA | Territory |

| Item No. | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | 240 | 0 | 240 | 113.00 | 27,120.00 | |

*... on behalf of*
*CYBERHOME ENTERTAINMENT INC*

..........................................
*Authorized Signature(s)*

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| Subtotal | TAX | | | | | | 0.00 |
| | | | | | | | 27,120.00 |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.
Payment made to any other party does not constitute valid payment of this invoice.

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 70445 | 10503657 | 08/19/2005 | CH-H1001 |

**Invoice Reprint**

| Work Order No. | B. O. |
|---|---|
| 8105003191 | |

S O L D
HITACHI HTA
10 NORTH MARTINGALE RD. SUITE 500
(ACCOUNTS PAYABLE)
SCHAUMBURG, IL 60173

S H I P
HITACHI HTA
KMART CORPORATION
RDC # 8290
18875 BROMLEY LANE
BRIGHTON, CO 60173

T O

| Date Shipped 08/19/2005 | Purchase Order No. 4500092196 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 07/15/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | 222 | 0 | 222 | 113.00 | 25,086.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. INC

Authorized Signature(s)

Freight Amount 0.00
Subtotal TAX 0.00
25,086.00

Invoice No. Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.



CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 71842 | 10594069 | 09/13/2005 | LR-HT001 |

**Invoice Reprint**

Work Order No. 8105004071   B. O.

| S O L D | HITACHI HTA |
|---|---|
| | 10 NORTH MARTINGALE RD. SUITE 500 |
| | (ACCOUNTS PAYABLE) |
| T O | SCHAUMBURG, IL 60173 |

| S H I P | HITACHI HTA |
|---|---|
| | KMART CORPORATION |
| | RDC # 8292 |
| | 655 SOUTHWEST 52ND AVE |
| T O | OCALA, FL 60173 |

| Date Shipped 09/13/2005 | Purchase Order No. 4500093303 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 09/03/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | Tax |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | 1,764 | 0 | 1,764 | 113 00 | 199,332.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. INC

Authorized Signature

| | Freight Amount | | | | | | 0 00 |
| Subtotal | TAX | | | | | | 0.00 / 199,332.00 |

Invoice No.   Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No.<br>1 | Invoice No.<br>71649 | Apply To<br>180504025 | Invoice Date<br>09/13/2005 | Cust. No.<br>CH-H1001 |
| --- | --- | --- | --- | --- |

**Invoice Reprint**

| Work Order No.<br>8105004078 | B. O. |
| --- | --- |

| S | | S | |
|---|---|---|---|
| O | HITACHI HTA | H | HITACHI HTA |
| L | 10 NORTH MARTINGALE RD. SUITE 500 | I | KMART CORPORATION |
| D | (ACCOUNTS PAYABLE) | P | RDC # 8290 |
| | | | 18875 BROMLEY LANE |
| T | SCHAUMBURG, IL 60173 | T | BRIGHTON, CO 60173 |
| O | | O | |

| Date Shipped<br>09/13/2005 | Purchase Order No.<br>4500092808 | Ship Via | | | F.O.B. | | | NET 60 | Terms | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested**<br>09/03/2005 | **Location**<br>UUFK | **CH_RANDY SCOTT** | | **Salesperson** | | | **AMERICA** | **Territory** | |
| **Item No.** | | **Description** | | **Quantity<br>Ordered** | **Quantity<br>Shipped** | **Unit<br>Price** | **Gross<br>Amount** | **Discount<br>Amount** | | **T<br>a<br>x** |
| 90-050-353010 | LDV7000<br>UPC#: | | | 300 | 0 | 300 | 113 00 | 33,900.00 | | |
| | | | | | | | | | | |
| | | | | | | | | as an behalf of | | |
| | | | | | | | | CYBERHOME ENTERTAINMENT, INC | | |
| | | | | | | | | Authorized Signature(s) | | |
| | Freight Amount | | | | | | | | 0.00 | |
| **Subtotal** | TAX | | | | | | | | 0.00 | |
| | | | | | | | | | 33,900.00 | |

| | | Invoice No. | Remittance |
|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.

**CyberHome Entertainment, Inc.**
48455 Fremont Blvd
Fremont, CA 94538



| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No |
|---|---|---|---|---|
| 1 | 01651 | 11050403e | 09/13/2005 | CH-H1001 |

**Invoice Reprint**

Work Order No. 8105004082   B. O.

S
O
L
D

T
O

HITACHI HTA
10 NORTH MARTINGALE RD  SUITE 500
(ACCOUNTS PAYABLE)

SCHAUMBURG, IL 60173

S
H
I
P

T
O

HITACHI HTA
KMART CORPORATION
RDC # 8298
60 HERRING RD
NEWNAN, GA 60173

| Date Shipped 09/13/2005 | Purchase Order No. 4500092810 | Ship Via | | F.O.B. | | | NET 60 | Terms | |
|---|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 09/07/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory | |
| Item No. | Description | | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | Tax |
| 99-050-353010 | LDV7000 UPC#: | | | 180 | 0 | 180 | 113.00 | 20,340.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. INC.

Authorized Signature(:)

| Freight Amount | | | | | | | | 0.00 | |
| Subtotal | TAX | | | | | | | 0.00 | |
| | | | | | | | | 20,340.00 | |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538



| Page No.<br>1 | Invoice No.<br>71632 | Apply To<br>80304040 | Invoice Date<br>09/13/2005 | Cust. No.<br>L.HELUCT |
|---|---|---|---|---|
| | **Invoice Reprint** | | Work Order No.<br>8105004083 | B. O. |

| S<br>O<br>L<br>D<br><br>T<br>O | HITACHI HTA<br>10 NORTH MARTINGALE RD. SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | S<br>H<br>I<br>P<br><br>T<br>O | HITACHI HTA<br>KMART CORPORATION<br>RDC # 8299<br>901 CANTERBURY RD<br>SHAKOPEE, MN 60173 |
|---|---|---|---|

| Date Shipped<br>09/13/2005 | Purchase Order No.<br>4500092811 | Ship Via | | | F.O.B. | | NET 60 | Terms | |
|---|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested<br>09/07/2005 | Location<br>UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory | |
| Item No. | Description | | | Quantity<br>Ordered | Quantity<br>Shipped | Unit<br>Price | Gross<br>Amount | Discount<br>Amount | T<br>a<br>x |
| 90-050-353010 | LDV7000<br>UPC#: | | | 150 | 0 | 150 | 113.00 | 16,950.00 | |

and on behalf of
EBERHOME ENTERTAINMENT, INC

Authorized Signature(s)

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | | 0.00<br>16,950.00 |

Invoice No.     Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No. 1 | Invoice No. 71654 | Apply To 110504041 | Invoice Date 09/13/2005 | Cust. No. CH-H1001 |
|---|---|---|---|---|
| | | **Invoice Reprint** | Work Order No 8105004085 | B. O. |

| S | HITACHI HTA | | S | HITACHI HTA |
|---|---|---|---|---|
| O | 10 NORTH MARTINGALE RD  SUITE 500 | | H | KMART CORPORATION |
| L | (ACCOUNTS PAYABLE) | | I | RDC # 8299 |
| D | | | P | 901 CANTERBURY RD |
| T | SCHAUMBURG, IL 60173 | | T | SHAKOPEE, MN 60173 |
| O | | | O | |

| Date Shipped 09/13/2005 | | Purchase Order No. 4500094248 | | Ship Via | | | | F.O.B. | | | NET 60 | | Terms | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Buyer | | Date Requested 09/07/2005 | Location UUFK | | CH_RANDY SCOTT | Salesperson | | | AMERICA | | Territory | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Item No. | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | 120 | 0 | 120 | 113.00 | 13,560.00 | |

on behalf of
CYBERHOME ENTERTAINMENT, INC

Authorized Signature(s)

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | | 0.00 |
| | | | | | | | | 13,560.00 |

| | | | | | | | Invoice No. | Remittance |
|---|---|---|---|---|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.

**CyberHome Entertainment, Inc.**
48455 Fremont Blvd
Fremont, CA 94538



| Page No. | Invoice No. 71655 | Apply To 10504939 | Invoice Date 09/13/2005 | Cust. No. CH-R10CT |
|---|---|---|---|---|

**Invoice Reprint**

Work Order No. 8105004086    B.O.

S O L D   T O
HITACHI HTA
10 NORTH MARTINGALE RD. SUITE 500
(ACCOUNTS PAYABLE)
SCHAUMBURG, IL 60173

S H I P   T O
HITACHI HTA
KMART CORPORATION
RDC # 8298
60 HERRING RD
NEWNAN, GA 60173

| Date Shipped 09/13/2005 | Purchase Order No. 4500094247 | Ship Via | | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 09/07/2005 | Location UUFK | CH_RANDY SCOTT | | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | Tax |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | 144 | 0 | 144 | 113.00 | 16,272.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT, I.
Authorized Signature

| | | | Freight Amount | 0.00 |
|---|---|---|---|---|
| Subtotal | TAX | | | 0.00 |
| | | | | 16,272.00 |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims

CyberHome Entertainment, Inc.
48455 Fremont Blvd
Fremont, CA 94538

| Page No. 1 | Invoice No. 71636 | Apply To 110504036 | Invoice Date 09/13/2005 | Cust. No CH-HT007 |
|---|---|---|---|---|
| | **Invoice Reprint** | | Work Order No. 8105004087 | B. O. |

| S O L D T O | HITACHI HTA 10 NORTH MARTINGALE RD SUITE 500 (ACCOUNTS PAYABLE) SCHAUMBURG, IL 60173 | S H I P T O | HITACHI HTA KMART CORPORATION RDC # 8290 18875 BROMLEY LANE BRIGHTON, CO 60173 |
|---|---|---|---|

| Date Shipped 09/13/2005 | Purchase Order No. 4500094246 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 09/07/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | 150 | 0 | 150 | 113.00 | 16,950.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. IN.

..........................................
Authorized Signature(s)

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| Subtotal | TAX | | | | | | | 0.00 |
| | | | | | | | | 16,950.00 |

Invoice No.          Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No. | Invoice No. 7165? | Apply To 110500409 | Invoice Date 09/13/2005 | Cust No. CH-HT00T |
| --- | --- | --- | --- | --- |
| | **Invoice Reprint** | | Work Order No. 8105004068 | B. O. |

| S O L D | HITACHI HTA | S H | HITACHI HTA |
| --- | --- | --- | --- |
| | 10 NORTH MARTINGALE RD  SUITE 500 | I | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | P | RDC # 8288 |
| T O | SCHAUMBURG, IL 60173 | T O | 300 PENRY RD |
| | | | GREENSBORO, NC 60173 |

| Date Shipped 09/13/2005 | Purchase Order No. 4500094245 | Ship Via | F.O.B. | NET 60 | Terms |
| --- | --- | --- | --- | --- | --- |
| Buyer | Date Requested 09/07/2005 | Location UUFK | Salesperson CH_RANDY SCOTT | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | Tax |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 90-050-353010 | LDV7000 UPC#: | 300 | 0 | 300 | 113.00 | 33,900.00 | |

and on behalf of
CYBERHOME ENTERTAINMENT, INC.

Authorized Signature(s)

| | Freight Amount | | | | | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| Subtotal | TAX | | | | | 0.00 |
| | | | | | | 33,900.00 |

| | | Invoice No. | Remittance |
| --- | --- | --- | --- |

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 71658 | 10304033 | 09/13/2005 | H-HT001 |

**Invoice Reprint**

| Work Order No. | B. O. |
|---|---|
| 8105004090 | |

S  HITACHI HTA
O  10 NORTH MARTINGALE RD. SUITE 500
L  (ACCOUNTS PAYABLE)
D
   SCHAUMBURG, IL 60173
T
O

S  HITACHI HTA
H  KMART CORPORATION
I  RDC # 8275
P  1 KRESGE RD PENN WARNER PARK
   FAIRLESS HILLS, PA 60173
T
O

| Date Shipped 09/13/2005 | Purchase Order No. 4500094243 | Ship Via | | | F.O.B. | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| **Buyer** | **Date Requested** 09/07/2005 | **Location** UUFK | **CH_RANDY SCOTT** | **Salesperson** | | | **AMERICA** | **Territory** |
| **Item No.** | **Description** | | | **Quantity Ordered** | **Quantity Shipped** | **Unit Price** | **Gross Amount** | **Discount Amount** | **T a x** |
| 90-050-353010 | LDV7000 UPC#: | | | 300 | 0 | 300 | 113.00 | 33,900.00 | |

on behalf of
CERHOME ENTERTAINMENT, INC.

Authorized Signature(s)

| | Freight Amount | | | | | | | 0.00 |
| **Subtotal** | TAX | | | | | | | 0.00 |
| | | | | | | | | 33,900.00 |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims

**CyberHome Entertainment, Inc.**
48455 Fremont Blvd
Fremont, CA 94538



| Page No. 1 | Invoice No 71648 | Apply To 110504034 | Invoice Date 09/13/2005 | Cust. No. CH-H.001 |
|---|---|---|---|---|
| **Invoice Reprint** | | | Work Order No. 8105004089 | B. O. |

| S O L D | HITACHI HTA | S H I | HITACHI HTA |
|---|---|---|---|
| | 10 NORTH MARTINGALE RD. SUITE 500 | P | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | | RDC # 8287 |
| T O | SCHAUMBURG, IL 60173 | T O | 5600 EAST AIRPORT DR |
| | | | ONTARIO, CA 60173 |

| Date Shipped 09/13/2005 | Purchase Order No. 4500094244 | Ship Via | | F.O.B. | | | Terms NET 60 | |
|---|---|---|---|---|---|---|---|---|
| **Buyer** | Date Requested 09/07/2005 | Location UUFX | CH_RANDY SCOTT | Salesperson | | | Territory AMERICA | |

| Item No. | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | 96 | 0 | 96 | 113.00 | 10,848.00 | |
| | | | | | | | | |
| | | | | | | ...al on behalf of | | |
| | | | | | | CYBERHOME ENTERTAINMENT, IN | | |
| | | | | | | Authorized Signature: | | |
| | Freight Amount | | | | | | 0.00 | |
| **Subtotal** | TAX | | | | | | 0.00 | |
| | | | | | | | 10,848.00 | |
| | | | | | | Invoice No. | Remittance | |

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No. 1 | Invoice No. 71645 | Apply To 110504039 | Invoice Date 09/13/2005 | Cust. No. CH-HT001 |
|---|---|---|---|---|
| | **Invoice Reprint** | | Work Order No. 8105004073 | B. O. |

| S O L D | HITACHI HTA | S H | HITACHI HTA |
|---|---|---|---|
| | 10 NORTH MARTINGALE RD  SUITE 500 | I | KMART CORPORATION |
| | (ACCOUNTS PAYABLE) | P | RDC # 8299 |
| | | | 901 CANTERBURY RD |
| T O | SCHAUMBURG, IL 60173 | T O | SHAKOPEE, MN 60173 |

| Date Shipped 09/13/2005 | Purchase Order No. 4500093309 | Ship Via | | | F.O.B. | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 09/03/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | T a x |
|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | 504 | 0 | 504 | 113.00 | 56,952.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT, IN

*Authorized Signature(s)*

| | Freight Amount | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|
| **Subtotal** | TAX | | | | | | 0.00 |
| | | | | | | | 56,952.00 |

| | | | | | Invoice No. | Remittance |
|---|---|---|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No.<br>1 | Invoice No.<br>71844 | Apply To<br>81C504028 | Invoice Date<br>09/13/2005 | Cust. No.<br>DE-H1001 |
|---|---|---|---|---|

**Invoice Reprint**

| Work Order No.<br>8105004072 | B. O. |
|---|---|

| S<br>O<br>L<br>D<br><br>T<br>O | HITACHI HTA<br>10 NORTH MARTINGALE RD SUITE 500<br>(ACCOUNTS PAYABLE)<br><br>SCHAUMBURG, IL 60173 | S<br>H<br>I<br>P<br><br>T<br>O | HITACHI HTA<br>KMART CORPORATION<br>RDC # 8298<br>60 HERRING RD<br>NEWNAN, GA 60173 |
|---|---|---|---|

| Date Shipped<br>09/13/2005 | Purchase Order No.<br>4500093306 | Ship Via | | F.O.B. | | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested<br>09/03/2005 | Location<br>UUFK | CH_RANDY SCOTT | Salesperson | | | AMERICA | Territory |

| Item No. | Description | | Quantity<br>Ordered | Quantity<br>Shipped | Unit<br>Price | Gross<br>Amount | Discount<br>Amount | T<br>a<br>x |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000<br>UPC#: | | 504 | 0 | 504 | 113.00 | 56,952.00 | |

for and on behalf of
CYBERHOME ENTERTAINMENT. IN

Authorized Signatur

| | Freight Amount | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|
| Subtotal | TAX | | | | | | | 0.00 |
| | | | | | | | | 56,952.00 |

| | Invoice No. | Remittance |
|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036
to whom notice must be given of any merchandise returns or claims.

X

**CyberHome Entertainment, Inc.**
**48455 Fremont Blvd**
**Fremont, CA 94538**



| Page No. 1 | Invoice No. 7,844 | Apply To 110504032 | Invoice Date 09/13/2005 | Cust. No. CH-H1001 |
|---|---|---|---|---|
| | **Invoice Reprint** | | Work Order No. 810500409l | B. O. |

| S O L D | HITACHI HTA 10 NORTH MARTINGALE RD. SUITE 500 (ACCOUNTS PAYABLE) | S H I P | HITACHI HTA KMART CORPORATION RDC # 8272 1400 S MCCARRAN BLVD |
|---|---|---|---|
| T O | SCHAUMBURG, IL 60173 | T O | SPARKS, NV 60173 |

| Date Shipped 09/13/2005 | Purchase Order No. 4500094242 | Ship Via | | | F.O.B. | | | NET 60 | Terms | |
|---|---|---|---|---|---|---|---|---|---|---|
| Buyer | Date Requested 09/07/2005 | Location UUFK | CH_RANDY SCOTT | | Salesperson | | | AMERICA | Territory | |
| Item No. | | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | | T a x |
| 90-050-353010 | LDV7000 UPC#: | | | 120 | 0 | 120 | 113.00 | 13,560.00 | | |

on behalf of
CYBERHOME ENTERTAINMENT, INC.

Authorized Signature(s)

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Freight Amount: | | | | | | | 0.00 | | |
| **Subtotal** | TAX | | | | | | | 0.00 | | |
| | | | | | | | | 13,560.00 | | |

| | | Invoice No. | Remittance |
|---|---|---|---|

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims



**CyberHome Entertainment, Inc.**
48455 Fremont Blvd
Fremont, CA 94538

| Page No. | Invoice No. | Apply To | Invoice Date | Cust. No. |
|---|---|---|---|---|
| 1 | 71650 | 8105004037 | 09/13/2005 | CH-HT001 |

**Invoice Reprint**

Work Order No. 8105004037   B. O.

| S O L D | HITACHI HTA | S H | HITACHI HTA |
|---|---|---|---|
| T O | 10 NORTH MARTINGALE RD. SUITE 500 (ACCOUNTS PAYABLE) SCHAUMBURG, IL 60173 | I P T O | KMART CORPORATION RDC # 8292 655 SOUTHWEST 52ND AVE OCALA, FL 60173 |

| Date Shipped 09/13/2005 | Purchase Order No. 4500092809 | Ship Via | | F.O.B. | | NET 60 | Terms |
|---|---|---|---|---|---|---|---|

| Buyer | Date Requested 09/07/2005 | Location UUFK | CH_RANDY SCOTT | Salesperson | | AMERICA | Territory |
|---|---|---|---|---|---|---|---|

| Item No. | Description | | Quantity Ordered | Quantity Shipped | Unit Price | Gross Amount | Discount Amount | Tax |
|---|---|---|---|---|---|---|---|---|
| 90-050-353010 | LDV7000 UPC#: | | 300 | 0 | 300 | 113.00 | 33,900.00 | |

*and on behalf of*
*CYBERHOME ENTERTAINMENT, INC.*

Authorized Signature(s)

| | Freight Amount | | | | | | 0.00 |
| Subtotal | TAX | | | | | | 0.00 |
| | | | | | | | 33,900.00 |

Invoice No.    Remittance

The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036 to whom notice must be given of any merchandise returns or claims.

EXHIBIT 2



# TRANSPERFECT

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Livia Cheung, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the attached document "AR Contrcact 20050325", from Chinese to English.

