James S. Monroe (SBN 102328)
MONROE LAW GROUP
101 California Street, Suite 2450
San Francisco, California 94111
Telephone: (415) 990-4349
Facsimile: (415) 723-7423

Attorneys for Plaintiff
TA CHONG BANK LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TA CHONG BANK LTD., <br><br>                    Plaintiff, <br><br>   vs. <br><br>HITACHI HIGH TECHNOLOGIES AMERICA, INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br>                    Defendants. | No. C-08-02452-PJH <br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** <br><br>Date: July 9, 2008 <br>Time: 9:00 a.m. <br>Ctrm: 3, 17th Floor <br>Judge: Hon. Phyllis J. Hamilton |

### I.    INTRODUCTION

By the complaint, plaintiff Ta Chong Bank Ltd. (the "Bank") seeks to recover from defendant Hitachi High Technologies America, Inc. ("Hitachi") for improperly paying certain invoices of CyberHome Entertainment, Inc. ("CyberHome") directly to CyberHome in clear violation of the Bank's rights as assignee to receive direct payment thereof. Hitachi has moved to dismiss the complaint under Rule 12(b)(6), contending that the Bank can no longer maintain this action due to the subsequent avoidance of its security interest as a preference (under 11 U.S.C. § 547(b)) in CyberHome's chapter 7 bankruptcy case since it was perfected within ninety (90) days prior to the bankruptcy case being filed. Hitachi's motion to dismiss is based upon a misapprehension of both the

rights that the Bank seeks to enforce and the effect of the preference action on these rights. Under applicable law, the Bank has a clear right to recover from Hitachi for its wrongful payment to CyberHome and the preference avoidance judgment against the Bank has absolutely no effect on these rights and no relevance to this action. A preference action only effects property of the bankruptcy estate and does not retroactively impair rights and duties regarding non-estate property (such as the Bank's claims herein) and/or matters occurring long before the bankruptcy case was filed. Accordingly, as is established below, the Bank's complaint states a valid cause of action against Hitachi and the motion should be denied.

## II.    STATEMENT OF FACTS

The material facts of this case, as alleged in the Bank's complaint, are as follows:

On or about August 18, 19 and September 13, 2005, Hitachi purchased certain goods from CyberHome for which Hitachi became indebted to CyberHome in the amount $1,214,852.20. True and correct copies of CyberHome's invoices to Hitachi for the goods provided are attached as Exhibit 1 to the complaint (the "Invoices").

Since May 2004, the Bank and CyberHome entered into a series of Factoring Agreements (the "Factoring Agreements") whereby the Bank agreed to purchase and CyberHome agreed to sell certain of CyberHome's accounts receivable pursuant to the terms of the Factoring Agreements. True and correct copies of the Factoring Agreements in effect during the period of time from March 2005 to September 2006 (when CyberHome filed its bankruptcy case), along with certified translations thereof from Chinese to English, are attached as Exhibits 2, 3 and 4 to the complaint.

On or about August 22, 24 and September 19, 2005, CyberHome assigned all of its right, title and interest in and to all amounts due from Hitachi under the Invoices to the Bank. True and correct copies of the Notification and Transfer of Receivables forms executed by CyberHome in connection with the sale of the Invoices to the Bank under the Factoring Agreement then in effect (Exhibit 2) are attached to the complaint as Exhibit 5.

On or about April 30, 2004, The CIT Croup/Commercial Services, Inc. ("CIT") and the Bank entered into a certain FCI Interfactor Agreement (the "Interfactor Agreement"), whereby CIT and the

-2-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

Bank agreed that CIT would handle the processing of certain accounts receivable factored by the Bank (including receiving payments on such accounts on the Bank's behalf and forwarding them to the Bank) in exchange for the Bank's payment of certain agreed commissions and other compensation to CIT, a true and correct copy of which is attached as Exhibit 6 to the complaint. Pursuant to the Interfactor Agreement, the Bank and CIT agreed that CIT would handle the processing of the CyberHome invoices factored by the Bank until this relationship was terminated with respect to future invoices in late 2005 and the Bank began to directly handle the receipt and processing of payments on the CyberHome invoices factored by it.