Livia Cheung

Sworn to before me this
29th day of January, 2008

Signature, Notary Public

PAUL D. RALSTON
totary Public, State of New York
No. 01RA6023B67
Qualified in Queens County
ommission Expires May 3, 2011

Stamp, Notary Public

TPT 077 rev. 1 20060612

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

2005/3 – 2005/9        ③

## ACCOUNTS RECEIVABLE FACTORING AGREEMENT

The agreement signing parties are, Cyberhome Entertainment Inc. ("the First Party"), and Ta Chong Commercial Bank Ltd. ("the Second Party"),

WHEREAS the First Party, together with a joint guarantor thereof, hereby files an application to the Second Party for accounts receivable factoring (FACTORING PROGRAM), and the Second Party agrees to purchase all of the First Party's accounts receivable to be claimed by the First Party for settlement at a certain date of settlement from specific counterparties ("the Third Party") thereof in Taiwan and overseas countries arising from purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party. The purchase and sale of each account receivable within the term of this Agreement shall be accepted only upon the Second Party's confirmation of the contents of the accounts receivable to be factored together with the Second Party's submission of a Factoring Approval Form, and apply to the terms set forth in this Agreement. Now, therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, both parties hereto agree that the purchase and sale of accounts receivable within the term of this Agreement are set forth as follows:

Article 1: Sale and Purchase of Accounts Receivable

The First Party and the Second Party agree to conduct the sale and purchase of accounts receivable as follows:

1.  Within the term of this Agreement, the First Party shall deliver or deliver upon the Second Party's request for information pertaining to all the accounts receivable to the Second Party such that the Second Party selects the Third Party and/or an object of purchase.
2.  Upon selection of the object of purchase, the Second Party, in its sole discretion, submits to the First Party a Factoring Approval Form covering the contents of the object of purchase. The First Party shall assign to the Second Party all the accounts receivable (including those now existing and hereafter arising) purchased upon consent of the Second Party. The date recorded on the Factoring Approval Form submitted by the Second Party shall be deemed the date of accounts receivable assignment. Moreover, the Second Party may, on the basis of capital or business, adjust the credit line granted upon its consent at any time.
3.  Regarding domestic accounts receivable, the First Party, upon receipt of the Factoring Approval Form from the Second Party, shall notify the Third Party of the assignment relationship between the First Party and the Second Party by a legal attest letter (with a copy of the legal attest letter sent to the Second Party by mail). Moreover, the First Party shall deliver to the Second Party the advice of delivery for the legal attest letter from the Third Party.
4.  As for overseas accounts receivable, commercial invoice(s) issued by the First Party to the Third Party shall state the terms of payment, the collection date and the following information:
    (1) The terms of payment are 90 days from the date of invoice, except otherwise agreed by the Second Party.
    (2) The Second Party is stated as the exclusive assignee of creditor's rights of the accounts receivable.
    (3) The Assignment Clause requested by the Second Party and the Notification and Transfer Receivables to be filled out; the List of Payments and the Introductory Letter to be separately filled out if this is the first transaction.

For and on behalf of

CYBERHOME ENTERTA

.....................................

Authorized

5.    Within the term of this Agreement, the Second Party may, at any time, change or add any First Party's counterparty (that is, the Third Party). The First Party shall furnish the Second Party with the latest information on its counterparty (that is, the Third Party) for the Second Party to select. Moreover, the First Party shall manage any counterparty changed or added by the Second Party as set forth in the two foregoing subparagraphs of the preceding paragraph.

6.    The Second Party's change or addition of counterparties as set forth in the preceding subparagraph does not affect the validity of the purchase or sale of accounts receivable concluded prior to change or addition of counterparties.

7.    The First Party shall, within fifteen (15) days upon collection of the accounts receivable factored by the Second Party at the latest, deliver to the Second Party the agreements or certifications pertaining to the assignment of accounts receivable (including the original and photocopies of invoices, receipts from the Third Party, the purchasing orders confirmed and so on), documents certifying the security interests and the dependent claims for each account receivable, and other documents requested by the Second Party. Moreover, the First Party shall disclose all the information required for claiming each account receivable and shall fill out the List of Transferred Accounts Receivable. If the First Party fails to deliver the aforementioned agreements or certifications to the Second Party, the Second Party is not liable to the sales price, except otherwise agreed by the Second Party in writing.

Article 2: Sales Price

1.    The First Party and the Second Party agree that the sales price for each account receivable factored is the price remained upon deduction of the amount for sales returns or sales allowance and other relevant charges approved by the trading terms entered into between the First Party and the Third Party from the amount for each account receivable (taxes included).

2.    With respect to each account receivable factored by the Second Party, the First Party shall request the Second Party advanced partial payment of the sales price. The First Party shall pay the Second Party interests for the aforementioned advanced payment of the sales price as from the date of advanced payment to the date of settlement of the advanced payment actually made by the Third Party. In case of the Third Party's impossibility of performance arising from its financial difficulties in connection with any matter as set forth in the proviso to subparagraph 2 of Article 3 of this Agreement, the interests shall be calculated as of the date of settlement of the remaining sales price by the Second Party. The interest rate for the foregoing interests is set forth in the Factoring Approval Form for each account receivable.

Article 3: The First Party's Obligations and Warranties

1.    The First Party guarantees that each account receivable assigned by the First Party to the Second Party truly exists. Moreover, the First Party guarantees that each account receivable assigned is neither subject to any non-assignment clause and/or statutory restrictions nor subject to any claims by a party other than the Second Party.

2.    The First Party shall guarantee the Third Party's solvency during the assignment of the creditor's right of each account receivable and during the performance of obligations. The "solvency" set out above includes the Third Party's solvency in terms of currency stipulated. Nonetheless, this restriction does not apply within the credit line (See the Factoring Approval Form) granted by the Second Party and upon written consent of the Second Party.

3.    The First Party guarantees that no offsetting, pledge or valid defenses of the Third Party against the First Party occurs to each account receivable assigned by the First Party and that the amount for each account receivable is fixed.

4.    The First Party guarantees that any transaction involved with the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party are executed by normal and legal means. Moreover, the First Party guarantees that it has paid relevant taxes and that the Third Party absolutely has no reasons and rights of defense that are sufficient to extinguish or interfere with the Second Party's exercise of rights.

5.    The First Party guarantees that it has neither cross-investments nor control and subordination with the Third Party, and moreover, the Third Party and its legal representative are not directors, managers, partners and interested parties of the First Party or its affiliated companies, except otherwise agreed by the Second Party in writing.

6.    The First Party shall furnish the Second Party with financial statements, information on the Third Party and the current accounts involved with any trading between the First Party and the Third Party. Moreover, non-disclosure of the Third Party's credit history, solvency and other negative information may not be made to the Second Party in order to facilitate the Second Party's assessment of the Third Party's financial and credit capacity.

7.    The First Party agrees that with respect to the accounts receivable factored by the Second Party, no changes may be made to the contents (for example, the term of payment, the method of payment, and so on) of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party without the consent of the Second Party.

8.    When the amount of accounts receivable from the Third Party exceeds the credit line agreed by the Second Party for factoring, the First Party shall, without condition, assign to the Second Party the amount of accounts receivable in excess of the credit line agreed by the Second Party in such a way that the Second Party exercises the creditor's right for the amount in excess of the credit line on behalf of the First Party. However, this restriction does not apply upon written consent of the Second Party.

9.    In case of the Third Party's claim for rescission or termination of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party, cancellation of purchasing orders, or delay or refusal to perform its obligations, the First Party shall forthwith notify the Second Party together with the reasons in writing. The Second Party may request the First Party a photocopy or an original of the Third Party's relevant documents.

10.   Where transactions are made between the First Party and the Third Party in the form of domestic (or overseas) letters of credit, prepayments or cash within the term of this Agreement, the First Party shall notify the Second Party of the amount for each transaction and the related particulars thereof within ten (10) days upon shipment.

11.   The First Party and the representative thereof or the agent thereof guarantee that the signature(s) (with stamp) on this Agreement, the purchase and sale of each account receivable within the term of this Agreement, and/or any documents issued arising from this Agreement do not violate the authorization, the articles of incorporation, supplementary provisions or other internal resolutions of the company thereof.

12.   The First Party agrees to designate the Demand deposit accounts (DDA) numbered 019310009191 & 019310009132 in the department/branch office _____ of TA CHONG COMMERCIAL BANK LTD. (that is, the Second Party) for the Second Party to pay the sales price as set forth in this Agreement. Within the term of this Agreement, no changes may be made to the preceding account information without the written consent of the Second Party. Moreover, the First Party authorizes the Second Party to deduct from the said demand deposit account any interests, service charges, and all other charges payable to the Second Party arising from the performance of this Agreement. The First Party is responsible for any disputes arising from any insufficiency of the balance in the said demand deposit account for the settlement.

Article 4: The Obligations of the Second Party

1.  The Second Party agrees that it may not disclose the contents of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party to a party other than the First Party and the Third Party, except otherwise for the exercise of rights by a government agency or except where agreed by the First Party in writing.

2.  The Second Party agrees to furnish the First Party with a report on the status of each account receivable settled by the Third Party.

Article 5: Rescission or Termination of the Accounts Receivable Factoring Agreement

1.  The Second Party may rescind the purchase and sale of all or a part of the accounts receivable without notice or reminding under any of the following conditions:

    (1) Where the Third Party refuses repayment or makes a partial repayment at the date of collection of the accounts receivable or where the Third Party indicates in writing that it will refuse repayment or make a partial repayment prior to the date of collection of the accounts receivable, except for any matter as set forth in the proviso to subparagraph 2 of Article 3 of this Agreement;

    (2) Where checks or bills issued by the Third Party are bounced arising from an insufficiency of funds in the checking account, rejected account records, or other reasons or where either the First Party or the Third Party is subject to compulsory execution measures such as provisional attachment (or seizure), provisional injunction (or measure), provisional execution, or final and binding execution, or the settlement of debts through conciliation or bankruptcy proceeding as set forth in Taiwan's Bankruptcy Act, except for any matter as set forth in the proviso to subparagraph 2 of Article 3 of this Agreement;

    (3) Where the First Party and the Third Party privately settle debts through conciliation, except for any matter as set forth in the proviso to subparagraph 2 of Article 3 of this Agreement;

    (4) Where the First Party violates the obligations as set forth in this Agreement;

    (5) Where there is the impossibility of performance of the obligations to the accounts receivable by the Third Party arising from wars, revolutions, riots, strikes, or natural disasters, (for example, tornados, floods, earthquakes, volcanic eruptions, and tides), nuclear explosions or pollution; or

    (6) Where there is the impossibility of performance of the obligations to the accounts receivable by the Third Party arising from a government's order to cease debt settlement or any restrictions imposed on outward remittances arising from political events, economic difficulties, or legislative or administrative measures.

2.  Upon rescission of the accounts receivable by the Second Party as set forth in the preceding subparagraph, the First Party shall, within three (3) days, return the sales price paid prior to the rescission, or the prepaid sales price as set forth in Article 2, subparagraph 2 of this Agreement, together with the interests calculated on the basis of the interest rate set forth in Article 2, subparagraph 2 of this Agreement for the period as from the prepayment of the sales price by the Second Party to the return of the said sales price to the Second Party by the First Party.

Article 6: Payment of Sales Price

1.  Where none of the events as set forth in Paragraph 1 of the previous Article of this Agreement occurs to each of the accounts receivable, the Second Party shall, within three (3) days upon receipt of the payment for each account receivable from the Third Party, remit the remaining sales price (that is, the balance) as set forth in Article 2, subparagraph 2 of this Agreement to the First Party's demand deposit account (DDA) set forth in Article 3, paragraph 12 of this Agreement by telegraphic transfer. The remittance charges required are borne by the First Party.

2.  Where there is no warranty made by the First Party for the Third Party's solvency as set forth in the proviso to subparagraph 2 of Article 3 of this Agreement, and where the First Party has performed the obligations as set forth in this Agreement, despite the Third Party's impossibility of performance of its obligations arising from

the Third Party's insolvency, the Second Party shall, on its own, remit the remaining sales price (that is, the balance) to the First Party's demand deposit account (DDA) set forth in Article 3, paragraph 12 of this Agreement by telegraphic transfer, within 120 days (excluding the time required for the telegraphic transfer) upon expiration of the collection of the amount for the accounts receivable from the Third Party. The remittance charges required are borne by the First Party.

Article 7: Liability to Charges

1. All the charges paid or to be paid by the Second Party to a party other than the First Party and the Third Party arising from the performance of this Agreement shall be borne by the First Party. Moreover, the Second Party may deduct the said charges from the sales price payable to the First Party.

2. The service charges for the factoring may be calculated and collected on the basis of a certain percentage (%) of the amount for each account receivable (See the Factoring Approval Form). The Second Party may either deduct the said service charges at the time of sales price payment or notify the First Party of paying the said service charges in writing. The First Party shall, within three (3) business days upon receipt of notice from the Second Party, pay for the said service charges.

3. All the charges incurred arising from the First Party's performance of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party shall be borne by the First Party and the Third Party, while the Second Party is not liable to the said charges. If the Third Party deducts the said charges from the payment to the Second Party, the Second Party may deduct the said charges already deducted by the Third Party from the sales price payable to the First Party.

Article 8: Other Provisions

1. Upon receipt of a Dispute Notification from the Second Party arising from any of the following business disputes, the First Party shall, within five (5) days, negotiate with the Third Party to resolve the dispute and notify the Second Party of the resolution in writing. If the First Party fails to notify the Second Party of the resolution within the aforementioned time limit in writing or if the resolution is not accepted by the Second Party, the Second Party may rescind the factoring of the said account receivable. The First Party shall return the prepaid sales price as well as the fees so incurred as set forth in Article 5, subparagraph 2 of this Agreement, and may not request the Second Party to return the service charges for factoring previously paid by the First Party. The disputes include:

   (1) Where the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party are unilaterally deemed nullified, void, terminated or rescinded;

   (2) Where there is any impossibility of performance, non-performance, incomplete performance, delay in performance or premature performance by the First Party to the Third Party, and the Third Party refuses this;

   (3) Where the Third Party refuses or fails to accept the shipment or services tendered by the First Party;

   (4) Where the Third Party makes direct payment to the First Party without prior authorization and consent of the Second Party; or

   (5) Where the Third Party files a proceeding or an arbitration request for any disputes arising from the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party.

2. Upon the Second Party's receipt of notice of the disputes set forth in the preceding paragraph filed by the Third Party within 180 days upon expiration of the collection of the said accounts receivable (except where the term of defect warranty stipulated between the First Party and the Third Party is longer than the term set forth above),

the Second Party may rescind or terminate the factoring of the said account receivable, if the First Party fails to negotiate with the Third Party and notify the Second Party of the resolution within the aforementioned time limit in writing or if the resolution is not accepted by the Second Party, upon the Second Party's notice of negotiation and resolution between the First Party and the Third Party as set forth in the preceding subparagraph. If the Second Party has paid up the amount of the said account receivable in full, the First Party shall return the sales price paid, together with interests as set forth in Article 5, subparagraph 2 of this Agreement, and may not request the Second Party to return the service charges for factoring previously paid by the First Party.

3.    The First Party agrees that the Second Party may deduct from the sales price payable to the First Party any debt obligations incurred to the Second Party arising from the performance of this Agreement.

4.    Any written notification as set forth in this Agreement between both parties shall be executed in accordance with the address specified in this Agreement. The other party shall be forthwith notified of any changes to this address in writing; otherwise both parties shall take the address specified in this Agreement (where no notification of changes to this address is made) or the latest address changed upon notification as the address for delivery. Moreover, any notification mailed through the usual postal time may be deemed delivered.

5.    Upon the Second Party's consent of changes to the credit line for the factoring, any due yet uncollected amount for the account receivable prior to changes to the credit line shall have the priority to be set off by any payment collected from the Third Party.

6.    The First Party and the joint guarantor (or surety) shall jointly issue a commercial paper (No. _____) of a certain monetary amount to the Second Party. Where the First Party does not perform its obligations as set forth in this Agreement, the First Party authorizes the Second Party to fill out the date of collection and the interest rate on its own and to present the said commercial paper and claim the payment from the First Party and the joint guarantor. Where no breach of this Agreement is made by the First Party, the Second Party may, upon expiration of this Agreement, return this commercial paper with no interests included to the First Party and the joint guarantor. By making this declaration, the joint guarantor waives its benefit of discussion prescribed in Article 745 of Taiwan's Civil Code.

7.    Where the Third Party makes direct payment of the said account receivable to the First Party, the First Party shall, within seven (7) business days upon receipt of the payment, notify the Second Party of this, and fill out the Notice of Indirect Payment for the Second Party, otherwise the First Party shall, without condition, be liable to any fees (including telegraphs, telephone charges, facsimile charges, and so on) incurred arising from tracing the said payment by the Second Party in the future.

8.    The First Party agrees that, within the term of this Agreement, it may not apply to a party other than the Second Party for services same as or similar to those set forth in this Agreement.

9.    Where significant credit degrading occurs to the First Party, the Second Party may, on its own, rescind the factoring of all or a part of the accounts receivable pursuant to the stipulations of Article 5, subparagraph 2 of this Agreement.

10.   The First Party shall furnish the Second Party with monthly schedules for purchase request filed by the Third Party as well as the shipment schedules of the previous month in order to facilitate the Second Party's verification of the shipment status.

Article 9: Term of this Agreement

This Agreement takes effect upon signing of the Agreement and is valid until September 30, 2005. Where no opposition is made by the First Party and the Second Party in writing upon expiration of this Agreement, this original Agreement shall be deemed automatically extended for one year, and the same shall

govern thereafter. Nonetheless, if no renewal is made to this Agreement upon expiration, this Agreement may govern any not due and/or unsettled accounts receivable factored by the Second Party within the term of this Agreement. The rights entitled to and the obligations liable between the First Party and the Second Party within the term of this Agreement as well as Article 10 and Article 11 of this Agreement are not affected arising from the expiration of the term of this Agreement.

Article 10: Governing Law

This Agreement shall be governed by and shall be construed in all respects in accordance with the laws of the Republic of China. Where obligations and debts arise from this Agreement, the requirements for validity, legal force, and manner of the legal acts shall be governed in accordance with the laws of the Republic of China.

Article 11: Jurisdiction

If litigations arise from this agreement, the First Party and the Second Party hereby submit and consent to the non-exclusive jurisdiction of the court within the jurisdiction of the Second Party's main office or the Second Party's branch office having business relationship with the First Party.

Article 12:

This Agreement is made in duplicate, with each party holding one copy thereof respectively.

Individual clauses:

The parties thereof declare that all the articles set forth in this Agreement have been completely reviewed, fully understood and acknowledged within a reasonable time period, and that the parties thereof will observe them.

|                          | For and on behalf of |
|--------------------------|---------------------|
|                          | CYBERHOME ENTERTAINMENT, INC. |
|                          | Manager Chen |
|                          | [signature:] Jui Mei CHEN |
|                          | Authorized Signature(s) |
| Signing Parties:         | First Party: |

Representative: [illegible signature]

Authorized Signature(s)

Corporate Address:

Account authorized for fund deduction (Please have it marked with the original stamp.):

Manager Chen
For and on behalf of
CYBERHOME ENTERTAINMENT, INC.
[signature:] Jui Mei CHEN
Authorized Signature(s)

Han Ching CHEN          Joint Guarantor: Han Ching CHEN (□□□) (with stamp)

ROC ID card Number: T121377549

Address: No. 10 Yishan Rd., Neighborhood 22, Yangming Li, Beitou District, Taipei City, Taiwan (R.O.C.)

Shun Ai HUANG          Joint Guarantor: Shun Ai HUANG [seal:] Shung Ai Huang

ROC ID card Number: D120723759

Address: 12F., No. 53, Alley 26, Lane 1, Sec. 3, Heping E. Rd., Da-an District, Taipei City, Taiwan (R.O.C.)

Wen He CHEN            Joint Guarantor: Wen He CHEN [seal:] Wen He CHEN

ROC ID card Number: N121846713

Address: No. 25, Dasin Rd., Puyan Township, Changhua County, Taiwan (R.O.C.)

Second Party: TA CHONG COMMERCIAL BANK LTD.