On or about March 1, 2004, CIT and CyberHome gave Hitachi notice in writing that, *inter alia*, all of CyberHome's invoices would henceforth bear a notice that such invoice was assigned to CIT and instructing Hitachi that all future payments on such CyberHome invoices must be made directly to CIT, a true and correct copy of which is attached as Exhibit 7 to the complaint (the "CIT Assignment Notice"). In accordance with the CIT Assignment Notice, the Invoices (Exhibit 1) all bear a notice that: "The invoice is assigned to, owned by, and payable only to: The CIT Group/Commercial Services, Inc., P.O. Box 1036, Charlotte, NC 28201-1036, to whom notice must be given of any merchandise returns or claims. Payment made to any other party does not constitute valid payment of this invoice."

On or about August 18, 2005, the Bank and CyberHome gave Hitachi notice in writing that effective September 1, 2005, CyberHome's future invoices to Hitachi would bear a notice that such invoices were assigned to the Bank and instructing Hitachi that all payments on such CyberHome invoices must be made directly to the Bank, a true and correct copy of which is attached as Exhibit 8 to the complaint (the "Bank Assignment Notice").

Contrary to the CIT Assignment Notice, the notice contained in each of the Invoices, and the Bank Assignment Notice, and without the Bank's or CIT's knowledge or consent, Hitachi, on or about January 13, 2006, paid the sum of $1,214,852.20 directly to CyberHome in satisfaction of the Invoices. Neither the Bank nor CIT has received any part of this payment from CyberHome or otherwise and CyberHome filed a Chapter 7 bankruptcy case on September 5, 2006 in the United

-3-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

States Bankruptcy Court for the Northern District of California, Case No. 06-41544.

The Bank has made demand on Hitachi for payment of the $1,214,852.20 that it improperly paid to CyberHome, but Hitachi has failed and refused to pay any part of this indebtedness to the Bank. Accordingly, the Bank seeks to enforce Hitachi's obligations as an account debtor with notice of the Bank's assignment and recover the amounts that Hitachi wrongfully paid to CyberHome in violation of the Bank's rights and Hitachi's duties under applicable law.

### III.    ARGUMENT

**A.    The Bank's Complaint Alleges All Elements Necessary to Establish a Prima Facie Case for Recovery from Hitachi.**

**1.    Applicable Law.**  Whether CyberHome's assignment of the Invoices to the Bank is deemed to be an outright sale of the accounts or a security interest (which is both a question of fact and immaterial to this case), the California Commercial Code is applicable to determine the rights and duties of the Bank and Hitachi in this case.

Commercial Code § 9109 provides that Division 9 (Secured Transactions) applies, *inter alia*, to both of the following: "(1) A transaction regardless of its form, that creates a security interest in personal property or fixtures by contract, … [and]  (2) A sale of accounts, chattel paper, payment intangibles, or promissory notes." The term "account" is defined broadly in Division 9 to include a right to payment for property sold, leased or licensed, or services rendered. Commercial Code § 9102(a)(1). Accordingly, Division 9 is applicable to both sales of and security interests in accounts.

Commercial Code § 9301(1) provides that "[e]xcept as otherwise provided in this section, while a debtor [here, CyberHome] is located in this jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of the security interest in collateral." At all relevant times, CyberHome was located in California.

Based upon the foregoing and Commercial Code § 9310, to perfect its interest the CyberHome accounts assigned to the Bank, the Bank was required to file a financing statement in California (where CyberHome was located).

Finally, Commercial Code § 1105(1) provides as follows:

-4-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

> "Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this code applies to transactions bearing an appropriate relation to this state."

Pursuant to this section, California law is applicable to determine the rights and duties of the Bank and Hitachi since there is no agreement between the Bank and Hitachi that contains a choice of law provision and the transactions bear an "appropriate relation" to California. The facts establishing the relation to California are: (1) Hitachi's purchase orders were presented and accepted in California; (b) CyberHome was located in California and the goods were shipped from California; and (c) California law governs the perfection and priority of the Bank's interest in the subject accounts.