Representative:

Corporate Address:

Dated this 25th day of March 2005

$ay/3 \cdot p4/p$　　③

## 應收帳款債權承購契約書

Cyberhome
Entertainment Luc股份有限公司（以下簡稱甲方）

立約人　　　　　　　　　　　　　　茲因甲方邀同連帶保證人向

大眾商業銀行股份有限公司（以下簡稱乙方）

乙方申請辦理應收帳款債權買賣業務(FACTORING PROGRAM)，經乙方同意買受甲方對其國內（外）特定相對人（以下簡稱丙方）基於買賣契約、勞務契約或其他債權契約而得向丙方請求於一定清償日給付一定金錢之應收帳款債權。本契約有效期間內各筆應收帳款債權之買賣，應於乙方確定承購內容並出具承購同意書後始成立，並均適用本契約書所載條款。雙方就本契約有效期間內應收帳款債權之買賣約定條款如下，以茲遵守：

第一條　應收帳款債權之買賣方式

甲乙雙方同意依下列方式辦理應收帳款債權之買賣：

一、本契約有效期間內，甲方應交付或依乙方要求而交付其所有應收帳款資料予乙方，供乙方選定丙方及/或買受標的之用。

二、乙方選定買受之標的後，即出具承購同意書載明願意受之標的之內容予甲方，甲方應將所有經乙方同意買受之應收帳款債權(含現在已存在及將來發生)讓與乙方，債權讓與日期為乙方所出具承購同意書上所載之日期。經乙方同意買受之額度，乙方得視資金或業務之考量，隨時調整之。

三、就國內應收帳款債權，甲方應於收到乙方承購同意書後，以存證信函將甲乙雙方之應收帳款債權讓與關係明確通知丙方（存證信函副本同時寄送乙方），並應交付經寄達丙方之存證信函之回執予乙方。

四、就國際應收帳款債權，甲方開立予丙方之商業發票應註明付款條件、到期日及下列資料：

　　1、付款條件應為自發票日起九十日內，但經乙方書面同意其他付款條件者不在此限。

　　2、註明乙方為唯一之受讓債權人。

　　3、乙方所要求之轉讓字句(Assignment Clause)，並填具應收帳款轉讓通知書(Notification And Transfer Receivables)。若係第一筆交易，則應另填具貨款明細表與介紹函(Introductory Letter)。

For and on behalf of
CYBERHOME ENTERTA

Authorized

五、本契約有效期間內,乙方得隨時變更或增加選定甲方之相對人(即丙方),甲
　　方應提供其最近之相對人(即丙方)資料供乙方選定之用。對經乙方變更或增
　　加選定之相對人,甲方仍應依前二款約定辦理。

六、乙方依前款約定變更或增加選定相對人時,並不影響變更或增加選定前已成立
　　之應收帳款債權買賣之效力。

七、甲方最遲應於乙方所買受應收帳款債權清償期屆至之十五日內,將讓與之應收
　　帳款債權相關契約或證明文件,如發票影本或正本、丙方簽收單、確認之訂單
　　等、各債權之擔保及從屬權利之證明文件及乙方要求之其他文件交付乙方,並
　　應告知主張各個債權所必要之一切資訊,並填具應收帳款讓與明細表。甲方若
　　未將前開債權相關契約或證明文件交付乙方,乙方不負給付買賣價金責任,但
　　經乙方書面同意者,不在此限。

第二條　買賣價金

一、甲乙雙方同意各筆應收帳款債權之買賣價金為各筆應收帳款債權金額(含稅)
　　於扣除甲丙雙方依其交易條件所認可之銷貨折讓或銷貨退回金額及其他相關
　　費用後之金額。

二、甲方就乙方買受之各筆應收帳款債權,得請求乙方提前支付部分價金。甲方就
　　前開預支之價金,應支付乙方自提前支付價金日起至丙方實際償付甲方所預支
　　之該筆應收帳款債權日止之利息。但有本契約第三條第二項但書之情事而丙方
　　因財務困難有不能付款情形者,其利息應計至乙方應支付剩餘價金之日止。上
　　述利息之利率於各筆應收帳款債權承購同意書內約定之。

第三條　甲方之義務與擔保責任

一、甲方保證其所讓與之應收帳款債權確實存在,並無不得讓與之約定或法定限
　　制,亦無第三人得對之主張任何權利。

二、甲方應擔保丙方於債權移轉時及債務履行時之支付能力,前述支付能力包括丙
　　方以約定之貨幣種類清償債務之能力。但經乙方書面同意者,且在乙方買受之
　　額度內者(詳載於承購同意書),不在此限。

三、甲方保證其所讓與之應收帳款債權無可抵銷、質押或丙方可得對抗甲方之事由
　　等情事,且為金額確定之應收帳款債權。

四、甲方保證其與丙方間之買賣契約、勞務契約或其他債權契約之交易均以正常、
合法方式爲之，並己給付相關稅款，丙方絕無足以消滅或妨礙乙方行使櫂利之
事由或抗辯權存在。

五、甲方保證其與丙方間無互相投資或控制從屬關係，且丙方及其法定代理人均非
甲方或其關係企業之董事、經理人、合夥人或關係人。但經乙方書面同意者，
不在此限。

六、甲方應提供其財務報表、丙方之基本資料及雙方間交易往來帳予乙方，且不得
隱瞞丙方之交易信用、支付能力或其他有關之負面資訊，以協助乙方評估丙方
之財務及信用能力。

七、甲方同意經乙方買受之應收帳款債權，其與丙方間之買賣契約、勞務契約或其
他債權契約內容（例如付款期限、付款方式等），非經乙方同意，不得變更之。

八、甲方對丙方應收帳款之債權金額超過乙方同意之承購額度時，甲方應將超過部
分之應收帳款債權無條件讓與乙方，由乙方代爲行使該部分之債權。但經乙方
書面同意者，不在此限。

九、丙方有解除或終止買賣契約、勞務契約或其他債權契約或取消訂單或其他延
遲、拒絕履行其義務等主張等情事時，甲方應立即以書面通知乙方並敘明原
因，乙方得請求甲方提供丙方書函影本或正本。

十、本契約有效期間內，甲方與丙方間如有以國內（外）信用狀、預付貨款或現金
等交易方式，甲方應將各該筆交易之金額及相關事項於出貨十日內通知乙方。

十一、甲方及其代表人或代理人保證其就本契約書之簽署、本契約有效期間內各筆
應收帳款債權之買賣/或基於本契約書所發出予乙方之任何文件，皆無違反其
公司授權、公司章程、附則或其他內部決議等情事。 0193100091 91

十二、甲方同意指定大眾商業銀行_____（部）分行設立之存款帳號 019310009152
作爲乙方依本契約支付價款之用。於本契約有效期間內，非經乙方書面同
意，甲方不得變更之。甲方並授權乙方得逕自該支付價款帳戶之存款餘額扣
抵甲方基於本契約所應付乙方之利息、手續費及其他一切費用，倘該帳戶因
存款餘額不足而生任何糾紛，概由甲方自負其責。

第四條　乙方之義務

一、 乙方同意不得將甲方與丙方間買賣契約、勞務契約或其他債權契約之內容告知第三人。但政府機關依法行使權力或經甲方書面同意者,不在此限。

二、 乙方同意就丙方對各筆應收帳款債權之付款情形,提供報告予甲方。

第五條　應收帳款債權承購契約之解除或終止

一、 如有下列任一情事發生時,乙方得不經通知或催告逕行解除全部或部分應收帳款債權之買賣:

　　1、丙方於應收帳款債權清償日拒絕付款或為部分付款時,或丙方於清償日前書面表明其將拒絕付款或為部分付款時。但有本合約第三條第二項但書之情形者,不在此限。

　　2、丙方所簽發之票據,因存款不足、拒絕往來或其他原因退票時。甲方或丙方任何一人受假扣押、假處分、假執行、終局執行等強制執行,或依破產法規定之和解或破產程序清理其債務時。但有本合約第三條第二項但書之情形者,不在此限。

　　3、甲方與丙方雙方私下達成任何債務上之和解時。但有本合約第三條第二項但書之情形者,不在此限。

　　4、甲方違反本契約之義務時。

　　5、丙方因戰爭、革命、暴動、罷工或天然災害,如颶風、水災、地震、火山爆發、潮汐等核子爆炸或污染致不能履行付款義務時。

　　6、政府當局下令停止清償債務或任何因政治事件、經濟困難、或立法、行政措施致發生帳款限制匯出之情形使丙方不能履行付款義務時。

二、 乙方依項款約定解除應收帳款債權之買賣後,甲方應於三日內返還乙方於解除前已支付之價金或依第二條第二項預支之價金,並支付乙方自支付價金之日起至甲方返還上開價金日止依第二條第二項所定利率計算之利息。

第六條　價金之支付

一、 各筆買受應收帳款債權如無前條第一項所列任一情事,乙方於收到丙方所支付各筆應收帳款後,應於三日內將第二條第二項所剩之價金餘額,以電匯方式匯入第三條第十二項約定之甲方帳戶,所需匯款費用由甲方負擔。

二、 甲方依本契約第三條第二項但書之規定對丙方之支付能力不負擔保責任者,

於甲方已依約履行卻遭遇丙方因財務困難致有不能付款情事時，乙方仍應自
行負責於丙方清償日屆滿一二〇日內（不含匯款時間）將剩餘價款以匯方
式匯入第三條第十二項約定之甲方帳戶，所需匯款費用由甲方負擔。

第七條　費用之負擔

一、乙方因履行本契約所生已付或應付第三人之一切費用，概由甲方負擔，乙方
並得自應給付之買賣價金中扣抵之。

二、買賣手續費依各筆應收帳款金額一定百分比（％）計收（詳載於承購同意書），
乙方得於支付價金時扣抵，或書面通知甲方自行繳納，甲方應於收到乙方通
知後三個營業日內付款。

三、甲方為履行與丙方間之買賣契約、勞務契約或其他債權契約所生之一切費
用，概由甲方與丙方負擔，與乙方無涉。倘丙方逕於貨款中扣除該等費用時，
乙方並得自給付之買賣價金扣抵之。

第八條　其他約定事項

一、甲方因下列商業糾紛而接獲乙方之商業糾紛通知書後，甲方應於五日內與丙
方協調解決並將處理結果函覆乙方，若甲方未在上開期限內函覆處理結果或
其解決條件不為乙方所同意，乙方得解除該筆應收帳款債權之買賣，甲方應
依第五條第二項約定返還價金及因此所生之費用，且不得請求乙方退還其已
支付之買賣手續費。

1、甲方與丙方間買賣契約、勞務契約或其他債權契約為一方主張不成立、無
效、終止或解除時。

2、甲方對丙方給付不能、不為給付、不為完全之給付、遲延給付或提前給付
而遭丙方拒絕時。

3、甲方之出貨或服務提供，丙方拒絕受領或不能受領時。

4、丙方未經乙方授權同意逕行付款予甲方時。

5、丙方就其與甲方間之買賣契約、勞務契約或其他債權契約提起法律訴訟程
序或商務仲裁。

二、乙方如於該筆買受應收帳款債權清償期屆至後一八〇天內收到丙方提出之前
項商業糾紛通知時（若甲方與丙方雙方約定之瑕疵擔保期限長於上述期限，

則從其約定），經乙方依前款規定通知甲方與丙方協商解決，甲方逾期未解決並函覆乙方，或其解決條件不為乙方所同意時，乙方得解除或終止該筆應收帳款債權之買賣。若乙方已全數付清該筆買賣價金，甲方應依第五條第二項約定返還該筆價金本息，且不得請求乙方退還其已支付之買賣手續費。

三、　甲方因本契約對乙方所生之任何債務，甲方同意乙方得逕自應支付甲方之價金中扣抵之。

四、　雙方依本契約約定之書面通知，均應按本契約書所載地址為之，如有變更，並應立即以書面通知他方。否則，雙方即應以本契約書所載地址（於無變更通知時）或最後受通知之變更後地址為寄達，且經通常之郵遞期間，即視為已送達。

五、　乙方同意承購額度變更後，丙方之任何付款均應優先抵充乙方承購額度變更前已屆期而尚未獲償之應收帳款債權餘額。

六、　甲方與連帶保證人應共同簽發一定金額之本票予乙方收執（票號：＿＿＿＿＿＿），於甲方不履行本契約之義務時，授權乙方得逕行填載到期日、利率後提示請求甲方及連帶保證人付款，如甲方無違約情事時，乙方於本合約期滿時，將該本票無息退還。連帶保證人於此聲明放棄民法第七百四十五條之先訴抗辯權。

七、　若丙方直接將應收帳款付款給甲方時，甲方應在收款後七個營業日內通知乙方，並填具「間接付款通知單」(Notice of Indirect Payment)予乙方，否則甲方應無條件負擔將來乙方因追蹤該筆帳款所發生之費用(如電報、電話、傳真等)。

八、　甲方同意於本約有效期間內，不得向第三人申請辦理與本約相同或類似業務。

九、　甲方信用有重大貶落之情事發生者，乙方得逕行解除全部或部分應收帳款債權之買賣，乙方所解除之應收帳款債權買賣，得按第五條第二項之方式處理。

十、　甲方應每月提供乙方關於丙方向其提出之採購需求預估單及過去一個月之出貨統計表供乙方查對其出貨狀況。

第九條　本約之存續期間

本契約自簽訂之日起生效，有效期間至民國94年9月30日止。期滿雙方如無書面異議，視同依原約定自動展延壹年，爾後亦同。惟本約屆期未續約時，

乙方於本約有效期間內已買受而未到清償日或已屆清償日而未受清償之應收

帳款債權仍依本約辦理。雙方於本契約存續期間內所享有之權利及所負擔之義

務，及本契約書第十、十一條規定，均不因本契約存續期間屆滿而受影響。

第十條　適用法律

本契約之準據法為中華民國法律。依本契約發生債權債務之關係，其法律行為

之成立要件、效力及方式適用中華民國法律。

第十一條　管轄法院

甲乙雙方同意因本契約涉訟時，由乙方總行或所屬與甲方有業務往來之分支機構

所在地之管轄法院為第一審管轄法院。

第十二條　本合約書壹式貳份，由甲乙雙方各執壹份。

個別商議條款：

立約雙方及保證人聲明就前開合約各條文內容已於合理期間審閱完畢，並已充分瞭解及

確認，且願遵守。

For and on behalf of
CYBERHOME ENTERTAINMENT, INC.

*(signature)* 陳紀理

For and on behalf of Signature(s)
CYBERHOME ENTERTAINMENT, INC.

立約人　甲　方：

代表人：
Authorized Signature(s)

營業所：

授權扣款存戶：（請蓋原留印鑑

For and on behalf of
CYBERHOME ENTERTAINMENT

*(signature)*
Authorized Signature(s)

連帶保證人：*(signature)*

身分證字號：　T121379549

住所：台北市北投區陽明華33號直山路t.

黃順惠　連帶保證人：（黃順惠）
　　　　　　　D120723759
　　　　　身分證字號：台北市大安區和平東路三段一巷2號
　　　　　　　55127

　　　　　　住所：
陳文河　連帶保證人：陳文河
　　　　　　身分證字號：N121844713
　　　　　　住所：新竹縣寶山鄉新竹科大新12號
　　乙　　方：大眾商業銀行股份有限公司

　　代 表 人：

　　營 業 所：

中華民國　　　　年　　　月　　　日

EXHIBIT 3



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Livia Cheung, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the attached document "AR Contrcact 20051130", from Chinese to English.

Livia Cheung

Sworn to before me this
29th day of January, 2008

Signature, Notary Public

PAUL D. RALSTON
Notary Public, State of New York
No. 01RA6023867
Qualified in Queens County
Commission Expires May 3, 2011

Stamp, Notary Public

Number                                                                                                      2005/11 – 2006/5

## ACCOUNTS RECEIVABLE FACTORING AGREEMENT

The agreement signing parties are, Cyberhome Entertainment Inc. ("the First Party"), and Ta Chong Commercial Bank Ltd. ("the Second Party").

WHEREAS the First Party, together with a joint guarantor thereof, hereby files an application to the Second Party for accounts receivable factoring (FACTORING PROGRAM), and the Second Party agrees to purchase all of the First Party's accounts receivable to be claimed by the First Party for settlement at a certain date of settlement from specific counterparties ("the Third Party") thereof in Taiwan and overseas countries arising from purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party. The purchase and sale of each account receivable within the term of this Agreement shall be accepted only upon the Second Party's confirmation of the contents of the accounts receivable to be factored together with the Second Party's submission of a Factoring Approval Form, and apply to the terms set forth in this Agreement. Now, therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, both parties hereto agree that the purchase and sale of accounts receivable within the term of this Agreement are set forth as follows:

### Article I: Sale and Purchase of Accounts Receivable

The First Party and the Second Party agree to conduct the sale and purchase of accounts receivable as follows:

I.   Within the term of this Agreement, the First Party shall deliver or deliver upon the Second Party's request for information pertaining to all the accounts receivable to the Second Party such that the Second Party selects the Third Party and/or an object of purchase.

II.  Upon selection of the object of purchase, the Second Party, in its sole discretion, submits to the First Party a Factoring Approval Form covering the contents of the object of purchase. The First Party shall assign to the Second Party all the accounts receivable (including those now existing and hereafter arising) purchased upon consent of the Second Party. The date recorded on the Factoring Approval Form submitted by the Second Party shall be deemed the date of accounts receivable assignment. Moreover, the Second Party may, on the basis of capital or business, adjust the credit line granted upon its consent at any time.

III. Regarding domestic accounts receivable, the First Party, upon receipt of the Factoring Approval Form from the Second Party, shall notify the Third Party of the assignment relationship between the First Party and the Second Party by a legal attest letter (with a copy of the legal attest letter sent to the Second Party by mail). Moreover, the First Party shall deliver to the Second Party the advice of delivery for the legal attest letter from the Third Party.

IV.  As for overseas accounts receivable, commercial invoice(s) issued by the First Party to the Third Party shall state the terms of payment, the collection date and the following information:
   1.  The terms of payment are 90 days from the date of invoice, except otherwise agreed by the Second Party.
   2.  The Second Party is stated as the exclusive assignee of creditor's rights of the accounts receivable.
   3.  The Assignment Clause requested by the Second Party and the Notification and Transfer Receivables to be filled out, the List of Payments and the Introductory Letter to be separately filled out if this is the first transaction.

V.   Within the term of this Agreement, the Second Party may, at any time, change or add any First Party's counterparty (that is, the Third Party). The First Party shall furnish the Second Party with the latest information on its counterparty (that is, the Third Party) for the Second Party to select. Moreover, the First Party shall manage any counterparty changed or added by the Second Party as set forth in the two foregoing subparagraphs of the preceding paragraph.

VI.  The Second Party's change or addition of counterparties as set forth in the preceding subparagraph does not affect the validity of the purchase or sale of accounts receivable concluded prior to change or addition of counterparties.

VII. The First Party shall, within fifteen (15) days upon collection of the accounts receivable factored by the Second Party at the latest, deliver to the Second Party the agreements or certifications pertaining to the assignment of accounts receivable (including the original and photocopies of invoices, receipts from the Third Party, the purchasing orders confirmed and so on), documents certifying the security interests and the dependent claims for each account receivable, and other documents requested by the Second Party. Moreover, the First Party shall disclose all the information required for claiming each account receivable and shall fill out the List of Transferred Accounts Receivable. If the First Party fails to deliver the aforementioned agreements or certifications to the Second Party, the Second Party is not liable to the sales price, except otherwise agreed by the Second Party in writing.

### Article II: Sales Price

I.   The First Party and the Second Party agree that the sales price for each account receivable factored is the price remained upon deduction of the amount for sales returns or sales allowance and other relevant charges approved by the trading terms entered into between the First Party and the Third Party from the amount for each account receivable (taxes included).

II.  With respect to each account receivable factored by the Second Party, the First Party shall request the Second Party advanced partial payment of the sales price. The First Party shall pay the Second Party interests for the aforementioned advanced payment of the sales price as from the date of advanced payment to the date of settlement of the advanced payment actually made by the Third Party. In case of the Third Party's impossibility of performance arising from its financial difficulties in connection with any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement, the interests shall be calculated as of the date of settlement of the remaining sales price by the Second Party. The interest rate for the foregoing interests is set forth in the Factoring Approval Form for each account receivable.

### Article III: The First Party's Obligations and Warranties

I.   The First Party guarantees that each account receivable assigned by the First Party to the Second Party truly exists. Moreover, the First Party guarantees that each account receivable assigned is neither subject to any non-assignment clause and/or statutory restrictions nor subject to any claims by a party other than the Second Party.

II.  The First Party shall guarantee the Third Party's solvency during the assignment of the creditor's right of each account receivable and during the performance of obligations. The "solvency" set out above includes the Third Party's solvency in terms of currency stipulated. Nonetheless, this

restriction does not apply within the credit line (See the Factoring Approval Form) granted by the Second Party and upon written consent of the Second Party.

III.  The First Party guarantees that no offsetting, pledge or valid defenses of the Third Party against the First Party occurs to each account receivable assigned by the First Party and that the amount for each account receivable is fixed.

IV.  The First Party guarantees that any transaction involved with the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party are executed by normal and legal means. Moreover, the First Party guarantees that it has paid relevant taxes and that the Third Party absolutely has no reasons and rights of defense that are sufficient to extinguish or interfere with the Second Party's exercise of rights.

V.  The First Party guarantees that it has neither cross-investments nor control and subordination with the Third Party, and moreover, the Third Party and its legal representative are not directors, managers, partners and interested parties of the First Party or its affiliated companies, except otherwise agreed by the Second Party in writing.

VI.  The First Party shall furnish the Second Party with financial statements, information on the Third Party and the current accounts involved with any trading between the First Party and the Third Party. Moreover, non-disclosure of the Third Party's credit history, solvency and other negative information may not be made to the Second Party in order to facilitate the Second Party's assessment of the Third Party's financial and credit capacity.

VII.  The First Party agrees that with respect to the accounts receivable factored by the Second Party, no changes may be made to the contents (for example, the term of payment, the method of payment, and so on) of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party without the consent of the Second Party.

VIII.  When the amount of accounts receivable from the Third Party exceeds the credit line agreed by the Second Party for factoring, the First Party shall, without condition, assign to the Second Party the amount of accounts receivable in excess of the credit line agreed by the Second Party in such a way that the Second Party exercises the creditor's right for the amount in excess of the credit line on behalf of the First Party. However, this restriction does not apply upon written consent of the Second Party.

IX.  In case of the Third Party's claim for rescission or termination of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party, cancellation of purchasing orders, or delay or refusal to perform its obligations, the First Party shall forthwith notify the Second Party together with the reasons in writing. The Second Party may request the First Party a photocopy or an original of the Third Party's relevant documents.

X.  Where transactions are made between the First Party and the Third Party in the form of domestic (or overseas) letters of credit, prepayments or cash within the term of this Agreement, the First Party shall notify the Second Party of the amount for each transaction and the related particulars thereof within ten (10) days upon shipment.