**2.      Hitachi Was Obligated to Pay the Amount of the Invoices to the Bank.**

Commercial Code § 9406(a) provides:

> "Subject to subdivisions (b) and (i), inclusive, an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor."

Here (as discussed above in the statement of facts and as detailed in the complaint), CyberHome gave written notice to Hitachi (Exhibit 7 to the complaint) that the Invoices were assigned to CIT (the "Bank's agent for collection under the Interfactor Agreement (Exhibit 6 to the complaint)) and that payment of the Invoices was required to be made directly to CIT, as assignee thereof. In addition, each of the Invoices (Exhibit 1 to the complaint) contained a clear statement at

-5-

the bottom that the Invoices had been assigned to CIT and that only direct payment to CIT would constitute valid payment. The foregoing is clearly sufficient to have required Hitachi to pay the amount of the Invoices directly to CIT (on the Bank's behalf). Hitachi elected to ignore these notices and its duties under Commercial § 9406 and paid CyberHome on the Invoices instead. Under these circumstances, Hitachi is directly liable to the Bank (as assignee of the Invoices) for the full amount of the payment that Hitachi made in satisfaction thereof to CyberHome.

**3.    CyberHome's Bankruptcy Estate Has No Property Interest in the Bank's Claims Against Hitachi.**  Pursuant to 11 U.S.C. § 541(a), a debtor's bankruptcy estate consists of all legal or equitable interests of the debtor in property at the time the case is commenced. A chapter 7 trustee succeeds only to the rights possessed by the debtor at the filing of the petition in bankruptcy, and is subject to such claims and defenses as might have been asserted against the debtor but for the filing. *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 656, 662 (4th Cir. 1985) (trustee acquires rights possessed by bankrupt corporation); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir. 1984) (whatever rights debtor has in property at commencement of case continue in bankruptcy, "no more, no less"; § 541 is not intended to expand the debtor's rights against others beyond those existent at the commencement of the case); *In re Brown,* 734 F.2d 119, 124 (2d Cir. 1984) (bankruptcy estate can have no greater interest in property than the interest held by the debtor when the petition was filed). Here, it is obvious that, as of the date of its bankruptcy petition, CyberHome (and, as a result, its bankruptcy estate) had no conceivable property interest in either the Invoices or the Bank's claims herein against Hitachi since CyberHome had received payment in full of the Invoices from Hitachi prior to the filing of its bankruptcy petition. CyberHome was the beneficiary of this improper payment from Hitachi and, as such, has no claim against Hitachi on the Invoices (which were paid to it) or for the improper payment it received from Hitachi. In fact, the opposite is likely the case and Hitachi may have a claim for reimbursement against CyberHome and its bankruptcy estate.

**4.    The Chapter 7 Trustee's Preference Action Against the Bank is Irrelevant to the Bank's Claims Against Hitachi.**  As discussed above, under the Commercial Code, the Bank was

-6-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

required to perfect its security interest in the CyberHome accounts receivable (assigned to it under the Factoring Agreements) in order to establish the priority of its interest as against competing secured creditors that were perfected and any future bankruptcy trustee.  Here, CyberHome filed its financing statement within ninety (90) days of Cyberhome's bankruptcy filing.  Accordingly, CyberHome's chapter 7 trustee filed a preference action against the Bank pursuant to 11 U.S.C § 547(b) and obtained a summary judgment against the Bank (which the Bank did not oppose).  The effect of this was to make the Bank an unsecured creditor against the bankruptcy estate and to permit the chapter 7 trustee to collect all receivables that still existed as of the date of the bankruptcy filing.  However, this judgment does not extend to or have any effect on anything that occurred pre-bankruptcy (except the avoidance of the Bank's financing statement filed within the ninety (90) day preference period).  It most certainly does not limit or alter the Bank's rights with respect to the millions of dollars of transactions that occurred under the Factoring Agreements in the years prior to bankruptcy.  Moreover, the preference avoidance judgment does not give the bankruptcy estate a property interest in either the subject Invoices or the Bank's claims herein against Hitachi.  As discussed above, CyberHome had no interest therein when its petition was filed (since it had received payment in full on the Invoices) and, as a result, neither does the bankruptcy trustee.  The bankruptcy trustee is limited to recovering the CyberHome receivables that remained unpaid as of the bankruptcy petition date.  The subject Invoices are not among those and the Bank's claims against Hitachi for its wrongful payment to CyberHome are personal to the Bank and not maintainable by either CyberHome or the bankruptcy trustee.