XI.  The First Party and the representative thereof or the agent thereof guarantee that the signature(s) (with stamp) on this Agreement, the purchase and sale of each account receivable within the term of this Agreement, and/or any documents issued arising from this Agreement do not violate the authorization, the articles of incorporation, supplementary provisions or other internal resolutions of the company thereof.

XII.  The First Party agrees to designate the Demand deposit account (DDA) numbered 019310009132 in the department/branch office _____ of TA CHONG COMMERCIAL BANK LTD. (that is, the Second Party) for the Second Party to pay the sales price as set forth in this Agreement. Within the term of this Agreement, no changes may be made to the preceding account information without the written consent of the Second Party. Moreover, the First Party authorizes the Second Party to deduct from the said demand deposit account any interests, service charges, and all other charges payable to the Second Party arising from the performance of this Agreement. The First Party is responsible for any disputes arising from any insufficiency of the balance in the said demand deposit account for the settlement.

Article IV: The Obligations of the Second Party

I.  The Second Party agrees that it may not disclose the contents of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party to a party other than the First Party and the Third Party, except otherwise for the exercise of rights by a government agency or except where agreed by the First Party in writing.

II.  The Second Party agrees to furnish the First Party with a report on the status of each account receivable settled by the Third Party.

Article V: Rescission or Termination of the Accounts Receivable Factoring Agreement

I.  The Second Party may rescind the purchase and sale of all or a part of the accounts receivable without notice or reminding under any of the following conditions:

   1.  Where the Third Party refuses repayment or makes a partial repayment at the date of collection of the accounts receivable or where the Third Party indicates in writing that it will refuse repayment or make a partial repayment prior to the date of collection of the accounts receivable, except for any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement;

   2.  Where checks or bills issued by the Third Party are bounced arising from an insufficiency of funds in the checking account, rejected account records, or other reasons or where either the First Party or the Third Party is subject to compulsory execution measures such as provisional attachment (or seizure), provisional injunction (or measure), provisional execution, or final and binding execution, or the settlement of debts through conciliation or bankruptcy proceeding as set forth in Taiwan's Bankruptcy Act, except for any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement;

   3.  Where the First Party and the Third Party privately settle debts through conciliation, except for any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement;

   4.  Where the First Party violates the obligations as set forth in this Agreement;

   5.  Where there is the impossibility of performance of the obligations to the accounts receivable by the Third Party arising from wars, revolutions, riots, strikes, or natural disasters, (for example, tornados, floods, earthquakes, volcanic eruptions, and tides), nuclear explosions or pollution; or

   6.  Where there is the impossibility of performance of the obligations to the accounts receivable by the Third Party arising from a government's order to cease debt settlement or any restrictions imposed on outward remittances arising from political events, economic difficulties, or legislative or administrative measures.

II.  Upon rescission of the accounts receivable by the Second Party as set forth in the preceding subparagraph, the First Party shall, within three (3) days, return the sales price paid prior to the rescission, or the prepaid sales price as set forth in Paragraph 2, subparagraph 2 of this Agreement,

together with the interests calculated on the basis of the interest rate set forth in Paragraph 2, subparagraph 2 of this Agreement for the period as from the prepayment of the sales price by the Second Party to the return of the said sales price to the Second Party by the First Party.

Article VI: Payment of Sales Price
I.   Where none of the events as set forth in Paragraph 1 of the previous Article of this Agreement occurs to each of the accounts receivable, the Second Party shall, within three (3) days upon receipt of the payment for each account receivable from the Third Party, remit the remaining sales price (that is, the balance) as set forth in Article II, subparagraph 2 of this Agreement to the First Party's demand deposit account (DDA) set forth in Article III, paragraph 12 of this Agreement by telegraphic transfer. The remittance charges required are borne by the First Party.
II.  Where there is no warranty made by the First Party for the Third Party's solvency as set forth in the proviso to subparagraph 2 of Article III of this Agreement, and where the First Party has performed the obligations as set forth in this Agreement, despite the Third Party's impossibility of performance of its obligations arising from the Third Party's insolvency, the Second Party shall, on its own, remit the remaining sales price (that is, the balance) to the First Party's demand deposit account (DDA) set forth in Article III, paragraph 12 of this Agreement by telegraphic transfer, within 120 days (excluding the time required for the telegraphic transfer) upon expiration of the collection of the amount for the accounts receivable from the Third Party. The remittance charges required are borne by the First Party.

Article VII: Liability to Charges
I.   All the charges paid or to be paid by the Second Party to a party other than the First Party and the Third Party arising from the performance of this Agreement shall be borne by the First Party. Moreover, the Second Party may deduct the said charges from the sales price payable to the First Party.
II.  The service charges for the factoring may be calculated and collected on the basis of a certain percentage (%) of the amount for each account receivable (See the Factoring Approval Form). The Second Party may either deduct the said service charges at the time of sales price payment or notify the First Party of paying the said service charges in writing. The First Party shall, within three (3) business days upon receipt of notice from the Second Party, pay for the said service charges.
III. All the charges incurred arising from the First Party's performance of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party shall be borne by the First Party and the Third Party, while the Second Party is not liable to the said charges. If the Third Party deducts the said charges from the payment to the Second Party, the Second Party may deduct the said charges already deducted by the Third Party from the sales price payable to the First Party.

Article VIII: Other Provisions
I.   Upon receipt of a Dispute Notification from the Second Party arising from any of the following business disputes, the First Party shall, within five (5) days, negotiate with the Third Party to resolve the dispute and notify the Second Party of the resolution in writing. If the First Party fails to notify the Second Party of the resolution within the aforementioned time limit in writing or if the resolution is not accepted by the Second Party, the Second Party may rescind the factoring of the said account receivable. The First Party shall return the prepaid sales price as well as the fees so incurred as set forth in Article V, subparagraph 2 of this Agreement, and may not request the Second Party to return the service charges for factoring previously paid by the First Party. The disputes include:
     1.  Where the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party are unilaterally deemed nullified, void, terminated or rescinded;
     2.  Where there is any impossibility of performance, non-performance, incomplete performance, delay in performance or premature performance by the First Party to the Third Party, and the Third Party refuses this;
     3.  Where the Third Party refuses or fails to accept the shipment or services tendered by the First Party;
     4.  Where the Third Party makes direct payment to the First Party without prior authorization and consent of the Second Party; or
     5.  Where the Third Party files a proceeding or an arbitration request for any disputes arising from the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party.
II.  Upon the Second Party's receipt of notice of the disputes set forth in the preceding paragraph filed by the Third Party within 180 days upon expiration of the collection of the said accounts receivable (except where the term of defect warranty stipulated between the First Party and the Third Party is longer than the term set forth above), the Second Party may rescind or terminate the factoring of the said account receivable, if the First Party fails to negotiate with the Third Party and notify the Second Party of the resolution within the aforementioned time limit in writing or if the resolution is not accepted by the Second Party, upon the Second Party's notice of negotiation and resolution between the First Party and the Third Party as set forth in the preceding subparagraph. If the Second Party has paid up the amount of the said account receivable in full, the First Party shall return the sales price paid, together with interests as set forth in Article V, subparagraph 2 of this Agreement, and may not request the Second Party to return the service charges for factoring previously paid by the First Party.
III. The First Party agrees that the Second Party may deduct from the sales price payable to the First Party any debt obligations incurred to the Second Party arising from the performance of this Agreement.
IV.  Any written notification as set forth in this Agreement between both parties shall be executed in accordance with the address specified in this Agreement. The other party shall be forthwith notified of any changes to this address in writing; otherwise both parties shall take the address specified in this Agreement (where no notification of changes to this address is made) or the latest address changed upon notification as the address for delivery. Moreover, any notification mailed through the usual postal time may be deemed delivered.
V.   Upon the Second Party's consent of changes to the credit line for the factoring, any due yet uncollected amount for the account receivable prior to changes to the credit line shall have the priority to be set off by any payment collected from the Third Party.
VI.  The First Party and the joint guarantor (or surety) shall jointly issue a commercial paper (No. _____) of a certain monetary amount to the Second Party. Where the First Party does not perform its obligations as set forth in this Agreement, the First Party authorizes the Second Party to fill out the date of collection and the interest rate on its own and to present the said commercial paper and claim the payment from the First Party and the joint guarantor. Where no breach of this Agreement is made by the First Party, the Second Party may, upon expiration of this Agreement, return this commercial paper with no interests included to the First Party and the joint guarantor. By making this declaration, the joint guarantor waives its benefit of discussion prescribed in Article 745 of Taiwan's Civil Code.
VII. Where the Third Party makes direct payment of the said account receivable to the First Party, the First Party shall, within seven (7) business days upon receipt of the payment, notify the Second Party of this, and fill out the Notice of Indirect Payment for the Second Party, otherwise the First


Party shall, without condition, be liable to any fees (including telegraphs, telephone charges, facsimile charges, and so on) incurred arising from tracing the said payment by the Second Party in the future.

VIII.    The First Party agrees that, within the term of this Agreement, it may not apply to a party other than the Second Party for services same as or similar to those set forth in this Agreement.

IX.    Where significant credit degrading occurs to the First Party, the Second Party may, on its own, rescind the factoring of all or a part of the accounts receivable pursuant to the stipulations of Article V, subparagraph 2 of this Agreement.

X.    The First Party shall furnish the Second Party with monthly schedules for purchase request filed by the Third Party as well as the shipment schedules of the previous month in order to facilitate the Second Party's verification of the shipment status.

Article IX: Term of this Agreement

This Agreement takes effect upon signing of the Agreement and is valid until May 31, 2006. Where no opposition is made by the First Party and the Second Party in writing upon expiration of this Agreement, this original Agreement shall be deemed automatically extended for one year, and the same shall govern thereafter. Nonetheless, if no renewal is made to this Agreement upon expiration, this Agreement may govern any not due and/or unsettled accounts receivable factored by the Second Party within the term of this Agreement. The rights entitled to and the obligations liable between the First Party and the Second Party within the term of this Agreement as well as Article X and Article XI of this Agreement are not affected arising from the expiration of the term of this Agreement.

Article X: Governing Law

This Agreement shall be governed by and shall be construed in all respects in accordance with the laws of the Republic of China. Where obligations and debts arise from this Agreement, the requirements for validity, legal force, and manner of the legal acts shall be governed in accordance with the laws of the Republic of China.

Article XI: Jurisdiction

If litigations arise from this agreement, the First Party and the Second Party hereby submit and consent to the non-exclusive jurisdiction of the court within the jurisdiction of the Second Party's main office or the Second Party's branch office having business relationship with the First Party.

Article XII.

This Agreement is made in duplicate, with each party holding one copy thereof respectively.

Individual clauses.

The parties thereof shall request accountants for attestation to deliver a photocopy of audit report for financial statements to the Joint Credit Information Center.

For and on behalf of
CYBERHOME ENTERTAINMENT, INC.
[signature:] Chen Jui Mei

The parties thereof declare that all the articles set forth in this Agreement have been compl reasonable time period, and that the parties thereof will observe them.

Authorized Signature(s)ed within a

For and on behalf of

| Signing parties | First Party: | CYBERHOME ENTERTAINMENT, INC. |
| | Representative: | [signature:] Chen Jui Mei |
| | Corporate | Authorized Signature(s) |

48350 Fremont Blvd., Fremont CA 94538

Joint Guarantor: Wen He CHEN
[seal:] Wen He CHEN
ROC ID card Number: N121846713
Address: No. 25, Dasin Rd., 2nd Neighborhood, Puyan
Township, Changhua County 516, Taiwan (R.O.C.)

Joint Guarantor: Han Ching CHEN
[seal:] Han Ching CHEN
ROC ID card Number:
Address: No. 10, Yishan Rd., 20th Neighborhood,
Beitou District, Taipei City, Taiwan (R.O.C.)

For and on behalf of
CYBERHOME ENTERTAINMENT, INC
[signature:] Chen Jui Mei
Authorized Signature(s)

Joint Guarantor: Shun Ai HUANG [seal:] Shun Ai HUANG
ROC ID card Number:
Address: No. 34, Alley 15, Lane 493, Jhonghe St.,
Beitou District, Taipei City, Taiwan (R.O.C.)

Second Party: TA CHONG COMMERCIAL BANK LTD.
Representative:
Corporate Address:

Dated this 30th day of November 2005

| Head of Accounting Department | Accounting undertaken by: |
| --- | --- |
| | |

| (Sales) Manager | Sales Officer | Sales Assistant |
| --- | --- | --- |
| [illegible signature] | | |

# 應收帳款債權承購契約書

立約人：　　　　　　　　　　　　（以下簡稱甲方）　　法國甲方國內連帶保證人：

立約人：　大眾商業銀行股份有限公司（以下簡稱乙方）

乙方申請辦理應收帳款債權買賣業務（FACTORING PROGRAM），經乙方同意買受甲方於一定期間內（外）特定交易對象（以下簡稱兩方）基於買賣契約、勞務契約或其他債權契約而得之而為甲方對於一定債權日始付一定金錢之應收帳款債權。本契約有效期間內各筆應收帳款債權之買賣，應於乙方確定承購內容並出具承購同意書後始成立，並均適用本契約書所載條款。雙方就本契約於有效期間內應收帳款債權之買賣約定條款如下，以茲遵守：

**第一條　應收帳款債權之買賣方式**

甲乙雙方同意依下列方式辦理應收帳款債權之買賣：

一、本契約有效期間內，甲方應交付或依乙方要求而交付其所有應收帳款背書轉予乙方，供乙方選定而方及／或買受標的之用。

二、乙方選定買受之標的後，即出具承購同意書載明願意買受之標的內容者甲方，甲方應將所有經乙方同意買受之應收帳款債權（含現在已存在及將來發生）讓與乙方。債權讓與日期為乙方所出具承購同意書上所載之日期，經乙方同意買受之讓渡，乙方得視資金或業務之考量，隨時調整之。

三、就國內應收帳款債權，甲方應於收到乙方承購同意書後，以存證信函將甲乙雙方之應收帳款債權讓與關係明確通知兩方（存證信函副本同時寄送乙方），並應交付經寄達兩方之存證信函之回執予乙方。

四、就國際應收帳款債權，甲方開立予兩方之商業發票應註明付款條件，列期應為下列情形：

　　1. 付款條件應為自發票日起九十日內，但經乙方書面同意其他情形者不在此限。
　　2. 註明乙方為唯一之受讓債權人。
　　3. 乙方所要求之轉讓字句（Assignment Clause），並填具應收帳款轉讓通知書（Notification And Transfer Receivables）。若係第一筆交易，則應另填具首款明細表與介紹函（Introductory Letter）。

五、本契約有效期間內，乙方得隨時變更或增加選定甲方之相對人（即兩方），甲方應提供其最近之相對人（即兩方）資料供乙方選定之用。對經乙方變更或增加選定之相對人，甲方仍應依前二款約定辦理。

六、乙方依前款約定變更或增加選定相對人時，並不影響變更或增加選定前已成立之應收帳款債權買賣之效力。

七、甲方最遲應於乙方所買受應收帳款債權清償期屆至之十五日內，將讓與之應收帳款債權相關契約或證明文件，如契約影本及正本、兩方簽據單、確認之訂單等、各債權擔保之擔保及從屬權利之證明文件及乙方要求文其他文件交付乙方，並應告知乙票各關債權所必要之一切資訊，並填具應收帳款讓與明細表。甲方若未將請關債權相關契約或證明文件交付乙方，乙方不負給付買賣價金責任，但經乙方書面同意者不在此限。

**第二條　買賣價金**

一、甲乙雙方同意各筆應收帳款債權之買賣價金為各筆應收帳款債權金額（含稅）扣除甲兩雙方交易條件所認可之銷貨折讓或銷貨退回金額及其他扣項費用後之金額。

二、甲方就乙方買受之各筆應收帳款債權，得請求乙方提前支付部分價金，甲方就關開預支之價金，應支付乙方自提前支付價金日起至兩方實際償付甲方所預支款項等到收帳款債權日止之利息。但有本契約第五條第二款約定之情事時，甲方所預先支付之價金不能供款時，其利息應計至乙方應支付剩餘價金之日止，上述利率以相關乙方一筆各應收帳款債權承購同意書內約定之。

**第三條　甲方之義務與擔保責任**

一、甲方保證其所讓與之應收帳款為確實存在，並無任何權益或約定及其他瑕疵，亦存第三人得對之主張任何權利。

二、甲方應擔保丙方於債權移轉時及債務履行時之支付能力，前述支付能力包括丙方以
　　約定之貨幣種類清償債務之能力。但經乙方書面同意者，且在乙方買受之額度內者
　　（詳載於承購同意書），不在此限。

三、甲方保證其所讓與之應收帳款債權無可抵銷、質押或丙方可得對抗甲方之事由等情
　　事，且係金額確定之應收帳款債權。

四、甲方保證其與丙方間之買賣契約、勞務契約或其他債權契約之交易均以正常、合法
　　方式為之，並已給付相關稅款，丙方絕無足以消滅或妨礙乙方行使權利之事由或抗
　　辯權存在。

五、甲方保證其與丙方間無互相投資或控制從屬關係，且丙方及其法定代理人均非甲方
　　或其關係企業之董事、經理人、合夥人或關係人。但經乙方書面同意者，不在此限。

六、甲方應提供其財務報表、丙方之基本資料及雙方間交易往來帳予乙方，且不得隱瞞
　　丙方之交易信用、支付能力或其他有關之負面資訊，以協助乙方評估丙方之財務及
　　信用能力。

七、甲方同意經乙方買受之應收帳款債權，其與丙方間之買賣契約、勞務契約或其他債
　　權契約內容（例如付款期限、付款方式等），非經乙方同意，不得變更之。

八、甲方對丙方應收帳款之債權金額超過乙方同意之承購額度時，甲方應將超過部分之
　　應收帳款債權無條件讓與乙方，由乙方代為行使該部分之債權。但經乙方書面同意
　　者，不在此限。

九、丙方有解除或終止買賣契約、勞務契約或其他債權契約或取消訂單或其他延遲、拒
　　絕履行其義務之主張等情事時，甲方應立即以書面通知乙方並敘明原因，乙方得請
　　求甲方提供丙方書函影本或正本。

十、本契約有效期間內，甲方與丙方間如有以國內（外）信用狀、預付貨款或現金等交
　　易方式，甲方應將各該筆交易之金額及相關事項於出貨十日內通知乙方。

十一、甲方及其代表人或代理人保證其就本契約書之簽署、本契約有效期間內各筆應收帳
　　　款債權之買賣／或基於本契約書所發出予乙方之任何文件，皆屬經其公司授權、
　　　公司章程、附則或其他內部決議等情事。

十二、甲方同意指定大眾商業銀行＿＿＿＿＿＿（部）分行設立之存款帳號 01P31000f152
　　　作為乙方支付價款之用。於本契約有效期間內，非經乙方書面同意，甲方
　　　不得變更之。甲方並授權乙方得逕自該支付價款帳戶之存款餘額扣抵甲方基於本契
　　　約所應付乙方之利息、手續費及其他一切費用，倘該帳戶因存款餘額不足而生任何
　　　糾紛，概由甲方自負其責。

第四條　乙方之義務

一、乙方同意不得將甲方與丙方間買賣契約、勞務契約或其他債權契約之內容告知第三
　　人。但政府機關依法行使權力或經甲方書面同意者，不在此限。

二、乙方同意就丙方對各筆應收帳款債權之付款情形，提供報告予甲方。

第五條　應收帳款債權承購契約之解除或終止

一、如有下列任一情事發生時，乙方得不經通知或催告逕行解除全部或部分應收帳款債
　　權之買賣：

　　1.丙方於應收帳款債權清償日拒絕付款或為部分付款時，或丙方於清償日前書面表
　　　明其將拒絕付款或為部分付款時。但有本合約第三條第二款但書之情形者，不在
　　　此限。

　　2.丙方所簽發之票據，因存款不足、拒絕往來或其他原因退票時。甲方或丙方任何
　　　一人受假扣押、假處分、假執行、終局執行等強制執行，或依破產法規定之和解
　　　或破產程序清理債務時。但有本合約第三條第二款但書之情形者，不在此限。

　　3.甲方與丙方雙方私下達成任何債務上之和解時。但有本合約第三條第二款但書之
　　　情形者，不在此限。

　　4.甲方違反本契約之義務時。

　　5.丙方因戰爭、革命、暴動、罷工或天然災害，如颱風、水災、地震、火山爆發、
　　　潮沙等核子爆炸或污染致不能履行付款義務時。

　　6.政府當局下令停止清償債務或任何因政治事件、經濟困難、或立法、行政措施致
　　　發生帳款限制匯出之情形時，使丙方不能履行付款義務時。

二、乙方依前款約定解除應收帳款債權之買賣後，甲方應於三日內返還乙方於解除前已支付之價金或依第二條第二款預支之價金，並支付乙方自支付價金之日起至甲方返還上開價金日止依第二條第二款所定利率計算之利息。

第六條　價金之支付

一、各筆買受應收帳款債權如無前條第一款所列任一情事，乙方於收到丙方所支付各筆應收帳款後，應於三日內將第二條第二款所剩之價金餘額，以電匯匯入第三條第十二項約定之甲方帳戶，所需匯款費用由甲方負擔。