Moreover, a preference avoidance action does not retroactively avoid a security interest (which, as discussed below, is fully enforceable outside of bankruptcy even if unperfected) as to past events and/or non-estate property.  Instead, it is limited in its effect to property of the debtor that can be recovered by the preference avoidance statutes and property of the bankruptcy estate.

Finally, 11 U.S.C. § 547(b) cannot be used to augment what is property of the estate as contended by Hitachi.  A property interest of the prepetition debtor exists for purposes of 11 U.S.C. § 547(b) purposes if, but for the challenged transfer, the debtor's interest would have been property of

-7-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

the estate under 11 U.S.C. § 541 at filing of the chapter 7 petition. *Raler Distribs. V. Rubbermaid (In re Ralar Distribs.),* 4 F.3d 62 (1st Cir. 1993). Clearly, this test is not met with respect to the Bank's claims herein.

**5.     The Nonperfection of the Bank's Security Interest During Most of the Prepetition Timeframe is Immaterial to its Rights Against Hitachi.** The failure to perfect a security interest does not nullify the interest. *Turbinator, Inc., v. Superior Court,* (1995) 33 Cal. App. 4th 443, 450-451. Under Commercial Code § 9201(a), "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." The Commercial Code contains no requirement of perfection. "Thus, an unperfected security interest is enforceable against all parties *unless* the holder of a later-acquired interest qualifies under some other provision of the Code. The unperfected interest is *not* null and void. For example, an unperfected security interest will defeat the interest of an unsecured general creditor." *Id.* The only requirements for validity against the debtor and third parties are those set out in Commercial Code § 9203(b), a signed agreement, value given, and the debtor's rights in the collateral (meaning the Invoices at the time of their issuance). Once, as here, these requirements are met, the security interest is enforceable. Perfection merely establishes the security interest's priority as to other secured creditors and makes it safe against certain other transferees of the collateral and a bankruptcy trustee. *Id.*

/ / / /

/ / / /

/ / / /

-8-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

## IV.   CONCLUSION

Pursuant to applicable law as discussed above, the Bank's complaint clearly states a *prima facie* case for recovery against Hitachi and, accordingly, Hitachi's motion to dismiss should be denied.

DATED:   June 18, 2008

Respectfully submitted,

MONROE LAW GROUP

By: */s/ James S. Monroe*
    James S. Monroe
    Attorneys for Plaintiff
    TA CHONG BANK LTD.

-9-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**

**PROOF OF SERVICE**

**CASE NAME:** Ta Chong Bank Ltd. vs. Hitachi High Technologies America
**COURT:** USDC, Northern District of California
**CASE NO.:** C-08-02452-PJH

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is 101 California Street, Suite 2450, San Francisco, CA 94111. On this date, I served the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

on the parties stated below, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

 X  : By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

____ : By Personal Service — I caused each such envelope to be given to a courier messenger to personally deliver to the office of the addressee.

____ : By Overnight Courier — I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the addressee on the next business day.

____ : By Facsimile — From facsimile number  at A.M./P.M., I caused each such document to be transmitted by facsimile machine, to the parties and numbers listed below, pursuant to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration.

Addressee(s)

    Richard C. Vasquez, Esq.
    Vasquez Benisek & Lindgren LLP
    3685 Mt. Diablo Blvd., Suite 300
    Lafayette, CA 94549

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 18, 2008, at San Francisco, California.

                               */s/ James S. Monroe*

-10-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; CASE NO. C-08-02452-PJH**