二、甲方依本契約第三條第二款但書之規定對丙方之支付能力不負擔保責任者，於甲方已依約履行卻遭遇丙方因財務困難致有不能付款情事時，乙方仍應自行負責於丙方清償日屆滿一二〇日內（不含匯款時間）將剩餘價款以電匯方式匯入第三條第十二款約定之甲方帳戶，所需匯款費用由甲方負擔。

第七條　費用之負擔

一、乙方因履行本契約所生已付或應付第三人之一切費用，概由甲方負擔，乙方並得自應給付之買賣價金中扣抵之。

二、買賣手續費依各筆應收帳款金額之一定百分比（％）計收（詳載於承購同意書），乙方得於支付價金時扣抵，或書面通知甲方自行繳納，甲方應於收到乙方通知後三個營業日內付款。

三、甲方為履行與丙方間之買賣契約、勞務契約或其他債權契約所生之一切費用，概由甲方與丙方負擔，與乙方無涉。倘丙方逕於貨款中扣除該等費用時，乙方並得自給付之買賣價金扣抵之。

第八條　其他約定事項

一、甲方因下列商業糾紛而接獲乙方之商業糾紛通知書後，甲方應於五日內與丙方協調解決並將處理結果函覆乙方，若甲方未在上開期限內函覆處理結果或其解決條件不為乙方所同意，乙方得解除該筆應收帳款債權之買賣，乙方應依第五條第二款約定返還價金及因此所生之費用，且不得請求乙方退還其已支買賣手續費。

　　1.甲方與丙方間買賣契約、勞務契約或其他債權契約有一方主張不成立、無效、終止或解除時。

　　2.甲方對丙方給付不能、不為給付、不為完全之給付、遲延給付或提前給付而遭丙方拒絕時。

　　3.甲方之出貨或服務提供，丙方拒絕受領或不能受領時。

　　4.丙方未經乙方授權同意逕行付款予甲方時。

　　5.丙方就其與甲方間之買賣契約、勞務契約或其他債權契約提起法律訴訟程序或商務仲裁。

二、乙方如於該筆買受應收帳款債權清償期屆至後一八〇天內收到丙方提出之前項商業糾紛通知時（若甲方與丙方雙方約定之瑕疵擔保期限長於上述期限，則從其約定），經乙方依前款規定通知甲方與丙方協商解決，甲方逾期未解決並函覆乙方，或其解決條件不為乙方所同意時，乙方得解除或終止該筆應收帳款債權之買賣。若乙方已全數付清該筆買賣價金，甲方應依第五條第二款約定返還該筆價金本息，且不得請求乙方退還其已支付之買賣手續費。

三、甲方因本契約對乙方所生之任何債務，甲方同意乙方得逕自應支付甲方之價金中扣抵之。

四、雙方依本契約約定之書面通知，均應按本契約書所載地址為之，如有變更，並應立即以書面通知他方。否則，雙方即應以本契約書所載地址（於無變更通知時）或最後受通知之變更後地址為寄達，且經通常之郵遞期間，即視為已送達。

五、乙方同意承購額度變更後，丙方之任何付款均應優先抵充乙方承購額度變更前已屆期而尚未獲償之應收帳款債權餘額。

六、甲方與連帶保證人應共同簽發一定金額之本票予乙方收執（票號：＿＿＿＿＿），於甲方不履行本契約之義務時，授權乙方得逕行填載到期日、利率後提示請求甲方及連帶保證人付款，如甲方無違約情事時，乙方於本契約期滿時，將該本票無息退還。連帶保證人於此聲明拋棄民法第七百四十五條之先訴抗辯權。

七、若丙方直接將應收帳款付款給甲方時，甲方應在收款後七個營業日內通知乙方，並

具具「間接討款通知單」（Notice of Indirect Payment）予乙方，否則甲方應與條件負擔指示乙方因退還該筆帳款所發生之費用（如電報、電話、傳真等）。

八、甲方同意於本約有效期間內，不得向第三人申請辦理與本約相同或類似業務。

九、甲方適用有重大瑕疵之情事發生者，乙方得進行解除全部或部分應收帳債權擔之買賣，乙方所解除之應收帳款債權買賣，得按第五條第二款之方式處理。

十、甲方應每月提供乙方關於西方向其提出之採購需求預估單及過去一個月之出貨統計表供乙方查對其出貨狀況。

九條　本契約之存續期間

本契約自簽約之日起生效，有效期間至民國 75 年 5 月 31 日止。期滿雙方如無書面異議，視同依原約定自動展延壹年，屆後亦同。惟本約屆期未續約時，乙方於本契約有效期間內已讓受而未到清償日或已屆清償日而未受清償之應收帳款債權仍依本約辦理。雙方於本契約之存續期間內所享有之權利及所負擔之義務，及本契約書第十、十一條規定，均不因本契約存續期間屆滿而受影響。

十條　適用法律

本契約之準據法為中華民國法律。依本契約發生債權債務之關係，其法律行為之成立要件、效力及方式適用中華民國法律。

十一條　管轄法院

甲乙雙方同意因本契約之涉訟時，由乙方總行或所屬與甲方有業務往來之分支機構所在地之管轄法院為第一審管轄法院。

十二條　本契約書壹式貳份，甲乙雙方各執乙份。

立約人 甲 方： Chen Jui Mei
代 表 人：
營 業 所： Authorized Signature

提批扣款存戶：（請蓋原留印鑑）  Chen Jui Mei

連帶保證人： 陳文河
身分證字號： N121346715
住 所：

連帶保證人：
身分證字號：
住 所：

乙 方：大眾商業銀行股份有限公司
代 表 人：
營 業 所：

中 華 民 國        年        月        日

| 業務主管 | 帳務經辦 | | （業務）經理 | 業務專員 | 業務助理員 |
|---|---|---|---|---|---|
| | | | | | |

EXHIBIT 4



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Livia Cheung, hereby certify that the following is, to the best of my knowledge
and belief, a true and accurate translation of the attached document "AR Contrcact
20060613", from Chinese to English.

Livia Cheung

Sworn to before me this
29th day of January, 2008

Signature, Notary Public

PAUL D. RALSTON
Notary Public, State of New York.
No. 01RA6023867
Qualified in Queens County
Commission Expires May 3, 2011

Stamp, Notary Public

Exhibit 3

2006/6 – 2006/11
## ACCOUNTS RECEIVABLE FACTORING AGREEMENT

The agreement signing parties are, Cyberhome Entertainment Inc. ("the First Party"), and Ta Chong Commercial Bank Ltd. ("the Second Party"),

    WHEREAS the First Party hereby files an application to the Second Party for accounts receivable factoring (FACTORING PROGRAM), and the Second Party agrees to purchase all of the First Party's accounts receivable to be claimed by the First Party for settlement at a certain date of settlement from specific counterparties ("the Third Party") thereof in Taiwan and overseas countries arising from purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party. The purchase and sale of each account receivable within the term of this Agreement shall be accepted only upon the Second Party's confirmation of the contents of the accounts receivable to be factored, together with the Second Party's submission of a Factoring Approval Form, and apply to the terms set forth in this Agreement. Now, therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, both parties hereto agree that the purchase and sale of accounts receivable within the term of this Agreement are set forth as follows:

[cutoff seal]

Article I. Sale and Purchase of Accounts Receivable
The First Party and the Second Party agree to conduct the sale and purchase of accounts receivable as follows:

I.    Within the term of this Agreement, the First Party shall deliver or deliver upon the Second Party's request for information pertaining to all the accounts receivable to the Second Party such that the Second Party selects the Third Party and/or an object of purchase

II.    Upon selection of the object of purchase, the Second Party, in its sole discretion, submits to the First Party a Factoring Approval Form covering the contents of the object of purchase. The First Party shall assign to the Second Party all the accounts receivable (including those now existing and hereafter arising) purchased upon consent of the Second Party. The date recorded on the Factoring Approval Form submitted by the Second Party shall be deemed the date of accounts receivable assignment. Moreover, the Second Party may, on the basis of capital or business, notify the First Party of terminating or reducing the credit line granted upon consent of the Second Party in words or by telephone, facsimile, electronic mail, express delivery or post. Nonetheless, the credit line granted upon consent of the Second Party prior to the termination or reduction of the credit line shall have its legal force not affected.

III.    Regarding domestic accounts receivable, the First Party, upon receipt of the Factoring Approval Form from the Second Party, shall notify the Third Party of the assignment relationship between the First Party and the Second Party by a legal attest letter or a notice sent upon consent of the Second Party (with a copy of the legal attest letter sent to the Second Party by mail). Moreover, the First Party shall deliver to the Second Party the advice of delivery for the legal attest letter from the Third Party or the advice of delivery for the notice signed by the Third Party. Furthermore, the uniform invoice issued by the First Party to the Third Party needs to be marked with the "Assignment Clause".

IV.    As for overseas accounts receivable, commercial invoice(s) issued by the First Party to the Third Party shall state the terms of payment, the collection date and the following information:
    1.    The terms of payment are 90 days from the date of invoice, except otherwise agreed by the Second Party.
    2.    The Second Party is stated as the exclusive assignee of creditor's rights of the accounts receivable.
    3.    The Assignment Clause requested by the Second Party and the Description of Assigned Accounts Receivables to be filled out; the Introductory Letter to be separately filled out if this is the first transaction.

V.    Within the term of this Agreement, the Second Party may, at any time, change or add any First Party's counterparty (that is, the Third Party). The First Party shall furnish the Second Party with the latest information on its counterparty (that is, the Third Party) for the Second Party to select. Moreover, the First Party shall manage any counterparty changed or added by the Second Party as set forth in the two foregoing subparagraphs of the preceding paragraph.

VI.    The Second Party's change or addition of counterparties as set forth in the preceding subparagraph does not affect the validity of the purchase or sale of accounts receivable concluded prior to change or addition of counterparties.

VII.    The First Party shall, within fifteen (15) days upon collection of the accounts receivable factored by the Second Party at the latest, deliver to the Second Party the agreements or certifications pertaining to the assignment of accounts receivable (including the original and photocopies of invoices, receipts from the Third Party, the purchasing orders confirmed and so on), documents certifying the security interests and the dependent claims for each account receivable, and other documents requested by the Second Party. Moreover, the First Party shall disclose all the information required for claiming each account receivable and shall fill out the List of Transferred Accounts Receivable. If the First Party fails to deliver the aforementioned agreements or certifications to the Second Party, the Second Party is not liable to the sales price, except otherwise agreed by the Second Party in writing.

940726 Revised Version (Authorization Waiver Master Agreement Version)

Article II: Sales Price

I.   The First Party and the Second Party agree that the sales price for each account receivable factored is the price remained upon deduction of the amount for sales returns or sales allowance and other relevant charges approved by the trading terms entered into between the First Party and the Third Party from the amount for each account receivable (taxes included).

II.  With respect to each account receivable factored by the Second Party, the First Party shall request the Second Party advanced partial payment of the sales price. The First Party shall pay the Second Party interests for the aforementioned advanced payment of the sales price as from the date of advanced payment to the date of settlement of the advanced payment actually made by the Third Party. In case of the Third Party's impossibility of performance arising from its financial difficulties in connection with any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement, the interests shall be calculated as of the date of settlement of the remaining sales price by the Second Party. The interest rate for the foregoing interests is set forth in the Factoring Approval Form for each account receivable.

Article III: The First Party's Obligations and Warranties

I.    The First Party guarantees that each account receivable assigned by the First Party to the Second Party truly exists. Moreover, the First Party guarantees that each account receivable assigned is neither subject to any non-assignment clause and/or statutory restrictions nor subject to any claims by a party other than the Second Party.

II.   The First Party shall guarantee the Third Party's solvency during the assignment of the creditor's right of each account receivable and during the performance of obligations. The "solvency" set out above includes the Third Party's solvency in terms of currency stipulated. Nonetheless, this restriction does not apply within the credit line (See the Factoring Approval Form) granted by the Second Party and upon written consent of the Second Party.

[cutoff seal]

III.  The First Party guarantees that no offsetting, pledge or valid defenses of the Third Party against the First Party occurs to each account receivable assigned by the First Party and that the amount for each account receivable is fixed.

IV.   The First Party guarantees that any transaction involved with the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party are executed by normal and legal means. Moreover, the First Party guarantees that it has paid relevant taxes and that the Third Party absolutely has no reasons and rights of defense that are sufficient to extinguish or interfere with the Second Party's exercise of rights.

V     The First Party guarantees that it has neither cross-investments nor control and subordination with the Third Party, and moreover, the Third Party and its legal representative are not directors, managers, partners and interested parties of the First Party or its affiliated companies, except otherwise agreed by the Second Party in writing.

VI.   The First Party shall furnish the Second Party with financial statements, information on the Third Party and the current accounts involved with any trading between the First Party and the Third Party. Moreover, non-disclosure of the Third Party's credit history, solvency and other negative information may not be made to the Second Party in order to facilitate the Second Party's assessment of the Third Party's financial and credit capacity.

VII   The First Party agrees that with respect to the accounts receivable factored by the Second Party, no changes may be made to the contents (for example, the term of payment, the method of payment, and so on) of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party without the consent of the Second Party.

VIII. When the amount of accounts receivable from the Third Party exceeds the credit line agreed by the Second Party for factoring, the First Party shall, without condition, assign to the Second Party the amount of accounts receivable in excess of the credit line agreed by the Second Party in sub a way that the Second Party exercises the creditor's right for the amount in excess of the credit line on behalf of the First Party. However, this restriction does not apply upon written consent of the Second Party.

IX.   In case of the Third Party's claim for rescission or termination of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party, cancellation of purchasing orders, or delay or refusal to perform its obligations, the First Party shall forthwith notify the Second Party together with the reasons in writing. The Second Party may request the First Party a photocopy or an original of the Third Party's relevant documents.

X.    Where transactions are made between the First Party and the Third Party in the form of domestic (or overseas) letters of credit, prepayments or cash within the term of this Agreement, the First Party shall notify the Second Party of the amount for each transaction and the related particulars thereof within ten (10) days upon shipment.

XI.   The First Party and the representative thereof or the agent thereof guarantee that the signature(s) (with stamp) on this Agreement, the purchase and sale of each account receivable within the term of this Agreement, and/or any documents issued arising from this Agreement do not violate the authorization, the articles of incorporation, supplementary provisions or other internal resolutions of the company thereof.

XII.  The First Party agrees to designate the Demand deposit account (DDA) numbered 019310009132 in the department/branch office ___OBU___ of TA CHONG COMMERCIAL BANK LTD. (that is, the Second Party) for the Second Party to pay the sales price as set forth in this Agreement. Within the term of this Agreement, no changes may be made to the preceding account information without the written consent of the Second Party. Moreover, the First Party authorizes the Second Party to deduct from the said demand deposit account any interests, service charges, and all other charges payable to the Second Party arising from the performance of this Agreement. The First Party is responsible for any disputes arising from any insufficiency of the balance in the said demand deposit account for the settlement.

Article IV: The Obligations of the Second Party

I.   The Second Party agrees that it may not disclose the contents of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party to a party other than the First Party and the Third Party, except otherwise for the exercise of rights by a government agency or except where agreed by the First Party in writing.

II.  The Second Party agrees to furnish the First Party with a report on the status of each account receivable settled by the Third Party.

940726 Revised Version (Authorization Waiver Master Agreement Version)

Article V. Rescission or Termination of the Accounts Receivable Factoring Agreement

I.  The Second Party may rescind the purchase and sale of all or a part of the accounts receivable without notice or reminding under any of the following conditions:

 1.  Where the Third Party refuses repayment or makes a partial repayment at the date of collection of the accounts receivable or where the Third Party indicates in writing that it will refuse repayment or make a partial repayment prior to the date of collection of the accounts receivable, except for any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement;

 2.  Where checks or bills issued by the Third Party are bounced arising from an insufficiency of funds in the checking account, rejected account records, or other reasons or where either the First Party or the Third Party is subject to compulsory execution measures such as provisional attachment (or seizure), provisional injunction (or measure), provisional execution, or final and binding execution, or the settlement of debts through conciliation or bankruptcy proceeding as set forth in Taiwan's Bankruptcy Act, except for any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement;

 3.  Where the First Party and the Third Party privately settle debts through conciliation, except for any matter as set forth in the proviso to subparagraph 2 of Article III of this Agreement;

 4.  Where the First Party violates the obligations as set forth in this Agreement;

 5.  Where there is the impossibility of performance of the obligations to the accounts receivable by the Third Party arising from wars, revolutions, riots, strikes, or natural disasters, (for example, tornados, floods, earthquakes, volcanic eruptions, and tides), nuclear explosions or pollution; or
                                                                                                    [cutoff seal]

 6.  Where there is the impossibility of performance of the obligations to the accounts receivable by the Third Party arising from a government's order to cease debt settlement or any restrictions imposed on outward remittances arising from political events, economic difficulties, or legislative or administrative measures.

II.  Upon rescission of the accounts receivable by the Second Party as set forth in the preceding subparagraph, the First Party shall, within three (3) days, return the sales price paid prior to the rescission, or the prepaid sales price as set forth in Article 2, subparagraph 2 of this Agreement, together with the interests calculated on the basis of the interest rate set forth in Article 2, subparagraph 2 of this Agreement for the period as from the prepayment of the sales price by the Second Party to the return of the said sales price to the Second Party by the First Party.

Article VI: Payment of Sales Price

I.  Where none of the events as set forth in Paragraph 1 of the previous Article of this Agreement occurs to each of the accounts receivable, the Second Party shall, within three (3) days upon receipt of the payment for each account receivable from the Third Party, remit the remaining sales price (that is, the balance) as set forth in Article II, subparagraph 2 of this Agreement to the First Party's demand deposit account (DDA) set forth in Article III, paragraph 12 of this Agreement by telegraphic transfer. The remittance charges required are borne by the First Party.

II.  Where there is no warranty made by the First Party for the Third Party's solvency as set forth in the proviso to subparagraph 2 of Article III of this Agreement, and where the First Party has performed the obligations as set forth in this Agreement, despite the Third Party's impossibility of performance of its obligations arising from the Third Party's insolvency, the Second Party shall, on its own, remit the remaining sales price (that is, the balance) to the First Party's demand deposit account (DDA) set forth in Article III, paragraph 12 of this Agreement by telegraphic transfer, within 120 days (excluding the time required for the telegraphic transfer) upon expiration of the collection of the amount for the accounts receivable from the Third Party. The remittance charges required are borne by the First Party.

Article VII: Liability to Charges

I.  All the charges paid or to be paid by the Second Party to a party other than the First Party and the Third Party arising from the performance of this Agreement shall be borne by the First Party. Moreover, the Second Party may deduct the said charges from the sales price payable to the First Party.

II.  The service charges for the factoring may be calculated and collected on the basis of a certain percentage (%) of the amount for each account receivable (See the Factoring Approval Form). The Second Party may either deduct the said service charges at the time of sales price payment or notify the First Party of paying the said service charges in writing. The First Party shall, within three (3) business days upon receipt of notice from the Second Party, pay for the said service charges.

III.  Credit line management fees may be calculated and collected on the basis of a certain percentage (%) of the amount for the Third Party's account receivable factored upon consent of the Second Party (See the Factoring Approval Form). The First Party shall, within three (3) business days upon receipt of a Factoring Approval Form from the Second Party, pay the Second Party for the said credit line management fees. If the Second Party collects credit line management fees, the Second Party shall not, in its sole discretion, terminate or reduce the said credit line to the said Third Party, prior to the expiration of the said credit line, except where the Second Party has evidence to substantiate the Third Party's significant credit degrading such that there is impossibility of performance of the obligations as set forth in this Agreement by the Third Party or except where the First Party violates the obligations as set forth in this Agreement.

IV.  All the charges incurred arising from the First Party's performance of any purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party shall be borne by the First Party and the Third Party, while the Second Party is not liable to the said charges. If the Third Party deducts the said charges from the payment to the Second Party, the Second Party may deduct the said charges already deducted by the Third Party from the sales price payable to the First Party.

Article VIII: Other Provisions

I. Upon receipt of a Dispute Notification from the Second Party arising from any of the following business disputes, the First Party shall, within five (5) days, negotiate with the Third Party to resolve the dispute and notify the Second Party of the resolution in writing. If the First Party fails to notify the Second Party of the resolution within the aforementioned time limit in writing or if the resolution is not accepted by the Second Party, the Second Party may rescind the factoring of the said account receivable. The First Party shall return the prepaid sales price as well as the fees so incurred as set forth in Article V, subparagraph 2 of this Agreement, and may not request the Second Party to return the factoring service charges previously paid by the First Party. The disputes include:

   1. Where the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party are unilaterally deemed nullified, void, terminated or rescinded;
   2. Where there is any impossibility of performance, non-performance, incomplete performance, delay in performance or premature performance by the First Party to the Third Party, and the Third Party refuses this;
   3. Where the Third Party refuses or fails to accept the shipment or services tendered by the First Party;
   4. Where the Third Party makes direct payment to the First Party without prior authorization and consent of the Second Party; or
   5. Where the Third Party files a proceeding or an arbitration request for any disputes arising from the purchase and sales agreements, employment agreements or other loan agreements entered into between the First Party and the Third Party.

II. Upon the Second Party's receipt of notice of the disputes set forth in the preceding paragraph filed by the Third Party within 180 days upon expiration of the collection of the said accounts receivable (except where the term of defect warranty stipulated between the First Party and the Third Party is longer than the term set forth above), the Second Party may rescind or terminate the factoring of the said account receivable, if the First Party fails to negotiate with the Third Party and notify the Second Party of the resolution within the aforementioned time limit in writing or if the resolution is not accepted by the Second Party, upon the Second Party's notice of negotiation and resolution between the First Party and the Third Party as set forth in the preceding subparagraph. If the Second Party has paid up the amount of the said account receivable in full, the First Party shall return the sales price paid, together with interests as set forth in Article V, subparagraph 2 of this Agreement, and may not request the Second Party to return the service charges for factoring previously paid by the First Party.

III. The First Party agrees that the Second Party may deduct from the sales price payable to the First Party any debt obligations incurred to the Second Party arising from the performance of this Agreement.

IV. Upon the Second Party's consent of changes to the credit line for the factoring, any due yet uncollected amount for the accounts receivable prior to changes to the credit line shall have the priority to be set off by any payment collected from the Third Party.

[cutoff seal]

V. The First Party shall issue a commercial paper of a certain monetary amount to the Second Party. Where the First Party does not perform its obligations as set forth in this Agreement (including commercial papers changed or added thereafter), the First Party authorizes the Second Party to fill out the date of collection and the interest rate on its own and to present the said commercial paper and claim the payment from the First Party. Where no breach of this Agreement is made by the First Party, the Second Party may, upon expiration of this Agreement, return this commercial paper with no interests included to the First Party.

VI. Where the Third Party makes direct payment of the said account receivable to the First Party, the First Party shall, within seven (7) business days upon receipt of the payment, notify the Second Party of this, and fill out the Notice of Indirect Payment for the Second Party, otherwise the First Party shall, without condition, be liable to any fees (including telegraphs, telephone charges, facsimile charges, and so on) incurred arising from tracing the said payment by the Second Party in the future.

VII. The First Party agrees that, within the term of this Agreement, it may not apply to a party other than the Second Party for services same as or similar to those set forth in this Agreement with respect to the Third Party's accounts receivable factored upon consent by the Second Party.

VIII. The First Party shall, within one month upon signing this Agreement, complete the assignment of the first account receivable as set forth in Article I of this Agreement, and thereafter, shall continuously assign to the Second Party all the remaining accounts receivable factored upon consent of the Second Party from the Third Party. Moreover, the First Party shall pay the charges as set forth in Article VII of this Agreement. Nonetheless, this restriction may not apply except where it is agreed by the Second Party in writing.

IX. Where the First Party violates the preceding two subparagraphs, the Second Party may request the First Party to return the amount paid as set forth in Article II of this Agreement, together with interests calculated based on the annual interest rate of 15% or a default fine of NT$ 500,000.

X. Where significant credit degrading occurs to the First Party for the accounts receivable with recourse factored by the Second Party as set forth in the former section, subparagraph 2, Article III of this Agreement, the Second Party may, on its own, rescind the factoring of all or a part of the accounts receivable pursuant to the stipulations of Article V, subparagraph 2 of this Agreement.

XI. The First Party shall furnish the Second Party with monthly schedules for purchase request filed by the Third Party as well as the shipment schedules of the previous month in order to facilitate the Second Party's verification of the shipment status.

XII. The First Party agrees that with respect to the amount of accounts receivable in excess of the credit line agreed to be factored by the Second Party/the proportion of prepaid sales price for the accounts receivable, whether entered into the account or not, the said payable amount and the funds deposited into the reserve account are set as pledges for the Second Party to be taken as collaterals for all the obligations between the First Party and the Second Party. Moreover, this Agreement is taken as a certificate for pledge. If the First Party has any unsettled obligations (including those with liabilities) owed to the Second Party, the Second Party is not required to return the remaining sales price as set forth in Article VI, subparagraph 1 of this Agreement. Where the First Party violates the obligations as set forth in the other agreements, the Second Party may have the priority to offset all the First Party's obligations owed to the Second Party, and return the balance if available.

- 4 -

940726 Revised Version (Authorization Waiver Master Agreement Version)

Article IX: Notice

I.  Any written notification as set forth in this Agreement between both parties shall be executed in accordance with the address specified in this Agreement. The other party shall be forthwith notified of any changes to this address in writing; otherwise both parties shall take the address specified in this Agreement (where no notification of changes to this address is made) or the latest address changed upon notification as the address for delivery. Moreover, any notification mailed through the usual postal time may be deemed delivered.

II. The First Party agrees the followings for notifying the Second Party by facsimile:

    1   The First Party is entirely liable to any acts and results undertaken by the Second Party with respect to the notice sent by the First Party by facsimile. Moreover, the First Party agrees that the Second Party receiving a facsimile notice marked with the First Party's stamp or the signature (with stamp) of an authorized person may trust that the said notice has been issued by the First Party. Furthermore, acts and results undertaken by the Second Party with respect to the notice sent by the First Party by facsimile are entirely binding to the First Party. Nonetheless, the Second Party needs not to verify whether the said facsimile notice is falsified, or issued (or sent) by a non-authorized person.

    2.  Where the facsimile notice is hard to be legible arising from the facsimile transmission process, the Second Party has the right to refuse to undertake the contents specified on the First Party's facsimile notice. Moreover, the Second Party is not liable to any delay in, errors of, or inaccuracy of facsimile transmission or execution caused by the breakdown or faults of the facsimile machine.

Article X: Stamp(s) and the Notice of Changes to the Stamp(s)

The First Party agrees that each contract or agreement or document entered into with the Second Party is deemed effective on the basis of the stamp retained on the First Party's chop. Where changes occur to the company registration information, the authority of the representative, stamps or other events sufficient to affect the performance of obligations, the First Party shall notify the Second Party in writing, and apply for changes to the stamp. Prior to the notice to the Second Party and the execution of changes to the stamp, the original stamp remains effective. In other words, the First Party is liable to all the transactions with the Second Party executed using the First Party's original stamp.

[cutoff seal]

Article XI: Loss, Extinguishment or Destruction of Debt Obligations

Where loss, extinguishment or destruction occurs to the debt obligations for each obligation liable to the Second Party by the First Party, except where the Second Party shall have the errors, if confirmed, rectified, the First Party will either issue another debt obligation upon notice of the Second Party as a receipt to the Second Party, or perform the obligations as set forth in the monetary amount in the Second Party's account books, invoices, computer printed bills, debt obligations, photocopies of communications, and microfilms.

Article XII: Processing of Personal Information

The First Party agrees that the Second Party, the Joint Credit Information Center, the Small and Medium Enterprise Credit Guarantee Fund of Taiwan, Financial Information Service Center (now called the "Financial Information Service Co., Ltd."), Taiwan Clearing House, assignees (individuals) of the Second Party's creditor's rights and obligations, individuals or institutions/organizations authorized by the Second Party to undertake services on behalf of the Second Party may, on the basis of their respective business items or the service items set out in the articles of incorporation, engage in the collection, computer processing, international delivery or transmission, and the use of the First Party's profile information. Moreover, the Second Party is taken as the representative for obtaining the approval of the preceding financial institutions.

Article XIII: Term of this Agreement

This Agreement takes effect upon signing of the Agreement and is valid as of November 30, 2006. Where no opposition is made by the First Party and the Second Party in writing upon expiration of this Agreement, this original Agreement shall be deemed automatically extended for one year, and the same shall govern thereafter. Nonetheless, if no renewal is made to this Agreement upon expiration, this Agreement may govern any not due and/or unsettled accounts receivable factored by the Second Party within the term of this Agreement. The rights entitled to and the obligations liable between the First Party and the Second Party within the term of this Agreement as well as Article XIV and Article XV of this Agreement are not affected arising from the expiration of the term of this Agreement.

Article XIV: Governing Law

This Agreement shall be governed by and shall be construed in all respects in accordance with the laws of the Republic of China. Where obligations and debts arise from this Agreement, the requirements for validity, legal force, and manner of the legal acts shall be governed in accordance with the laws of the Republic of China.

Article XV: Jurisdiction

If litigations arise from this agreement, the First Party and the Second Party hereby submit and consent to the non-exclusive jurisdiction of the court within the jurisdiction of the Second Party's main office or the Second Party's branch office having business relationship with the First Party.

940726 Revised Version (Authorization Waiver Master Agreement Version)

Article XVI: This Agreement is made in duplicate, with each party holding one copy thereof respectively.

Individual clauses

The parties thereof shall request accountants for attestation to deliver a photocopy of audit report for financial statements to the Joint Credit Information Center.

For and on behalf of
CYBERHOME ENTERTAINMENT, INC.
. . . . . . . . . . . . . . . [illegible seal] . . . . . . . . . . . . . .
Authorized Signature(s)

The parties thereof declare that all the articles set forth in this Agreement have been completely reviewed, fully understood and acknowledged within a reasonable time period, and that the parties thereof will observe them.

First Party:

For and on behalf of
CYBERHOME ENTERTAINMENT, INC.
. . . . . . . . . . . . . . . [illegible seal] . . . . . . . . . . . . . .
Authorized Signature(s)

Representative: Tim Wu
Corporate Address:
Postal Address: 8F., No. 166, Daye Rd., Beitou District, Taipei City, Taiwan (R.O.C.)
Telephone Number: 6611-6618
Facsimile Number: 2897-8093
E-mail:
Contact Person:

Account authorized for fund deduction: (Please have it marked with the original stamp.)

For and on behalf of
CYBERHOME ENTERTAINMENT, INC.
. . . . . . . . . . . . . . . [illegible seal] . . . . . . . . . . . . . .
Authorized Signature(s)

Second Party: TA CHONG COMMERCIAL BANK LTD.
Representative:
Corporate Address:

35,000

[illegible] 7000

Dated this 13th day of June 2006

940726 Revised Version (Authorization Waiver Master Agreement Version)

附件三

# 應收帳款債權承購契約書

立約人 (Yulong Eataterinment (以下簡稱甲方)                  並因甲方向

火泉商業銀行股份有限公司 (以下簡稱乙方)

乙方申請辦理應收帳款債權買賣業務(FACTORING PROGRAM),經乙方同意買受甲方對其國內(外)特定相對人(以下簡稱丙方)基於買賣契約、勞務契約或其他債權契約而得向丙方請求於一定清償日給付一定金錢之應收帳款債權。本契約有效期間內含各筆應收帳款債權之買賣,應於乙方確定承購內容並出具承購同意書後始成立,並均適用本契約書所載條款。雙方就本契約有效期間內應收帳款債權之買賣約定條款如下,以茲遵守:

## 第一條    應收帳款債權之買賣方式

甲乙雙方同意依下列方式辦理應收帳款債權之買賣:

一、 本契約有效期間,甲方應交付或依乙方要求而交付其所有應收帳款資料予乙方,供乙方選定丙方及/或買受標的之用。

二、 乙方選定買受之樣的後,即出具承購同意書載明願意買受之樣的內容予甲方,甲方應將所有經乙方同意買受之應收帳款債權(含現在已存在及將來發生)讓與乙方,債權讓與日期為乙方所出具承購同意書上所載之日期。經乙方同意買受之額度,乙方得視資金或業務之考量,以口頭、電話、傳真、電子郵件、快遞或郵件等方式通知甲方終止或減少之,惟就終止或減少額度前已同意買受之應收帳款債權部份,其效力應不受影響。

三、 就國內應收帳款債權,甲方應於收到乙方承購同意書後,以存證信函或經乙方同意之通知函將甲乙雙方之應收帳款債權讓與關係明確通知丙方(存證信函副本同時寄送乙方),並應交付經寄達丙方之存證信函之回執或經丙方簽回之通知函回執聯予乙方。另甲方關立予丙方之統一發票需加註「轉讓字句」。

四、 就國際應收帳款債權,甲方關立予丙方之商業發票應註明付款條件、到期日及下列資料:
   1、 付款條件應為自發票日起九十日內,但經乙方書面同意其他付款條件者不在此限。
   2、 註明乙方為唯一之受讓債權人。
   3、 乙方所要求之轉讓字句(Assignment Clause),並填具應收帳款讓與細表(Description of Assigned Accounts Receivables)。若係第一筆交易,則應另填具介紹函(Introductory Letter)。

五、 本契約有效期間內,乙方得隨時變更或增加選定甲方之相對人(即丙方),甲方應提供其最近之相對人(即丙方)資料供乙方選定之用。對經乙方變更或增加選定之相對人,甲方仍應依前二款之規定辦理。

六、 乙方依前款約定變更或增加選定相對人時,並不影響變更或增加選定前已成立之應收帳款債權買賣之效力。

七、 甲方最遲應於乙方所買受應收帳款債權清償期屆至之十五日內,將讓與之應收帳款債權相關契約或證明文件,如發票影本或正本、丙方簽收單、確認之訂單等、各債權之擔保及從屬權利之證明文件及乙方要求之其他文件交付乙方,並填告知主張各個債權所必要之一切資訊,並填具應收帳款讓與明細表。甲方若未將前開債權相關契約或證明文件交付乙方,乙方不負給付買賣價金責任,但經乙方書面同意者,不在此限。

第二條　　買賣價金

一、 甲乙雙方同意各筆應收帳款債權之買賣價金為各筆應收帳款債權金額（含稅）於扣除甲乙雙方依其
交易條件所認可之銷貨折讓或經貨退回金額及其他相關費用後之金額。

二、 甲方就乙方買受之各筆應收帳款債權，得請求乙方撥前支付部分價金。甲方就前開預支之價金，應
支付乙方自撥前支付價金日起至兩方實際償付甲方所預支之該筆應收帳款債權日止之利息。但若本契
約第三條第二款但書之情事而兩方因財務困難而不能付款情形者，其利息屆計至乙方應支付剩餘價金
之日止。上述利息之利率於各筆應收帳款債權承購同意書內約定之。

第三條　　甲方之義務與擔保責任

一、 甲方保證其所讓與之應收帳款債權確實存在，並無不得讓與之約定或法定限制，亦無第三人得對之
主張任何權利。

二、 甲方應擔保雙方於承讓移轉時各債權屆付時之支付能力，前述支付能力包括兩方以約定之貨幣種類
清償債款之能力。但經乙方書面同意者，且於乙方買受之額度內者（詳載於承購同意書）。不在此限。

三、 甲方保證其所讓與之應收帳款債權無可抵銷、質押或兩方可得對抗甲方之事由等情事，且為金額確
定之應收帳款債權。

四、 甲方保證其與兩方間之買賣契約、勞務契約或其他債權契約之交易均以正當、合法方式為之，並已
給付相關款項，兩方絕無足以消滅或妨礙乙方行使權利之事由或抗辯權存在。

五、 甲方保證其與兩方間無互相投資或控制從屬關係，且兩方及其法定代理人均非甲方或其關係企業之
董事、經理人、合夥人或顧問人。但經乙方書面同意者，不在此限。

六、 甲方應提供其財務報表、兩方之基本資料及雙方間交易往來帳單予乙方，且不得隱瞞兩方之交易信用、
支付能力或其他有關之負面資訊，以協助乙方評估兩方之財務及信用能力。

七、 甲方同意經乙方買受之應收帳款債權，其與兩方間之買賣契約、勞務契約或其他債權契約內容（例
如付款期限、付款方式等），非經乙方同意，不得變更之。

八、 甲方對兩方應收帳款之債權金額超過乙方同意之承購額度時，甲方應將超過部分之應收帳款債權為
條件讓與乙方，由乙方代為行使該部分之債權。但經乙方書面同意者，不在此限。

九、 兩方有解除或終止買賣契約、勞務契約或其他債權契約或取消訂單或其他延遲、拒絕履行其義務之
主張等情事時，甲方應立即以書面通知乙方並說明原因，乙方得請求甲方提供兩方書面影本或正本。

十、 本契約有效期間內，甲方與兩方間如有以國內（外）信用狀、預付貨款或現金等交易方式，甲方應
將各該筆交易之金額及相關事項於出貨十日內通知乙方。

十一、 甲方及其代表人或代理人保證其就本契約所為之簽署、本契約有效期間內各筆應收帳款債權之買賣/
或基於本契約書所發出予乙方之任何文件，皆為違反其公司技權、公司章程、附則或其他內部決議等
情事。

十二、 甲方同意指定大眾商業銀行 ＯＢＵ （部）分行設立之存款帳號 ０１９３１００２９１３～
作為乙方依本契約之支付價款之用。於本契約有效期間內，非經乙方書面同意，甲方不得變更之。甲
方並授權乙方得逕自該支付價款帳戶之存款餘額扣抵甲方基於本契約所應付乙方之利息、手續費及其
他一切費用，倘該帳戶因存款餘額不足而生任何糾紛，概由甲方自負其責。

第四條　　乙方之義務

一、 乙方同意不得將甲方與兩方間買賣契約、勞務契約或其他債權契約之內容告知第三人。但政府機關
依法行使權力或經甲方書面同意者，不在此限。

二、 乙方同意就兩方對各筆應收帳款償還之付款情形，提供報告予甲方。

第五條　　應收帳款債權求償契約之解除或終止

一、如有下列任一情事發生時，乙方得不經通知或催告逕行解除全部或部分應收帳款債權之買賣：

    1、兩方於應收帳款債權清償日拒絕付款或為部分付款時，或兩方於清償日前嚴而表明其將拒絕付款或為部分付款時，但有本合約第三條第二款但書之情形者，不在此限。

    2、兩方所簽發之票據，因存款不足、拒絕往來或其他原因退票時。甲方或兩方任何一人受假扣押、假處分、假執行、終局執行等強制執行，或依破產法規定之和解或破產程序清理其債務，或聲請重整或宣告破產，或信用有重大敗落之情事時。但有本合約第三條第二款但書之情形者，不在此限。

    3、甲方與兩方雙方私下達成任何債務上之和解時。但有本合約第三條第二款但書之情形者，不在此限。

    4、甲方違反本契約之義務時。

    5、兩方因戰爭、革命、暴動、罷工或天然災害，如颱風、水災、地震、火山爆發、潮汐等核子爆炸或污染致不能履行付款義務時。

    6、政府當局下令停止清償債務或任何因政治事件、經濟困難、或立法、行政措施致發生帳款限制區出之情形使兩方不能履行付款義務時。

二、乙方依前款約定解除應收帳款債權之買賣後，甲方應於三日內返還乙方於解除前已支付之價金或依第二條第二款預支之價金，並支付乙方自支付價金之日起至甲方返還上開價金日止依第二條第二款所定利率計算之利息。

第六條　　價金之支付

一、各筆買賣應收帳款債權如無前條第一款所列任一情事，乙方於收到自兩方所支付各筆應收帳款後，應於三日內將第二條第二款所剩之價金餘額，以電匯方式匯入第三條第十二項約定之甲方帳戶，所需匯款費用由甲方負擔。

二、甲方依本契約第三條第二款但書之規定對兩方之支付能力不負擔保責任者，於甲方已依約履行卻遭遇兩方回財務困難致有不能履行帳款事時，乙方仍應自行負責於兩方清償日屆滿一二○日內（不含匯款時間）將剩餘價款以電匯方式匯入第三條第十二項約定之甲方帳戶，所需匯款費用由甲方負擔。

第七條　　費用之負擔

一、乙方因履行本契約所生已付或應付第三人之一切費用，擬由甲方負擔，乙方並得自應給付之買賣價金中扣抵之。

二、買賣手續費依各筆應收帳款發票金額一定百分比（％）計收（詳載於承購同意書），乙方得於支付價金時扣抵，或書面通知甲方自行繳納，甲方應於收到乙方通知後三個營業日內付款。

三、額度管理費依乙方同意買受之兩方應收帳款之承購額度一定百分比(%)計收(詳載於承購同意書)，甲方應於乙方發給承購同意書最後三個營業日內給付予乙方。倘乙方收取額度管理費，應不得於額度到期日前針對該特定之兩方任意終止或縮減承購額度，但乙方有其他足資認為兩方有債信敗落之具體情事，致兩方有不能履行交易契約之義務之虞者或甲方有違反本契約之義務者不在此限。

四、甲方為履行與兩方間之買賣契約、勞務契約或其他債權契約所生之一切費用，擬由甲方與兩方負擔，與乙方無涉。倘兩方逾於貨款中扣除該等費用時，乙方並得自給付之買賣價金中扣抵之。

第八條　　其他約定事項

一一、甲方因下列兩案判紛而撤獲乙方之商業糾紛適如左後，甲方屆於五日內與兩方協調解決並將處理結果函復乙方，若甲方未在上開期限內函復處理結果或其前決條件不為乙方所同意，乙方得解除該筆應收帳款催補之責責，甲方屆依第五條第二款約定返還價金及因此所生之費用，且不得請求乙方返還其已支付之買責手續費。

　1、　甲方與兩方間買責契約、勞務契約或其他債權契約為一方主張不成立、無效、終止或解除時。
　2、　甲方對兩方給付不能、不為給付、不為完全之給付、遲延給付或提前給付而遭兩方拒絕時。
　3、　甲方之出貨或服務提供，兩方拒絕受領或不能受領時。
　4、　兩方未經乙方核權同意進行付款予甲方時。
　5、　兩方就其與甲方間之買責契約、勞務契約或其他債權契約提起法律訴訟程序或商務仲裁。

二、乙方如於該筆買受應收帳款債權清償期屆至後一八〇天內收到兩方提出之前項兩案糾紛通知時（若甲方與兩方約定之現疵擔保期限長於上述期限，則從其約定），經乙方依前款規定通知甲方與兩方協商解決，甲方逾期未解決並函復乙方，或其解決結件不為乙方所同意時，乙方得解除或終止該筆應收帳款債權之買責。若乙方已全數付清該筆買責價金，甲方屆依第五條第二款約定返還該筆價金本息，且不得請求乙方返還其已支付之買責手續費。

三、甲方因本契約對乙方所生之任何債務，甲方同意乙方得逕自應支付甲方之價金中扣抵之。

四、甲方同意承購額度變更後，兩方之任何付款約屆優先抵充乙方承購額度變更前屆期而尚未獲償之應收帳款債權餘額。

五、甲方屆簽發一定金額之本票予乙方收執，於甲方不履行本契約之義務時（含其後更新或增提之本票），授權乙方得逕行填載到期日、利率後提示請求甲方付款，如甲方無違約情事時，乙方於本合約期滿時，將該本票無息返還。

六、若兩方直接將應收帳款付款給甲方時，甲方屆在收款後七個營業日內通知乙方，並填具「間接付款通知單」(Notice of Indirect Payment)予乙方，否則甲方屆無條件負擔將來乙方因追蹤該筆帳款所發生之費用(如電報、電話、傳真等)。

七、甲方同意於本約有效期間內，不得就乙方同意買受之兩方之應收帳款向第三人申請辦理與本約相同或類似業務。

八、甲方屆於簽訂本契約之日後一個月內依第一條之規定完成首筆應收帳款之轉讓手續，其後並屆就對乙方同意買受之兩方之全部應收帳款為持續之轉讓，並依第七條之約定支付費用。但經乙方書面同意者，不在此限。

九、若甲方違反第二款之約定時，乙方得請求甲方返還乙方依第二條所給付之金額，並請求以年利率15%計算之利息或達約金新台幣伍拾萬元整。

十、乙方依本契約第三條第二款前段辦理有追索權之應收帳款承購，偏甲方信用有重大瑕疵之情事發生者，乙方得逕行解除全部或部分應收帳款債權之買責，乙方所解除之應收帳款債權買責，得按第五條第二款之方式處理。

十一、甲方屆每月提供乙方關於兩方向其提出之採購需求預估單及過去一個月之出貨統計表供乙方查對其出貨狀況。

十二、甲方同意就經逕乙方願承購額度/預支價金成款之應收帳款，不論入帳與否，就該應收帳款及存入備償帳戶之款項皆設定權利質權予乙方，以作為甲方與乙方往來一切債務之擔保，並以本契約為設質



之憑證，倘甲方對乙方尚有債務(含或有負債)未為清償，乙方得不依本契約第六條第一款約定返還剩餘保全，且倘甲方亦違反往來契約所定之義務時，乙方得先抵償甲方對乙方所負之一切債務，若有剩餘，再行返還。

第九條　　通知

一、雙方依本契約約定之書面通知，均應按本契約首所載地址為之，如有變更，並應立即以書面通知他方。各別，雙方即應以本契約書所載地址（於無變更通知時）或最後受通知之變更後地址為寄送，且經通常之郵遞期間，即視為已送達。

二、甲方為使用電傳設備向乙方為通知，並同意如左：

　1、甲方對於乙方依照甲方電傳通知所為之任何行為與結果負完全之責任。甲方同意乙方收到電傳通知上蓋有甲方留存之印鑑章或被授權人之簽章者，即得信賴確認通知為甲方所簽發並對甲方完全之拘束力，乙方毋須查證該電傳通知是否係偽造或由無授權之人所為。

　2、對於電傳通知回傳送過程不易辨識者，乙方有權拒絕執行甲方電傳通知之內容。因電傳設備之故障或失誤所導致傳訊或執行之遲延、失誤或不正確，乙方無須負任何責任。

第十條　　印鑑及變更事項之通知

甲方同意與乙方往來之各個契據及書類，僅憑蓋置甲方在印鑑卡所留存印鑑即生效力。甲方倘關於公司登記事項、代表人權限、印鑑或其他足以影響履行義務之變更情事發生時，應以書面通知乙方，並為印鑑之變更申請。在未通知乙方及印鑑變更完成前，原留印鑑仍繼續有效，一切因使用原留印鑑與乙方所為之交易，甲方願負其責。

第十一條　　債權憑證之遺失、滅失或毀損

甲方對乙方所負之各筆債務，其債權憑證如有遺失、滅失或毀損等情事，除憑證明確有錯誤，乙方應更正之外，甲方願依乙方通知另立債權憑證，提供乙方收執，或依據乙方帳簿、傳票、電腦製作之單據、債權憑證、往來文件之影印、縮影本等所載金額履行債務。

第十二條　　個人資料之處理

甲方同意乙方及財團法人金融聯合徵信中心、財團法人中小企業信用保證基金、金融資訊服務中心、票據交換所、受讓乙方債權債務之人、受乙方委任代為處理事務之人或其他業務相關機構，可依其營業登記項目或章程所定業務需要等特定目的，乙方及上開機構等將蒐集、電腦處理、國際傳遞及利用甲方之個人資料，並以乙方為取得同意之金融機構代表。

第十三條　　本契約之存續期間

本契約自簽訂之日起生效，有效期間至民國95年11月3日止。期滿雙方如無書面異議，視同依原約定自動展延壹年，爾後亦同。惟本約屆期未續約時，乙方於本約有效期間內已貸受而未到清償日或已屆清償日而未受清償之處收帳款債權仍依本約辦理。雙方於本契約存續期間內所享有之權利及所負擔之義務，及本契約書第十四、十五條規定，均不因本契約存續期間屆滿而受影響。

第十四條　　適用法律

本契約之準據法為中華民國法律。依本契約發生債權債務之關係，其法律行為之成立要件、效力及方式適用中華民國法律。

第十五條　　管轄法院

甲乙雙方同意因本契約涉訟時，由乙方總行或所屬與甲方有業務往來之分支機構所在地之管轄法院為第一審管轄法院。

第十六條　本契約書壹式兩份，由甲乙雙方各執壹份。

個別商議條款：

立約人應要求變更意旨及提立約書附隨附約補表
委託報告副本送達到國法人生註冊合作信中心。

立約雙方聲明就前開合約各條文內容已於合理期間審閱完畢，並已充分瞭解及確認。且願遵守。

or and on behalf of
CYBERHOME ENTERTAINMENT. INC

Authorized Signature(s)

立約人　甲　方：

or and on behalf of
CYBERHOME ENTERTAINMENT. INC.

Authorized Signature(s)

代表人：　Tom Wu

營業所：

通知地址：台北市大業路166號8F

電話：6611-6618

傳真：2899-5893

E-mail：

聯絡人：

or and on behalf of
CYBERHOME ENTERTAINMENT. INC

Authorized Signature(s)

授權扣款帳戶：（請至原留印鑑）

乙　方：大眾商業銀行股份有限公司

代表人：

營業所：

中　華　民　國　　　95. 6. 13　　年　　　　月　　　　日

EXHIBIT 5

Notification and Transfer of Receivables

In accordance with the terms of the Factoring Agreement, we hereby notify you of goods sold and delivered and/or services performed by us as represented by the following invoices (copies enclosed), of which the originals

(a) Bear the notation prescribed by you in accordance with the Standard Conditions incorporated in the said agreement and
(b) Have been sent to the relevant Debtors

| No. | Debtor | Invoice No. | Invoice date | Invoice Amount | Due date | Remark |
|-----|--------|-------------|--------------|----------------|----------|--------|
| 1 | HITACHI | 69980 | 8/18/2005 | 49,476.00 | 11/16/2005 | |
| 2 | HITACHI | 69981 | 8/18/2005 | 42,408.00 | 11/16/2005 | |
| 3 | HITACHI | 69982 | 8/18/2005 | 42,408.00 | 11/16/2005 | |
| 4 | HITACHI | ✓69983 | 8/18/2005 | 113,088.00 | 11/16/2005 | |
| 5 | HITACHI | ✓69984 | 8/18/2005 | 28,272.00 | 11/16/2005 | |
| 6 | HITACHI | ✓69985 | 8/18/2005 | 63,612.00 | 11/16/2005 | |
| 7 | HITACHI | ✓69986 | 8/18/2005 | 49,476.00 | 11/16/2005 | |
| 8 | HITACHI | 69987 | 8/18/2005 | 63,612.00 | 11/16/2005 | |
| 9 | HITACHI | ✓69988 | 8/18/2005 | 98,952.00 | 11/16/2005 | |
| 10 | HITACHI | ✓70104 | 8/18/2005 | 28,272.00 | 11/16/2005 | |
| 11 | HITACHI | ✓70105 | 8/18/2005 | 42,408.00 | 11/16/2005 | |
| Total | | | | 621,984.00 | | |

Credit Note

| NO. | Debtor's name | Cr.Note NO | Cr Note date | Invoice Reference | Credit Note Amount | Remark |
|-----|---------------|------------|--------------|-------------------|--------------------|--------|
| | | | | | | |
| Total number of cr. Notes: | | | Total credit note amount: | | | |

for and on behalf of
CYBERHOME ENTERTAINMENT, INC.

Authorized Signature(s)

Authorized Signature

24-Aug-2005  12:20                    08/24 '05 14:3?        04/08

## Notification and Transfer of Receivables

In accordance with the terms of the Factoring Agreement, we hereby notify you of goods sold and delivered and/or services performed by us as represented by the following invoices (copies enclosed), which the originals

(a) Bear the notation prescribed by you in accordance with the Standard Conditions incorporated in the said agreement and

(b) Have been sent to the relevant Debtors

| No. | Debtor | Invoice No. | Invoice date | Invoice Amount | Due date | Remark |
|-----|--------|-------------|--------------|----------------|----------|--------|
| 1 | HITACHI | 70435 | 8/19/2005 | 37,629.00 | 11/17/2005 | |
| 2 | HITACHI | 70436 | 8/19/2005 | 23,730.00 | 11/17/2005 | |
| 3 | HITACHI | 70437 | 8/19/2005 | 27,120.00 | 11/17/2005 | |
| 4 | HITACHI | 70438 | 8/19/2005 | 23,730.00 | 11/17/2005 | |
| 5 | HITACHI | 70439 | 8/19/2005 | 13,560.00 | 11/17/2005 | |
| 6 | HITACHI | 70440 | 8/19/2005 | 27,120.00 | 11/17/2005 | |
| 7 | HITACHI | 70441 | 8/19/2005 | 20,340.00 | 11/17/2005 | |
| 8 | HITACHI | 70442 | 8/19/2005 | 27,120.00 | 11/17/2005 | |
| 9 | HITACHI | 70445 | 8/19/2005 | 25,086.00 | 11/17/2005 | |
| Total | | | | 225,435.00 | | |

Credit Note

| NO. | Debtor's name | Cr.Note NO | Cr Note date | Invoice Reference | Credit Note Amount | Remark |
|-----|---------------|------------|--------------|-------------------|--------------------|--------|
| | | | | | | |
| Total number of cr. Notes: | | | Total credit note amount: | | | |

For and on behalf of
CYBER... ENTERTAINMENT. INC.

Authorized Signature(s)

Authorized Signature

Ta Cheng Bank          8'   87869797          09/19 '05 17    NO.    05/05

## Notification and Transfer of Receivables

In accordance with the terms of the Factoring Agreement, we hereby notify you of goods sold and delivered and/or services performed by us as represented by the following invoices (copies enclosed), of which the originals

(a) Bear the notation prescribed by you in accordance with the Standard Conditions incorporated in the said agreement and

(b) Have been sent to the relevant Debtors

| No. | Debtor | Invoice No. | Invoice date | Invoice Amount | Due date | Remark |
|---|---|---|---|---|---|---|
| 1 | HITACHI | 71638 | 9/13/2005 | 142,380.00 | 12/12/2005 | |
| 2 | HITACHI | 71639 | 9/13/2005 | 113,904.00 | 12/12/2005 | |
| 3 | HITACHI | 71640 | 9/13/2005 | 86,106.00 | 12/12/2005 | |
| 4 | HITACHI | 71641 | 9/13/2005 | 56,952.00 | 12/12/2005 | |
| 5 | HITACHI | 71642 | 9/13/2005 | 199,332.00 | 12/12/2005 | |
| 6 | HITACHI | 71644 | 9/13/2005 | 56,952.00 | 12/12/2005 | |
| 7 | HITACHI | 71645 | 9/13/2005 | 56,952.00 | 12/12/2005 | |
| 8 | HITACHI | 71646 | 9/13/2005 | 113,904.00 | 12/12/2005 | |
| 9 | HITACHI | 71647 | 9/13/2005 | 23,730.00 | 12/12/2005 | |
| 10 | HITACHI | 71648 | 9/13/2005 | 47,460.00 | 12/12/2005 | |
| 11 | HITACHI | 71649 | 9/13/2005 | 33,900.00 | 12/12/2005 | |
| 12 | HITACHI | 71650 | 9/13/2005 | 33,900.00 | 12/12/2005 | |
| 13 | HITACHI | 71651 | 9/13/2005 | 20,340.00 | 12/12/2005 | |
| 14 | HITACHI | 71652 | 9/13/2005 | 16,950.00 | 12/12/2005 | |
| 15 | HITACHI | 71653 | 9/13/2005 | 8,136.00 | 12/12/2005 | |
| 16 | HITACHI | 71654 | 9/13/2005 | 13,560.00 | 12/12/2005 | |
| 17 | HITACHI | 71655 | 9/13/2005 | 16,272.00 | 12/12/2005 | |
| 18 | HITACHI | 71656 | 9/13/2005 | 16,950.00 | 12/12/2005 | |
| 19 | HITACHI | 71657 | 9/13/2005 | 33,900.00 | 12/12/2005 | |
| 20 | HITACHI | 71658 | 9/13/2005 | 33,900.00 | 12/12/2005 | |
| 21 | HITACHI | 71844 | 9/13/2005 | 13,560.00 | 12/12/2005 | |
| 22 | HITACHI | 71845 | 9/13/2005 | 56,952.00 | 12/12/2005 | |
| 23 | HITACHI | 71846 | 9/13/2005 | 10,848.00 | 12/12/2005 | |
| 24 | HITACHI | 71847 | 9/13/2005 | 56,952.00 | 12/12/2005 | |
| 25 | HITACHI | 71848 | 9/13/2005 | 142,380.00 | 12/12/2005 | |
| Total | | | | 1,406,172.00 | | |

Credit Note

| NO. | Debtor's name | Cr.Note NO | Cr Note date | Invoice Reference | Credit Note Amount | Remark |
|---|---|---|---|---|---|---|
| | | | | | | |
| Total number of cr. Notes: | | | Total credit note amount: | | | |

For and on behalf of
CYBERHOME ENTERTAINMENT, INC.

Chen Jui Mei

Authorized Signature(s)

Authorized Signature

經　理　副　理　裏　理　經　辦

EXHIBIT 6

CIT Commercial Services          T. 213 613-2400
300 South Grand Avenue
Los Angeles, CA 90071



May 5, 2004

Mr. David Chang
Vice President
Ta Chong Bank, Ltd.
No. 2, 11ᵗʰ Floor, Shin-Yi Road
Taipei, 110 Taiwan, R.O.C.

Dear Mr. Chang:

As promised, attached please find the fully executed FCI Interfactor Agreement between
Ta Chong Bank, Ltd., and The CIT Group/Commercial Services, Inc., for your records.

We look forward to a mutually beneficial relationship with your company. If you have
any questions, please do not hesitate to contact me.

Sincerely,

Vivian Lee
Managing Director
Pan Pacific Business Group

VL/bw
Attachments

FCI INTERFACTOR AGREEMENT

THIS AGREEMENT is made this _30^{th}_ day of April, 2004, by and between The CIT Group/Commercial Services, Inc., located at 1211 Avenue of the Americas, New York, NY 10036 ("CIT") and Ta Chong Bank, Ltd. located at No. 2, 11th Floor, Shin-Yi Road, Taipei 110, Taiwan ("Company").

## W I T N E S S E T H:

WHEREAS, Company and CIT will from time to time engage the services of the other to act as Import Factor with respect to sale of goods or rendering of services to debtors located in the country(ies) where the Import Factor's services are to be performed;

NOW, THEREFORE, in consideration of the mutual agreements herein contained, it is hereby agreed between the parties as follows:

1.      Each of the parties hereby subscribes to and agrees to be bound by all of the terms and provisions of the General Rules for International Factoring ("GRIF"), the edifactoring.com Rules and the Rules of Arbitration, all promulgated by the Factors Chain International as formally revised from time to time, subject to the following country modifications:

_____

_____

_____

_____

2.      The services to be performed by CIT or Company, as Import Factor shall be rendered with respect to sellers designated by the parties from time to time and at such commission rates or other compensation as may be mutually agreed upon with respect to each seller.

3.      Neither of the parties shall be obliged to engage the services of the other exclusively but each party shall be free to engage the services of any other factoring organizations located in the country(ies) where the parties perform factoring services.

4.      This Agreement shall take effect as of the date set out above and shall continue indefinitely, subject to termination by either party on 60 days' prior written notice to the other but such termination shall not apply to, modify or otherwise affect the obligations of the parties hereunder or under the GRIF, the edifactoring.com Rules and the Rules of Arbitration with respect to transactions occurring, accounts receivable transferred or indebtedness incurred prior to the effective date of such termination.

Except in relation to assignments of receivables made before July 1, 2002, this Agreement contains all the matter agreed between the parties in relation to the receivables included by Article 3 of the GRIF and all agreements, warranties, representations and other statements made by the Import Factor or the Export Factor to the other before the making of this Agreement and the reliance on any usages or practices are excluded.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed by their respective corporate officers thereunto duly authorized as of the day and year first above written.

TA CHONG BANK, LTD.                          THE CIT GROUP/COMMERCIAL SERVICES, INC.

By: _____                  By: _____

Print Name:      David Chang                 Print Name: _____
                                                          Vivian Lee

Title: _____ Vice President                Title: _____ Managing Director
                                                          CIT Commercial Services - Pan Pacific

# EXHIBIT 7



CyberHome Entertainment, Inc
48455 Fremont Boulevard
Fremont, CA 9453

T 510 226 272
F 510 226 272

HITACHI HIGH TECH AMERICA, INC.
10 North Martingale Road, Suite#500
Schaumburg, IL 60173
**Attn: Accounts Payable**

Dear Sirs:

We have entered into an export factoring agreement with an International Factor located in the United States. Their services will relieve us of much of our routine bookkeeping work and enable us to put our resources to more productive use.

As a result of these arrangements, **effective Mar. 01, 2004,** all our invoices to you will bear a notice that **payment** thereof is to **be made to:**

> This invoice is assigned to, owned by, and payable only to:
>
> **THE CIT GROUP/COMMERCIAL SERVICES, INC.**
>
> **P.O. Box 1036**
>
> **Charlotte, NC 28201-1036**
>
> to whom notice must be given of any merchandise returns or claims. Payment made to any other party does not constitute valid payment of this invoice.

Thus, The CIT Group/Commercial Services, Inc. becomes your creditor in our place in respect of suppliers and payments of amounts due. Such transactions must be made in accordance with their payments instructions and in the currency of invoice.

Any queries or claims arising after receipt by you of merchandise from us should be notified to The CIT Group/Commercial Services, Inc. as well as to ourselves.

Apart from the foregoing, the relations between us remain unchanged and you should continue to place orders with our agent or with us.

We feel sure that this change in procedure will be of benefit to our customers as well as to ourselves. If you should have any questions, please contact us or The CIT Group/Commercial Services, Inc. who will be most happy to answer any questions you may raise with regards to this arrangement or to your account in future.

Yours faithfully,

Cyberhome Entertainment, Inc.

To: The CIT Group/Commercial Services, Inc.

We acknowledge receipt of this letter and confirm that payments will be made to you in accordance with the assignment notice contained herein.

Name

Date

EXHIBIT 8




CyberHome Entertainment, Inc.
48350 Fremont Boulevard
Fremont, CA 94539
T 510 226 5800
F 510 226 3800

**INTRODUCTORY LETTER**

8/18/2005

Dear Hitachi High Technologies America, Inc.,

We would like to inform you that the attached account has been assigned to Ta Chong
Bank.

Ta Chong Bank provides a sales ledger management service which will relieve us of
much of our routine book-keeping work and enable us to put our resources to more
productive use.

Essentially, Ta Chong Bank now becomes your creditor and payment of this account
should be made direct to them.   Such payment will, of course, fully discharge any
indebtedness of your part.

Effective     9/1/2005   , all invoices from us will bear an assignment clause
indicating that payment is to be direct to :

## Ta Chong Bank Ltd.

International Business Dept
7F No.21, Lane 583, Jui-Kung Rd.
Taipei, Taiwan

From this date, please make all payments for our invoices directly to
**WIRE:**
**TA CHONG BANK LTD.**
**Bank account at:**
**Citibank N.A. New York**
**SWIFT CODE: CITIUS33**
**Account Number: 36089983**
**Reference:    Further credit to CyberHome Entertainment, Inc.**
                **Account (#) 019-31-0009132**

**CHECK/DRAFT:**
**TA CHONG BANK LTD.**
**P.O. BOX 7247-6163**
**PHILADELPHIA, PA 19170-6163**
(Check/Draft must be drawn on a US Bank in USD Currency)

1

**CyberHome**

CyberHome Entertainment.
48350 Fremont Bouel.
Fremont, CA 9-

T 510.226.!
F 510.226.3

Regular remittance information should, of course, be included.

We believe that this arrangement will assist us in offering you the best service possible. Apart from these new payment procedures, our business relationship remains the same. We appreciate your business and look forward to a long and mutually satisfactory relationship.

In addition, please fill out the following information for our factor – Ta Chong Bank further contact:

(1) Name of buyer's contact person: Doug Kraneman

(2) Department: Electronic Products Division

(3) Position: Asst. Manager/Sales Administration

(4) TEL. No: 847-273-4343

(5) FAX. No: 847-273-4407

(6) E-mail address: doug.kraneman@hitachi-hta.com

Yours faithfully,

Authorized Signature (Seller's signature)

Receipt   Acknowledged (Buyer's signature)

Authorized Signature
Name: Michael L. Levans
Position: Vice President & General Manager

2

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware
Corporation, and DOES 1-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TA CHONG BANK LTD.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED
FILED
ALAMEDA COUNTY**

MAR 2 1 2008

CLERK OF THE SUPERIOR COURT
By Alphonsine Antas, Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of Alameda
1225 Fallon Street
Oakland, CA 94612-4293

CASE NUMBER
*(Número del Caso):*  R G 0 8 3 7 8 0 2 1

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James S. Monroe (SBN 102328)                    (415) 984-8200  (415) 984-8300
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111

DATE:                                      Clerk, by _____ , Deputy
*(Fecha)*  MAR 2 1 2008   PAT S. SWEETEN    *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Hitachi high technologies America Inc

   under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**



Code of Civil Procedure §§ 412.20, 465

Exhibit "B"

# SUMMONS
## (CITACION JUDICIAL)


*6513236*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware
Corporation, and DOES 1-10, inclusive

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
FILED ALAMEDA COUNTY

MAR 21 2008

CLERK OF SUPERIOR COURT
BY Clara _____ ____
                              DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TA CHONG BANK LTD.

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of Alameda<br>1225 Fallon Street<br>Oakland, CA 94612-4293 | CASE NUMBER:<br>*(Número del Caso):* G08378021 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James S. Monroe (SBN 102328)            (415) 984-8200   (415) 984-8300
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111

DATE: MAR 21 2008    PAT S. SWEETEN    Clerk, by _Alphonsine Oatis_, Deputy
*(Fecha)*                                  *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*                                    Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
**SUMMONS**
Legal Solutions Plus
Code of Civil Procedure §§ 412.20, 465

Exhibit "C"

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
James S. Monroe (SBN 102328)
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111

TELEPHONE NO.: (415) 984-8200    FAX NO.: (415) 984-8300
ATTORNEY FOR (Name): Ta Chong Bank Ltd.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612-4293
BRANCH NAME:

CASE NAME: Ta Chong Bank Ltd. v. Hitachi High Technologies America,
Inc., a Delaware Corporation; and DOES 1-10, inclusive

FOR
*6513240*

FILED ALAMEDA COUNTY

MAR 21 2008

CLERK OF THE SUPERIOR COURT
BY _____ DEPUTY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG08378021 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded Is $25,000 or less) | [ ] Counter [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

Items 1-6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[X] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court
c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 3
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: March 21, 2008

James S. Monroe (SBN 102328)
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Legal Solutions Plus
Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Nixon Peabody LLP
Attn: Monroe, James S
One Embarcadero Center
Suite 1800
San Francisco, CA   94111-3996

## Superior Court of California, County of Alameda

Ta Chong Bank
                              **Plaintiff/Petitioner(s)**
                        VS.

Hitachi High Technologies America
                              **Defendant/Respondent(s)**
                  (Abbreviated Title)

No. RG08378021

**NOTICE OF CASE MANAGEMENT
CONFERENCE AND ORDER**
Unlimited Jurisdiction

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.
Notice is given that a Case Management Conference has been scheduled as follows:

| Date: 08/05/2008<br>Time: 08:30 AM | Department: 18<br>Location: **Administration Building**<br>**Third Floor**<br>1221 Oak Street, Oakland CA 94612<br><br>Internet: **http://www.alameda.courts.ca.gov** | Judge: **Cecilia P. Castellanos**<br>Clerk: **May Choo**<br>Clerk telephone: (510) 267-6934<br>E-mail:<br>**Dept.18@alameda.courts.ca.gov**<br>Fax: (510) 267-1506 |

### ORDERS

1. You must:
   a. **Serve all named defendants and file proofs of service** on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
   b. **Give notice** of this conference to any party not included in this notice and file proof of service;
   c. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than **30 calendar days** before the date set for the Case Management Conference;
   d. **File and serve** a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is mandatory) at least **15 days** before the Case Management Conference (CRC 3.725)

2. If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4. The Direct Calendar Judge will issue orders at the conclusion of the conference that should include:
   a. Referring to ADR and setting an ADR completion date
   b. Dismissing or severing claims or parties
   c. Setting a trial date.

*Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 03/26/2008.

                              By

                                                      Deputy Clerk

## ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

**Appointment of Arbitrator** (must be appointed within 30 days after referral per *CRC 1605*).
$\Rightarrow$ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

$\Rightarrow$ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

$\Rightarrow$ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

#### Assignment of Case *(CRC 1605a(4))*
$\Rightarrow$ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

#### Hearings *(CRC 1611)*
$\Rightarrow$ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

#### Award of Arbitrator *(CRC 1615b & c)*
$\Rightarrow$ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

$\Rightarrow$ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

### Return of Case to Court
$\Rightarrow$ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

$\Rightarrow$ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

$\Rightarrow$ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. (*Local Rule 6.6)*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

Case No.: _____

Plaintiff

vs.

## STIPULATION FOR ALTERNATIVE
## DISPUTE RESOLUTION (ADR)

Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

## *Superior Court of California, County of Alameda*



## *Notice of Judicial Assignment for All Purposes*

Case Number: RG08378021
Case Title:    Ta Chong Bank VS Hitachi High Technologies America
Date of Filing: 03/21/2008


TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**This case is hereby assigned for all purposes to:**

| | |
|---|---|
| **Judge:** | **Cecilia P. Castellanos** |
| **Department:** | **18** |
| **Address:** | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland  CA  94612** |
| **Phone Number:** | **(510) 267-6934** |
| **Fax Number:** | **(510) 267-1506** |
| **Email Address:** | **Dept.18@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law.  (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

### General Procedures

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Cecilia P. Castellanos
DEPARTMENT 18

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

## Schedule for Department 18

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Mondays, Tuesdays, Wednesdays and Thursdays from 9:30 a.m. to 4:30 p.m.
- Case Management Conferences are held: Initial Case Management Conferences: Tuesdays, Wednesdays, Thursdays at 8:30 a.m.
- Case Management Conference Continuances: Monday through Friday at 8:45 a.m.
- Law and Motion matters are heard: Tuesdays at 4:00 p.m. and Fridays at 1:30 p.m.
- Settlement Conferences are heard: Fridays at 9:30 a.m.
- Ex Parte matters are heard: Tuesdays and Thursdays at 9:00 a.m.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:        Dept.18@alameda.courts.ca.gov

  For all Law & Motion reservations, email Department 18 at the email address provided or fax the request to (510) 267-6990

- Ex Parte Matters
  Email:        Dept.18@alameda.courts.ca.gov

  FAX:          (510)267-6990

## Tentative Rulings

The court will issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 18

• Phone:  1-866-223-2244

Dated:  03/25/2008                    Executive Officer / Clerk of the Superior Court

                              By    ⎯⎯⎯⎯⎯⎯⎯
                                        digital
                                              Deputy Clerk


## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 03/26/2008

                              By    ⎯⎯⎯⎯⎯⎯⎯
                                        digital
                                              Deputy Clerk

## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION PACKAGE
**Effective April 15, 2005**

### Instructions to Plaintiff / Cross-Complainant

In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the complaint, an Alternative Dispute Resolution (ADR) information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.**

## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

Rev 4/05

## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the Court's Web site.** The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- **Contact the Small Claims Court Legal Advisor.** The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages of your telephone book under "Arbitrators" or "Mediators."**

- **Automotive Repair, Smog Check:** The **California Bureau of Automotive Repair** (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Attorney Fees:** The **State Bar of California** administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
**222278 Redwood Road, Castro Valley, CA 94546**
Phone: (510) 733-4940    fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teel Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**
Phone: (510) 548-2377    fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**
Phone: (510) 768-3100   fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**1789 Barcelona Street, Livermore, CA 94550**
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
**1212 Broadway Street, Suite 837, Oakland, CA 94612**
Phone: (510) 444-6351   fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.




"6485762"

1  James S. Monroe (SBN 102328)
   NIXON PEABODY LLP
2  One Embarcadero Center, Suite 1800
   San Francisco, CA 94111-3996
3  Telephone: (415) 984-8200
   Facsimile: (415) 984-8300
4
   Attorneys for Plaintiff
5  TA CHONG BANK LTD.

**FILED**
ALAMEDA COUNTY

MAR 2 7 2008

CLERK OF THE SUPERIOR COURT
By
                    DEPUTY

6

7
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
                    IN AND FOR THE COUNTY OF ALAMEDA
9

10

11
   TA CHONG BANK LTD.,                          No. RG08378021
12
                              Plaintiff,        PROOF OF SERVICE OF SUMMONS
13
              vs.
14
   HITACHI HIGH TECHNOLOGIES AMERICA,
15 INC., a Delaware Corporation; and DOES 1-10,
   inclusive,
16
                              Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE OF SUMMONS                                          10857651 3

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>JAMES S. MONROE (SBN 102328)<br>NIXON PEABODY LLP<br>ONE EMBARCADERO CENTER, SUITE 1800<br>SAN FRANCISCO, CA 94111<br>TELEPHONE NO. (415) 984-8200      FAX NO. (Optional): (415) 984-8300<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): TA CHONG BANK LTD. | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 FALLON STREET<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: OAKLAND, CA 94612-4293<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER:<br>TA CHONG BANK<br>DEFENDANT/RESPONDENT:<br>HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation, et al. | CASE NUMBER:<br>RG08378021 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>3016314 |
| DATE:              TIME:              DEPT: | |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of :
    a. ☒ summons
    b. ☒ complaint
    c. ☒ Alternative Dispute Resolution (ADR) package
    d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
    e. ☐ cross-complaint
    f. ☐ other *(specify documents)*:

3.  a. Party served: *(specify name of party as shown on documents served)*:
    HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation
    b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent
    (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*: KANISHA BUTLER, RECEPTIONIST, AUTHORIZED TO ACCEPT SERVICE OF PROCESS ON BEHALF OF HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation
4.  Address where the party was served: 5100 FRANKLIN DRIVE, PLEASANTON, CA 94588

5.  I served the party *(check proper box)*
    a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 03-24-08 (2) at: *(time)*: 3:15PM
    b. ☐ by substituted service. On *(date)*:          at: *(time)*          . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3b):

    (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on

**1**

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]

Code of Civil Procedure § 417.10

PROOF OF SERVICE OF SUMMONS

(date):          (city):          or ☐ a declaration of mailing is attached.

(5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

c. ☐ by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
(1) (date):                                     (2) (city):
(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)
(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d ☐ by other means (specify means of service and authorizing code section):

☐ Additional page describing service is attached.
6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant
   b. ☐ as the person sued under the fictitious name of (specify):
   c. ☐ as occupant
   d. ☒ on behalf of (specify):
   **HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation**
        under the following Code of Civil Procedure section:
        ☒ 416.10 (corporation)              ☐ 415.95 (business organization, form unknown)
        ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
        ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
        ☐ 416.40 (association or partnership) ☐ 416.90 (authorized person)
        ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                            ☐ other:

7. Person who served papers
   a.  Name: ALLAN MENDIETA
   b.  Address: NATIONWIDE LEGAL, INC.
       1255 POST STREET, SUITE #500, SAN FRANCISCO, CA 94109
   c.  Telephone number: (415) 351-0400
   d.  The fee for service was: $
   e.  I am:
       (1) ☐ not a registered California process server.
       (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
       (3) ☒ registered California process server:
               (i)   ☒ owner ☐ employee ☐ independent contractor
               (ii)  Registration No.. 1018
               (iii) County: SAN FRANCISCO
8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   Or
9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: MARCH 24, 2008

**ALLAN MENDIETA**
Name of person who served papers/Sheriff or Marshal          _____
                                                                  (signature)

2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]                    Code of Civil Procedure § 417.10

PROOF OF SERVICE OF SUMMONS



| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name and Address)* | |
|---|---|
| JAMES S. MONROE (SBN 102328)<br>NIXON PEABODY LLP<br>ONE EMBARCADERO CENTER, SUITE 1800<br>SAN FRANCISCO, CA 94111<br>TELEPHONE NO.: (415) 984-8200  FAX NO. *(Optional)*: (415) 984-8300<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*:  PLAINTIFF, TA CHONG BANK LTD. | *\*6500508\** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 FALLON STREET<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: OAKLAND, CA 94612-4293<br>BRANCH NAME: | FILED<br>ALAMEDA COUNTY<br><br>APR 3 0 2008<br><br>CLERK OF THE SUPERIOR COURT<br>BY _____ Deputy |
|---|---|
| PLAINTIFF/PETITIONER:<br>TA CHONG BANK LTD<br>DEFENDANT/RESPONDENT:<br>HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation, et al. | CASE NUMBER:<br>RG08378021 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>3018320 |

| DATE: | TIME: | DEPT: |
|---|---|---|
| | | |

*(Separate proof of service is required for each party server.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of :
   - a. ☒  summons
   - b. ☒  complaint
   - c. ☒  Alternative Dispute Resolution (ADR) package
   - d. ☒  Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐  cross-complaint
   - f. ☒  other *(specify documents)*:  NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER

3. a. Party served: *(specify name of party as shown on documents served)*:
   HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation
   b. ☒Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent
   (and not a person under item 5b on whom substituted service was made)*(specify name and
   relationship to the party named in item 3a)*: KAREN HARRIS, PROCESS SPECIALIST,
   CSC-LAWYERS INCORPORATING SERVICE, REGISTERED AGENT FOR SERVICE OF
   PROCESS ON BEHALF OF HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware
   Corporation
4. Address where the party was served:
   2730 GATEWAY OAKS DRIVE, SUITE 100, SACRAMENTO, CA 95833

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized
   to receive service of process for the party (1) on *(date): 04-18-08* (2) at: *(time): 11:00AM*
   b. ☐ **by substituted service.** On *(date):*          at: *(time)*          . I left the documents listed in item 2 with or in the
   presence of *(name and title or relationship to the person indicated in item 3b)*:

   (1)☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
   of the person to be served. I informed him or her of the general nature of the papers.

   (2)☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
   place of abode of the party. I informed him or her of the general nature of the papers.

   (3)☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
   address of the person to be served, other than a United States Postal Service post office box. I informed
   him or her of the general nature of the papers.

   (4)☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served

1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | Code of Civil Procedure § 417.10 |
|---|---|

PROOF OF SERVICE OF SUMMONS

at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
(date):                    (city):                    or ☐ a declaration of mailing is attached.

(5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

c. ☐ by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
(1) (date):                    (2) (city):
(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt (form 982(a)(4).)* (Code Civ. Proc., § 415.30.)
(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ by other means (specify means of service and authorizing code section):

☐ Additional page describing service is attached.
6. The "Notice to the Person Served" (on the summons) was completed as follows:
    a. ☐ as an individual defendant
    b. ☐ as the person sued under the fictitious name of (specify):
    c. ☐ as occupant
    d. ☒ on behalf of (specify):
    **HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware Corporation**
        under the following Code of Civil Procedure section:
        ☒ 416.10 (corporation)        ☐ 415.95 (business organization, form unknown)
        ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)
        ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
        ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
        ☐ 416.50 (public entity)        ☐ 415.46 (occupant)
                              ☐ other:

7. Person who served papers
    a. Name: **LAVE MAZZIER**
    b. Address: NATIONWIDE LEGAL, INC.
       1255 POST STREET, SUITE #500, SAN FRANCISCO, CA 94109
    c. Telephone number: (415) 351-0400
    d. The fee for service was: $
    e. I am:
       (1) ☐ not a registered California process server.
       (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
       (3) ☒ registered California process server:
           (i) ☒ owner ☐ employee ☐ independent contractor
           (ii) Registration No.: 39
           (iii) County: **SACRAMENTO**
8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   Or
9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: APRIL 21, 2008

**LAVE MAZZIER**
Name of person who served papers/Sheriff or Marshal                  _(signature)_

**2**

Form Adopted for Mandatory Use                          Code of Civil Procedure § 417.10
Judicial Council of California
POS-010 [Rev. January 1, 2007]
                PROOF OF SERVICE OF SUMMONS



1  James S. Monroe (SBN 102328)
   NIXON PEABODY LLP
2  One Embarcadero Center, Suite 1800
   San Francisco, CA 94111-3996
3  Telephone: (415) 984-8200
   Facsimile: (415) 984-8300

4
   Attorneys for Plaintiff
5  TA CHONG BANK LTD.

6

7

F I L E D
ALAMEDA COUNTY

APR 3 0 2008

CLERK OF THE SUPERIOR COURT
By ___Jasha  Ressif___
                         Deputy

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF ALAMEDA

10

11

12 | TA CHONG BANK LTD.,                          | No. RG08378021 |

13 |                            Plaintiff,        | NOTICE OF WITHDRAWAL OF |
   |                                              | PROOF OF SERVICE OF SUMMONS |
14 |     vs.                                      | |

15 | HITACHI HIGH TECHNOLOGIES AMERICA,           | |
   | INC., a Delaware Corporation; and DOES 1-10, | |
16 | inclusive,                                   | |

17 |                            Defendants.       | |

18

19       NOTICE IS HEREBY GIVEN that Plaintiff Ta Chong Bank Ltd. hereby withdraws the

20  purported proof of service of the Summons and Complaint on March 24, 2008 on Defendant Hitachi

21  High Technologies America, Inc. ("Hitachi"). Hitachi contends that the March 24 service was

22  ineffective since their receptionist was not authorized to accept service of process on behalf of

23  Hitachi. Accordingly, plaintiff reserved the Summons and Complaint on Hitachi's

24

25

26

27

28

NOTICE OF WITHDRAWAL OF PROOF OF                                          11001626.1
SERVICE OF SUMMONS; CASE NO. RG08378021

1

2  registered agent for service of process on April 18, 2008.

3  DATED:  April 30, 2008                          Respectfully submitted,

4                                                  NIXON PEABODY LLP

5

6                                                  By:

7                                                      James S. Monroe
                                                       Attorneys for Plaintiff
8                                                      TA CHONG BANK LTD.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        -2-

1

**PROOF OF SERVICE**

2  **CASE NAME: Ta Chong Bank Ltd. v. Hitachi High Technologies America**
   **COURT:      Superior Court of California, County of Alameda**
3  **CASE NO.:    RG08378021**
   **NP FILE:     047008.000003**

4

5      I, the undersigned, certify that I am employed in the City and County of San Francisco,
California; that I am over the age of eighteen years and not a party to the within action; and that my
business address is One Embarcadero Center, 18th Floor, San Francisco, California 94111-3600. On
6  this date, I served the following document(s):

7  **NOTICE OF WITHDRAWAL OF PROOF OF SERVICE OF SUMMONS**

8  on the parties stated below, through their attorneys of record, by placing true copies thereof in sealed
envelopes addressed as shown below by the following means of service:

9
    _X_ : B y First-Class Mail — I am readily familiar with the firm's practice for collection and
10  processing of correspondence for mailing. Under that practice, the correspondence is deposited with
    the United States Postal Service on the same day as collected, with first-class postage thereon fully
11  prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary
    business practices.
12
    ____: By Personal Service — I caused each such envelope to be given to a courier messenger to
13  personally deliver to the office of the addressee.

14      ____: By Overnight Courier — I caused each such envelope to be given to an overnight mail service
    at San Francisco, California, to be hand delivered to the office of the addressee on the next business
15  day.

16      ____: By Facsimile — From facsimile number at approximately A.M./P.M., I caused each such
    document to be transmitted by facsimile machine, to the parties and numbers listed below, pursuant
17  to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by
    the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the
18  transmission, a copy of which is attached to the original of this declaration.

19  Addressee(s)

20  Richard C. Vasques, Esq.
    Morgan Miller Blair, a Law Corporation
21  1331 N. California Blvd., Suite 200
    Walnut Creek, CA 94596
22
        I declare under penalty of perjury that the foregoing is true and correct. Executed on
23  April 30, 2008, at San Francisco, California.

24

25                                          _Carol S. Hardy_
                                              Carol S. Hardy
26

27

28

PROOF OF SERVICE; CASE NO. RG08378021          - 1 -                              10959750.1